Mark A. Perry, CA Bar No. 212532
Gibson, Dunn & Crutcher LLP
1050 Connecticut Ave. NW
Washington, DC 20036-5306
Telephone: 202-887-3667
Email: MPerry@gibsondunn.com

Margaret A. Little (*pro hac vice pending*), CT Bar No. 303494
Caleb Kruckenberg (*pro hac vice pending*), PA Bar No. 322264
New Civil Liberties Alliance
1225 19th Street NW, Suite 450
Washington, DC 20036
Telephone: 202-869-5210
Email: peggy.little@ncla.legal
Email: caleb.kruckenberg@ncla.legal

*Counsel for Raymond J. Lucia Companies, Inc. and Raymond J. Lucia, Sr.*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND J. LUCIA COMPANIES, INC. and RAYMOND J. LUCIA, SR., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. SECURITIES AND EXCHANGE COMMISSION, JAY CLAYTON, in his official capacity as Chairman of the U.S. Securities and Exchange Commission, and MATTHEW G. WHITAKER, in his official capacity as Acting United States Attorney General, <br><br> Defendants. | Case No.:  18CV2692 DMS JLB <br><br> **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION** <br><br><br> Date:  February 1, 2019 <br> Time:  1:30 p.m. <br> Courtroom: 13A <br> Judge:  Hon. Dana M. Sabraw <br> Magistrate:  Hon. Jill L. Burkhardt |

1

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ...............................................................1

ARGUMENT ......................................................................................2

  I. This Court Has Jurisdiction to Hear These Claims ...........................2

    A. This Court Has Article III Jurisdiction ......................................3

    B. The SEC's Scheme for Administrative Review Reveals No Discernible Intent to Limit Jurisdiction and the Instant Claims Are Not of the Type Committed to Agency Administrative Review..................................7

    C. This Case Satisfies All of the Thunder Basin Tests....................10

      1. Availability of Meaningful Judicial Review...........................10

      2. Wholly Collateral Claims ...............................................12

      3. Agency Expertise .........................................................13

    D. The Circuit Courts That Have Ruled Otherwise Misapprehend Their Constitutional Role ...............................................................14

  II. This Court Should Issue an Injunction.......................................17

    A. RJL and Mr. Lucia Are Likely to Succeed on the Merits...........17

    B. RJL and Mr. Lucia Will Suffer Irreparable Injury Absent This Court's Intervention ......................................................................20

    C. The Balance of Equities Favors RJL and Mr. Lucia..................22

    D. The Public Interest Favors Granting the Preliminary Injunction...............24

CONCLUSION ................................................................................25

i

# TABLE OF AUTHORITIES

**Cases**

*Abbott Laboratories v. Gardner*, 387 U.S. 136 (1967) ..............................................5

*Bebo v. SEC*, 799 F.3d 765 (7th Cir. 2015) ..................................................... 12, 14

*Bell v. Hood*, 327 U.S. 678 (1946) ............................................................................3

*Bennett v. SEC*, 844 F.3d 174 (4th Cir. 2016) ................................................ 14, 16

*Boumediene v. Bush*, 553 U.S. 723 (2008) ............................................................24

*Califano v. Sanders*, 430 U.S. 99 (1977) ..............................................................3, 5

*Citizens Comm. for Hudson Val. v. Volpe*, 425 F.2d 97 (2d Cir. 1970). .................4

*City of Arlington v. FCC*, 569 U.S. 290 (2013) ......................................................5

*Clinton v. City of New York,* 534 417 (1998)........................................................25

*Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001)..................................................3

*D.C. Office of Tax & Revenue v. Shuman*, 82 A.3d 58 (D.C. 2013) .......................4

*Darby v. Cisneros*, 509 U.S. 137 (1993) .................................................................4

*eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) .....................................17

*Elgin v. Department of Treasury*, 567 U.S. 1 (2012) ................................. 12, 13, 14

*Elk Run Coal Co. v. U.S. Dept. of Labor*, 804 F. Supp. 2d 8 (D.D.C. 2011) ..........10

*Feinerman v. Bernardi*, 558 F. Supp. 2d 36 (D.D.C. 2008)...................................21

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477
      (2010)…………………………………………………………………...*passim*

*Freytag v. C.I.R.*, 501 U.S. 868 (1991)..................................................................22

*FTC v. Hornbeam Special Situations, LLC*, No. 17-cv-03094, Doc. 219
      (N.D. Ga. Oct. 15, 2018)................................................................................5

*G.&V. Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071
      (6th Cir. 1994)...............................................................................................24

*General Electric Company v. EPA*, 360 F.3d 188 (D.C. Cir. 2004) ......................10

*General Electric Company v. Jackson*, 610 F.3d 110 (D.C. Cir. 2010).................10

*Gordon v. Holder*, 721 F.3d 638 (D.C. Cir. 2013) ................................................24

1    *Gray Fin. Grp., Inc. v. SEC*, 114 F. Supp. 1297 (N.D. Ga. 2015) ..........................14

2    *Gully v. Nat'l Credit Union Admin. Bd.*, 341 F.3d 155 (2d Cir 2003.....................11

3    *Hill v. SEC*, 114 F. Supp. 1297 (N.D. Ga. 2015)...........................................14

4    *Hill v. SEC*, 825 F. 3d 1236 (11th Cir. 2016) ............................................ 12, 14, 16

5    *Jarkesy v. SEC*, 803 F.3d 9 (D.D.C. 2015).....................................................8

6    *Johnson v. Robinson*, 415 U.S. 361 (1974) .....................................................3

7    *Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669 (6th Cir. 2018) .....................4, 13

8    *La. Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355 (1986) ...........................................4

9    *Leedom v. Kyne*, 358 U.S. 194 (1958) .........................................................11

10   *Lucia v. SEC*, 138 S. Ct. 2044 (2018)............................................... 1, 18, 19

11   *Martin v. Int'l Olympic Comm.*, 740 F.2d 670 (9th Cir. 1984) ..............................17

12   *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991) .........................5, 10

13   *Mental Disability Law Clinic v. Hogan*, 519 F. App'x. 714 (2d Cir. 2013) ...........11

14   *MFS Sec. Corp. v. SEC*, 380 F.3d 611 (2d Cir. 2004).....................................1, 18

15   *Moore v. City of East Cleveland*, 431 U.S. 494 (1977)..........................................20

16   *New Orleans Pub. Serv., Inc. v. New Orleans*, 491 U.S. 350 (1989)......................7

17   *Nnebe v. Daus*, 644 F.3d 147 (2d Cir. 2011).................................................11

18   *Oestereich v. Selective Serv. System Local Bd. No. 11*, 393 U.S. 233 (1968)...........3

19   *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279 (5th Cir. 2012) ........24

20   *Pub. Utils. Comm'n of Cal. v. United States*, 355 U.S. 534 (1958) ......................20

21   *Ramos v. D.C. Dep't of Cons. & Regulatory Affairs*, 601 A.2d 1069 (D.C. 1992)...4

22   *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018)............................................25

23   *Stark v. Wickard*, 321 U.S. 288 (1944)........................................................4

24   *Stolt-Neilson S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662 (2010)....................20

25   *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994)............................*passim*

26   *Tilton v. SEC*, 824 F.3d 276 (2d Cir. 2016)........................................................8, 16

27   *United Church of the Med. Ctr. v. Med. Ctr. Comm'n*, 689 F.2d 693

28       (7th Cir. 1982)...................................................................................20

18CV2692 DMS JLB

*Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047 (5th Cir. 1997) .........................20

*Willcox v. Consol. Gas Co.*, 212 U.S. 19 (1909) ......................................................7

**Constitution and Statutes**

U. S. Constitution Article II, §§1, 2, 3……………………………………………*passim*

5 U.S.C. § 1202(d)………………………………………………………...1, 18

5 U.S.C. § 7521(a)………………………………………………………...1, 18

15 U.S.C. § 78y(a)(1)................................................................. *passim*

15 U.S.C. § 80b-13(a) ...............................................................7

15 U.S.C. §§ 78u(a)(1) .............................................................9

15 U.S.C.§ 80b-9......................................................................9

28 U.S.C. §§ 1331 ....................................................................5

28 U.S.C. § 2201 .....................................................................2

**Other Authorities**

Br. For Resp't Supporting Pet'r, *Lucia v. SEC*, 2018 WL 125162, at *52-53 (U.S. Feb. 21, 2018). ...............................................................................20

James Madison, 1 Annals of Cong. 463 (1789)..........................................19

11A *Wright & Miller, Fed. Pract. & Proc.* § 2948.1 (3d ed. 2018)........................21

Brian Mahoney, *SEC Could Bring More Insider Trading Cases In-House*, LAW360 (June 11, 2014)..................................................................23

iv

18CV2692 DMS JLB

## PRELIMINARY STATEMENT

Plaintiffs Raymond J. Lucia Companies, Inc. (RJL) and Raymond J. Lucia, Sr. (Mr. Lucia) recently won a decision from the United States Supreme Court holding that the Administrative Law Judge (ALJ) in his enforcement proceeding before the SEC was not constitutionally appointed under the Constitution's Article II Appointments Clause. *Lucia* held that the "'appropriate' remedy for an adjudication tainted with an appointments violation is a new 'hearing before a properly appointed' official …. To cure the constitutional error, another ALJ (or the Commission itself) must hold the new hearing to which Lucia is entitled." *Lucia v. SEC*, 138 S. Ct. 2044, 2055 (2018). The SEC's reinstituted enforcement action before a new ALJ remains constitutionally flawed because SEC ALJs have impermissible layers of tenure protection.

ALJs are "Officers of the United States" within the meaning of the Appointments Clause of the United States Constitution, Art. II, § 2, cl. 2, because they "hold a continuing office established by law" and exercise "'significant discretion' when carrying out … 'important functions'." *Lucia v. S.E.C.*, 138 S. Ct. 2044, 2053 (2018).  In violation of the President's removal power, SEC ALJs may only be removed for good cause as determined by the Merit Systems Protection Board (MSPB), 5 U.S.C. § 7521(a), whose members themselves can only be removed by the President for good cause. 5 U.S.C. § 1202(d).  SEC Commissioners, who have powers of appointment over ALJs, cannot act without approval from MSPB and themselves enjoy for-cause protection against removal.  *MFS Sec. Corp. v. SEC*, 380 F.3d 611, 619-20 (2d Cir. 2004).  These

18CV2692 DMS JLB

multiple layers of tenure protection violate the U.S. Constitution.  This structural constitutional claim cannot be challenged in the enforcement proceeding before the SEC because the ALJ and the Commission lack jurisdiction and power to decide such questions.

Mr. Lucia and RJL litigated for six years through five layers of administrative and court proceedings before their constitutional claims were conclusively decided—in their favor—by the highest court in the land. Decl. Raymond J. Lucia, Sr. ¶¶ 21-25. The result of that ruling was to make a nullity of all that came before.  SEC's renewed enforcement action threatens to put the Lucia plaintiffs through another multi-layered administrative exercise in futility. This suit seeks to prevent such an unjust, destructive and wasteful outcome.  The plaintiffs' constitutional claims must be addressed in a court of law.

## ARGUMENT

### I. This Court Has Jurisdiction to Hear These Claims

This court has jurisdiction to hear this constitutional challenge to the ALJ proceedings for three separate and independent reasons:

First, it has concurrent jurisdiction over constitutional questions under Article III and 28 U.S.C. § 1331, and the United States Supreme Court has held that *nothing* in 15 U.S.C. § 78y ousts that jurisdiction, even implicitly.  In *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 215 (1994), the Supreme Court recognized that "adjudication of the constitutionality of congressional enactments has generally been thought beyond the jurisdiction of administrative agencies." *Accord Johnson v. Robinson*, 415 U.S. 361, 368

2

(1974) (quoting *Oestereich v. Selective Serv. System Local Bd. No. 11*, 393 U.S. 233, 242 (1968) (Harlan, J., concurring in result)); *Califano v. Sanders*, 430 U.S. 99, 109 (1977). Neither ALJs nor the Commission have this jurisdiction.

Second, *Thunder Basin* is inapplicable because the government cannot get past its two-part test of 1) a "fairly discernible" intent by Congress to consign the claims to administrative review and 2) plaintiffs' constitutional claims are not "of the type Congress intended to be reviewed within this statutory structure." 510 U.S. at 212.

Third, even if this court were to decide to evaluate its jurisdiction under *Thunder Basin*, this district court has jurisdiction under *Thunder Basin's* three-part test.

## A. This Court Has Article III Jurisdiction

This action for declaratory and injunctive relief is brought under the grant of jurisdiction in Article III of the United States Constitution, 28 U.S.C. § 1331, which provides that federal district courts "have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." Federal courts may issue injunctions to protect constitutional rights. *Free Enterprise Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010) (*FEF, infra*); *Bell v. Hood*, 327 U.S. 678, 684 (1946). "[I]njunctive relief has long been recognized as the proper means for preventing entities from acting unconstitutionally." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001).[1]

---

[1] The Administrative Procedure Act, 5 U.S.C. § 702, similarly provides that any "person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial

Administrative law judges, by contrast, have no power to right constitutional wrongs. Because "an agency literally has no power to act … unless and until Congress confers power upon it," *La. Pub. Serv. Comm'n v. F.C.C.*, 476 U.S. 355, 374 (1986), this "administrative agency, *like all administrative agencies*, has no authority to entertain a facial constitutional challenge to the validity of a law …. only the Judiciary enjoys the power to invalidate statutes inconsistent with the Constitution." *Jones Bros., Inc. v. Sec'y of Labor*, 898 F.3d 669, 673-674 (6th Cir. 2018).  Further, administrative law judges may only decide matters within their statutory grant of power.  *Stark v. Wickard*, 321 U.S. 288, 310 (1944); *D.C. Office of Tax & Revenue v. Shuman*, 82 A.3d 58, 70 (D.C. 2013).

> In contrast with judicial tribunals … administrative law tribunals—created by the legislature to serve dispute resolution and rulemaking-by-order functions within agencies of the executive branch—by definition and design do not have the inherent "equitable authority" that courts in the judicial branch have derived from common law traditions and powers. Administrative law judges only possess narrowly defined statutory and regulatory powers; they do not have the traditional equity power of courts to formulate remedies.

*Ramos v. D.C. Dep't of Cons. & Regulatory Affairs*, 601 A.2d 1069, 1073 (D.C. 1992).

The same holds true for the Commission.  The SEC is empowered only to decide whether the securities laws have been violated—not whether its own appointments process for administrative law judges meets constitutional requirements.  Courts

> need to carefully scrutinize an agency's suggested interpretations of its mandates and which have the effect of expanding its authority beyond the statutory bounds. If

---

review thereof," and may seek injunctive relief.  *Darby v. Cisneros*, 509 U.S. 137, 146 (1993); *Citizens Comm. for Hudson Val. v. Volpe*, 425 F.2d 97, 102 (2d Cir. 1970).

4

an agency was meant to have authority to do such and such a thing, Congress must say so. And when it has said, "Thus far and no farther," it is the Court's responsibility to blow the whistle and call the out of bounds.

*FTC v. Hornbeam Special Situations, LLC*, No. 17-cv-03094, Doc. 219 (N.D. Ga. Oct. 15, 2018) (citing *City of Arlington v. FCC*, 569 U.S. 290, 307 (2013)).

The Supreme Court in *Free Enterprise Fund* twice stated that where a party's "constitutional claims are … outside the [agency's] competence and expertise," district courts have jurisdiction over constitutional questions. *FEF*, 561 U.S. at 478, 491; *accord McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991). ("District Court had federal-question jurisdiction to hear respondents' constitutional and statutory challenges to INS procedures.")

Finally, and most fatally to a government claim to administrative jurisdiction, the Supreme Court held in *Free Enterprise Fund*, that 15 U.S.C. § 78y, the statute at issue in this case, "does not expressly limit the jurisdiction that other statutes confer on district courts. *See, e.g.*, 28 U.S.C. §§ 1331, 2201. Nor does it do so implicitly." 561 U.S. at 489.

In addition, the Exchange Act, 15 U.S.C. § 78bb(a)(2) provides that "the rights and remedies provided by this chapter shall be in addition to any and all other rights and remedies that may exist at law or in equity." The Supreme Court held in *Abbott Laboratories v. Gardner*, 387 U.S. 136, 144-45 (1967), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977), that a substantially similar savings clause in the Federal Food, Drug and Cosmetic Act (FDCA) meant that Congress intended that preenforcement challenges to regulations could be brought in federal district court,

despite an available statutory review procedure.  The Exchange Act's parallel provision shows that Congress intended to preserve a district court's authority to hear constitutional challenges under 28 U.S.C. §§ 1331, 2201.

*Free Enterprise Fund unanimously* held that the statutory scheme under 78y did not preclude district court review because the administrative judicial review scheme was designed only to review whether the agency's action complied with its statutory mandate. 561 U.S. at 487.  Congress did not create these channels to be the exclusive mechanism for deciding constitutional matters wholly unrelated to whether agency action was lawful, such as the entirely collateral, antecedent question of whether those adjudicating the securities laws are themselves appointed and removable under statutes that comply with the Constitution.  The plaintiff in *Free Enterprise Fund* "objected to the Board's existence." The court held such a challenge was "'collateral' to any Commission orders or rules from which review might be sought."  *FEF*, 561 U.S. at 490.

Likewise, here, plaintiff's Article II claim falls outside the scope of circuit court review, which is limited to review of agency orders or rules. The *Free Enterprise Fund* Court also explained that separation-of-powers claims were "outside the Commission's competence and expertise." *Id.* at 491.  Rather than raise "fact-bound inquiries" that "rested … on factors that call for an understanding of the [regulated] industry," the plaintiff raised structural questions of constitutional law that Article III courts are charged with deciding.  *Id.*  Nothing in the securities laws will shed any light on the Article II

removal challenge which arises entirely "outside the [agency's] competence and expertise." *Id.* at 491.

The statutory review provisions further do not contemplate challenging the ALJ's constitutionality. The SEC administrative review scheme provides that any person "aggrieved by a *final order* of the Commission … may obtain review" in a Circuit Court. 15 U.S.C. § 78y(a)(1), § 80b-13(a) (emphasis added).  Plaintiffs do not raise a challenge in this action to a final decision or order or otherwise object to the conclusions that the ALJ or the Commission might make *under the securities laws.*  They object to the *process* leading to a final decision, because the ALJ is an unconstitutional actor.

"When a Federal court is properly appealed to in a case over which it has jurisdiction, it is its duty to take such jurisdiction …. The right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied." *New Orleans Pub. Serv., Inc. v. New Orleans*, 491 U.S. 350, 358 (1989) (quoting *Willcox v. Consol. Gas Co.*, 212 U.S. 19, 40 (1909).  This Court is the only place empowered to rule on the threshold question of the constitutionality of the statutory removal protections for SEC ALJs, which must be decided before the SEC proceeds with a second unconstitutional administrative proceeding.

### B. The SEC's Scheme for Administrative Review Reveals No Discernible Intent to Limit Jurisdiction and the Instant Claims Are Not of the Type Committed to Agency Administrative Review

*Thunder Basin* holds that Congress cannot be found to have restricted district court jurisdiction unless the Government satisfies a two-part test: First, the statutory scheme

must "display a 'fairly discernible' intent to limit jurisdiction," and second, the claims at issue "must be of the type that Congress intended to be reviewed within the statutory structure." 510 U.S. at 216. *See Jarkesy v. SEC*, 803 F.3d 9, 11 (D.D.C. 2015) ("Our analysis proceeds in accordance with the two-part approach set forth in *Thunder Basin*.") Neither part of that test is met here.

The Second Circuit has acknowledged: "The statutes that establish the SEC's scheme of administrative and judicial review, including the Dodd-Frank Act and the Investment Advisers Act" do not expressly preclude federal district court jurisdiction over the appellants' Appointments Clause claim." *Tilton v. SEC*, 824 F.3d 276 (2d Cir. 2016) (finding "implicit" preclusion).  Because the text of the statute itself allows either district court or the administrative forum, there can be no "fairly discernible" Congressional intent to limit jurisdiction away from district courts under § 78y.

Further, as the Supreme Court held in *Free Enterprise Fund*, the text of § 78y—the very statutory scheme at issue in this case— "does not expressly limit the jurisdiction that other statutes confer on district courts. *See, e.g.*, 28 U.S.C. §§ 1331, 2201.  Nor does it do so implicitly." 561 U.S. at 489.  Therefore, the Second Circuit's finding of "implicit" preclusion in *Tilton* cannot be supported.  *See Tilton*, 824 F.3d at 292-299 (Droney J., dissenting).  To put it bluntly, while the Second Circuit found such an implicit limit in *Tilton*, a higher court—one which this court must follow—found otherwise in *Free Enterprise Fund*.

The second component of the *Thunder Basin* test—that the claims at issue "must be of the type that Congress intended to be reviewed within the statutory structure" is also lacking here. 510 U.S. at 216.  The statutory scheme for the SEC's claims against Ray Lucia and his company is limited to violations of the securities laws; the Article II claim *does not conceivably arise under the securities laws.*[2] RJL and Mr. Lucia seek to enjoin an imminent unconstitutional proceeding presided over by a judge whose removal protections violate the Constitution, which is a structural, constitutional question outside the purview of the securities laws.  Accordingly, this Court is the only tribunal with jurisdiction to rule on this threshold question.

*Thunder Basin* is also inapposite here because the Mine Act did not have the forum selection provision which SEC enjoys here.  Further, *Thunder Basin* was a challenge to the agency's *interpretation of a statute it was charged with enforcing.*  In contrast, plaintiffs here are challenging the validity of the administrative process itself.  The Sixth Circuit recently recognized that in *Thunder Basin*, the company's claims "at root

---

[2] The SEC has no right to litigate these matters in an alternate forum because the Commission is only empowered to litigate violations of the securities laws. The SEC's jurisdiction pursuant to the Securities Exchange Act of 1934 ('34 Act) and the Investment Advisers Act of 1940 (Advisers Act) are limited to consideration of whether conduct violated the Securities laws—and that topic alone.  *See* 15 U.S.C. §§ 78u(a)(1) ("Authority and discretion of Commission to investigate violations" of '34 Act), 15 U.S.C.§ 80b-9 (Commission authority under Advisers Act). Those acts do not confer authority upon administrative law judges to rule on the constitutionality of their own appointment or on constitutional challenges to their proceedings.

18CV2692 DMS JLB

require[d] interpretation" of the Mine Act and thus fell "squarely within the

Commission's expertise." 510 U.S. at 214." *Jones Bros*., 898 F. 3d at 675.

Finally, as the court recognized in *Elk Run Coal Co. v. U.S. Dept. of Labor*, 804 F.

Supp. 2d 8, 19 (D.D.C. 2011), even the Mine Act, with its explicitly exclusive

administrative scheme, does not preclude broad constitutional challenges in district court

(such as those presented by RJL and Mr. Lucia here), holding that the "constitutional due

process claims in the present case … present broad facial and systemic challenges that

fall outside the Mine Act's statutory review scheme."  804 F. Supp. 2d at 21 (citing *Free

Enterprise Fund* and *McNary*, *supra*, as well as circuit court holdings in *General Electric

Company v. EPA*, 360 F.3d 188 (D.C. Cir. 2004) and *General Electric Company v.

Jackson*, 610 F.3d 110 (D.C. Cir. 2010)).

### C. This Case Satisfies All of the *Thunder Basin* Tests

The statutory scheme 1.) does not, and indeed cannot, provide meaningful judicial

review of these questions, 2.) it raises constitutional issues wholly collateral to the

matters in the adjudicative proceeding; and 3.) the questions to be determined fall entirely

outside agency expertise.  Accordingly, this Court has jurisdiction under the three-part

test set forth in *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994).

### 1. Availability of Meaningful Judicial Review

Review under the SEC administrative scheme would not be meaningful because it would

occur only *after* plaintiffs suffer the constitutional injury which they seek to prevent—a

hearing before an unconstitutional officer.  Circuit court review of an unconstitutional

administrative proceeding that has already taken place, means that, by the time RJL and

Mr. Lucia reach that court, their claim to enjoin the proceeding is already moot and their

remedies foreclosed. A Court of Appeals cannot enjoin a proceeding which has already

occurred.  Although a circuit court could vacate an adverse order by the SEC on

constitutional grounds, it would be unable to remedy the harm of substantial litigation,

time and resource burdens and reputational harm incurred by the continued proceedings.

Reputational harm and litigation expenses give plaintiffs standing to invoke a district

court's jurisdiction to hear their constitutional claims.  *See Mental Disability Law Clinic

v. Hogan*, 519 F. App'x. 714, 717 (2d Cir. 2013) (citing *Nnebe v. Daus*, 644 F.3d 147,

157 (2d Cir. 2011)) (litigation expenses) and *Gully v. Nat'l Credit Union Admin. Bd.*, 341

F.3d 155, 161 (2d Cir 2003) (injury to reputation)).

Congress did not intend these schemes to force people to suffer through facially

unconstitutional proceedings, the legitimacy of which they challenge and which

irreparably violate their rights.  In *Leedom v. Kyne*, 358 U.S. 194 (1958), the Supreme

Court refused to force a party to undergo agency review procedures where the agency

acted "in excess of its delegated powers." 358 U.S. 184, 188-89 (1958) ("Surely … a

Federal District Court has jurisdiction of an original suit to prevent deprivation of a right

so given.").

The central holding of *Free Enterprise Fund* is that a person is entitled to federal

declaratory and injunctive relief to "ensure that … they are subject … [to] enforce[ment]

only by a constitutional agency accountable to the Executive."  561 U.S. at 513.  Judicial

review that requires Plaintiffs to wait until the irremediable harm occurs cannot be *meaningful* judicial review.

### 2. Wholly Collateral Claims

RJL and Mr. Lucia's claim that ALJs suffer from appointments and removal defects under Article II of the Constitution is "wholly collateral" to any Commission orders or rules from which review might be sought in the Court of Appeals. The *Free Enterprise Fund* court found that the petitioner's Article II claim was collateral because "petitioners object[ed] to the Board's existence, not to any of its auditing standards." *FEF*, 561 U.S. at 490. Similarly here, Mr. Lucia contends that his administrative hearing may not constitutionally take place at all.

The Supreme Court's holding in *Elgin v. Department of Treasury*, 567 U.S. 1 (2012) is not to the contrary. In *Elgin*, the plaintiffs had been terminated from their civil service jobs for failure to register for the selective service. Rather than appeal to the MSPB or the Federal Circuit, as required by the Civil Service Reform Act (CSRA), plaintiffs filed their action in federal district court. The Supreme Court ruled that their constitutional claim was not "wholly collateral to the CSRA scheme" because the relief the plaintiffs requested on the constitutional claims was "relief that the CSRA routinely affords," *i.e.* the review and reversal of their terminations. *Id.* at 39-40.[3] By contrast,

---

[3] *See also Hill v. SEC*, 825 F. 3d 1236, 1252 (11th Cir. 2016) and *Bebo v. SEC*, 799 F.3d 765, 774 (7th Cir. 2015), in which both circuits recognize that *Elgin* does not limit the force of the Supreme Court's holding in *Free Enterprise Fund.*

neither the ALJ, the Commission nor indeed a circuit court whose mandate is to review "orders" of the Commission, ever decides Article II appointments questions as part of the administrative review scheme, much less routinely.  Furthermore, the court in *Elgin* found that the CSRA was Congress' "comprehensive" scheme for federal employees to challenge terminations. 567 U.S. at 1. Whereas here, both the savings clause of the Exchange Act and 15 U.S.C. § 78y are expressly non-exclusive.

### 3. Agency Expertise

Plaintiffs' constitutional claims are governed by Supreme Court jurisprudence, and "do not require technical considerations of agency policy."  *FEF*, 561 U.S. at 491.  In *Thunder Basin*, by contrast, the "statutory claims at root require[d] interpretation of the parties' rights and duties under … the Mine Act and fall squarely within the Commission's expertise."  510 U.S. at 214.  Those claims called upon the Federal Mine Safety and Health Review Commission's "extensive experience interpreting the walk-around rights" which they had recently addressed.  *Id.*  As the Sixth Circuit recently noted in interpreting *Thunder Basin*: "If the agency had agreed with the company on those [Mine Act statutory] grounds, any constitutional claim would have disappeared." *Jones Bros. Inc.*, 898 F.3d at 675-76 ("The Mine Act establishes an agency dispute-resolution scheme of limited scope.  In that context, 'questions of law' include only those legal claims the Commission is fit to decide and fix.") *Id.* at 674 (citations omitted).

Mr. Lucia and RJL's Article II challenge to the removal protections are not of the type the SEC "routinely considers" or as to which the agency's expertise can be "brought

to bear" on plaintiff's claims as they were in *Elgin*.  *Elgin*, 567 U.S. at 23. Indeed, in *Hill v. SEC*, 825 F.3d 1236 (11th Cir. 2016), "the SEC conceded that *Free Enterprise Fund* compels the conclusion that the respondents' Appointments Clause challenge is outside the Commission's expertise."  *Id.* at 1251 n. 8.

Because the Lucia plaintiffs' constitutional removal challenge cannot have meaningful judicial review in the administrative scheme, and because it is wholly collateral to and outside the agency's expertise, this Court has subject-matter jurisdiction.

### D. The Circuit Courts That Have Ruled Otherwise Misapprehend Their Constitutional Role

Some circuit courts have applied *Thunder Basin*, wrongly in Plaintiffs' view, to require plaintiffs to undergo the administrative proceeding and await judicial review of their Article II constitutional issues until they reach the circuit court.  These include *Bennett v. SEC*, 844 F.3d 174 (4th Cir. 2016), *Hill v. SEC*, 825 F.3d 1236 (11th Cir. 2016), *Tilton v. SEC*, 824 F. 3d 276 (2d Cir. 2016), and *Bebo v. SEC*, 799 F.3d 765 (7th Cir. 2015).  The U.S. Court of Appeals for the Ninth Circuit has not spoken on this question.  Plaintiffs urge this Court to adopt the far more convincing reasoning set forth in *Tilton*, 824 F. 3d at 292 (Droney, J., dissenting), *Hill v. SEC*, 114 F. Supp. 1297 (N.D. Ga. 2015) and *Gray Fin. Grp., Inc. v. SEC*, 114 F. Supp. 1297 (N.D. Ga. 2015) (*Hill* and *Gray* both vacated by the Eleventh Circuit).

In *none* of these cases had the plaintiffs already been put through four layers of the SEC administrative scheme before having their Appointments Clause claim decided

definitively at the U.S. Supreme Court, with the result that the whole scheme was a nullity.  And none were poised to go through such a process a second time when they filed their complaint, with a glaring—and unresolved Appointments and Removal Clause question—embedded in the case as explicitly recognized by the United States Supreme Court and the Solicitor General.

Further, several of those courts erred in their holdings that the Appointments Clause claim was not valid, calling into question their reasoning on the jurisdictional question in a post-*Lucia* legal landscape.   The district court judge in *Hill* and *Gray*, however, was vindicated on the substantive Appointments Clause holding by the Supreme Court's decision in *Lucia.*  Her carefully reasoned opinions on jurisdiction deserve the same fresh appraisal and regard and should be adopted here.

*Thunder Basin*, as applied to constitutional claims, is a doctrine in need of more careful examination and disciplined application.[4] These circuit opinions rest nearly all the weight on the "availability of judicial review" prong and essentially gut one or both of

---

[4] A review of these circuit court decisions shows that the courts are uncertain about how many tests to apply, which tests carry more weight, and indeed whether any of the tests are sufficient to allow district court jurisdiction.  Some courts disagree about whether these are substantive or procedural questions, others wander down a metaphysical road on the "wholly collateral" prong, noting that it could have two (or more) meanings.  The *Tilton* Court can't decide among the panel just how the *Thunder Basin* tests work. 824 F. 3d at 293 n. 1. Further, as *Lucia* later showed, had the Second Circuit correctly decided the jurisdictional question in *Tilton*, Lynn Tilton would have been spared an unconstitutional proceeding.  *Tilton*'s dissent is accordingly both prophetic and worthy of adoption.

the "wholly collateral" and "agency expertise" tests, which they admit are "closer questions" (*Tilton* 2d Cir.) or "not free from ambiguity" (*Bennett* 4th Cir.) or "do not cut strongly either way" (*Hill* 11th Cir.). Those circuits that decide to rest all weight on the "availability of meaningful judicial review" prong do so though *Thunder Basin* itself does not speak to the question of weight and which factors, if any, can be ignored. The Seventh Circuit in *Bebo* nearly discards the inquiry altogether with a dismissive aside that "the Supreme Court has never said that any of the factors are sufficient conditions to bring suit in federal district court under § 1331," 799 F. 3d at 774. *Bebo* declines to even consider the "agency expertise" prong, with its inconvenient likelihood of resolving in favor of district court jurisdiction. All this confusion, inconsistency and unpersuasive reasoning suggests a doctrine in disarray.

Further, none of these adverse circuit decisions seem to have considered the implications of the compelling fact that RJL and Mr. Lucia cannot raise the removal challenge before the agency, as laid out in Section I. A. above. That makes these cases readily distinguishable, because Congress could hardly have intended to both *implicitly* strip courts of jurisdiction to hear this constitutional challenge while also denying agencies such jurisdiction.

Finally, and fatally, all of these decisions ignore or dismiss *Free Enterprise Fund*'s unambiguous—and conclusive—holding that "78y 'does not expressly limit the jurisdiction that other statutes confer on district courts. *See, e.g.*, 28 U.S.C. §§ 1331, 2201. Nor does it do so *implicitly*.'" 561 U.S. at 489. This Supreme Court holding that

the administrative scheme is not exclusive unambiguously precludes these other circuits from finding a "fairly discernible" intent that the administrative scheme be exclusive.

This court, unconstrained by a Ninth Circuit decision, but fully bound by *Free Enterprise Fund*, should find that *Thunder Basin* does not preclude jurisdiction.

## II. This Court Should Issue an Injunction

Plaintiffs are entitled to a preliminary injunction if they show (1) they will suffer irreparable injury if injunctive relief is not granted, (2) the moving party will probably prevail on the merits, (3) remedies available at law, such as monetary damages, are inadequate to compensate for their injury which outweighs the threatened harm to the party whom they seek to enjoin, and (4) granting the preliminary injunction will not disserve the public interest.  *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391, (2006); *Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 674–75 (9th Cir. 1984).

### A. RJL and Mr. Lucia Are Likely to Succeed on the Merits

The Supreme Court ruled that SEC ALJs are without doubt inferior officers.[5] Article II of the Constitution forbids even double layers of insulation protecting officers from removal.  *See FEF*, 561 U.S. at 492.  Accordingly, the SEC statutory scheme with its multiple layers of tenure protection for ALJs plainly violates Article II.

---

[5] As set forth in Mr. Lucia and RJL's complaint ¶¶ 61-65, it is still an open question whether the SEC has properly re-appointed its ALJs.

17

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

In this very case, the Solicitor General urged the Supreme Court to reach the question of "whether the statutory restrictions on removing the Commission's ALJs are constitutional," but the Supreme Court declined to reach that question because: "No court has addressed that question, and we ordinarily await thorough lower court opinions to guide our analysis of the merits." *Lucia*, 138 S. Ct. at 2050 n.1 (citation omitted).  This lower court is the place to start.

The APA permits removal of ALJs only "for good cause established and determined by the Merit Systems Protection Board (MSPB)."  5 U.S.C. § 7521(a).  Those MSPB members in turn may not be removed except for "inefficiency, neglect of duty, or malfeasance in office."  5 U.S.C. § 1202(d).  To make matters worse, the SEC Commissioners, who cannot act without approval from the MSPB, 5 U.S.C. § 7521, are themselves protected by tenure.  They may not be removed by the President from their positions except for "inefficiency, neglect of duty, or malfeasance in office."  *FEF*, 561 U.S. at 487; *MFS Sec. Corp. v. SEC*, 380 F.3d 611, 619-20 (2d Cir. 2004).  *Free Enterprise Fund* makes clear that these multiple levels of "for-cause limitations … contravene the Constitution's separation of powers."  561 U.S. at 492.  The result is a system of SEC ALJs whose appointments are defective and are accountable neither to the President nor to his alter ego, a Head of Department—indeed, they are insulated from control (and thus from accountability to the electorate) by multiple layers of protection from removal. This is a far cry from a President constitutionally charged with "the power

of appointing, overseeing, and controlling those who execute the laws." *Id.* at 492 (quoting James Madison, 1 Annals of Cong. 463 (1789)).

Justice Breyer identified precisely this issue in his *Lucia* concurrence, calling it the "embedded constitutional question" in the case. *Lucia*, 138 S. Ct. at 2060 (Breyer, J., concurring). "The same statute, the Administrative Procedure Act, that provides that the 'agency' will appoint its administrative law judges also protects the administrative law judges from removal without cause." *Id.* Thus, the ALJ before whom the SEC now seeks to renew its enforcement action is an administrative law judge with at least two levels of protection from removal without cause—just what *Free Enterprise Fund* interpreted the Constitution to forbid in the case of the Board members." *Id.*

While the Supreme Court in *Lucia* declined to address that question, it did so in order to await "*lower court* opinions to guide our analysis of the merits." *Id.* (citations omitted, emphasis added). Whether the ALJ before whom the Lucia plaintiffs have been haled is constitutionally appointed is a question that can only be addressed by an Article III court. The ALJ in Plaintiffs' enforcement proceeding has no jurisdiction to address questions of this type. Notably, the *Lucia* decision itself calls for lower *courts*, not ALJs, to address this question.

Considering the extraordinary power of SEC ALJs found in *Lucia*, their unchecked tenure, and the extra layers of tenure protection provided by the MSPB and the SEC, SEC ALJs clearly fail to meet constitutional requirements for executive oversight. The President or his Head of Department must have the power to remove ALJs.

Plaintiffs respectfully submit that SEC cannot make a case for constitutional appointment of its ALJs because of the impermissible multiple layers of tenure protection in violation of Article II, § 2, cl. 2.  Should it attempt to make such a case, it would directly contradict the Department of Justice's position on the removal question urged upon the Supreme Court in *Lucia.*  Br. For Resp't Supporting Pet'r, *Lucia v. SEC*, 2018 WL 125162, at *52-53 (U.S. Feb. 21, 2018).

## B. RJL and Mr. Lucia Will Suffer Irreparable Injury Absent This Court's Intervention

Declaratory and injunctive relief is necessary to prevent Plaintiffs from being compelled to submit—yet again—to a *void-ab-initio* process before an unconstitutional adjudicator.  Courts recognize that "irreparable injury [occurs] when [a] plaintiff [i]s forced to submit" to a "constitutionally infirm hearing," including the injury to reputation and "ability to procure comparable employment" after the hearing.  *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1056 (5th Cir. 1997).[6]

---

[6] *See also, e.g., United Church of the Med. Ctr. v. Med. Ctr. Comm'n*, 689 F.2d 693 (7th Cir. 1982) (irreparable injury in proceeding before adjudicator with a financial stake in the dispute presumed).  "[W]here the only question is whether it is constitutional to fasten the administrative procedure onto the litigant, … judicial relief [may be] sought as the only effective way of protecting the asserted constitutional right." *Pub. Utils. Comm'n of Cal. v. United States*, 355 U.S. 534, 539-40 (1958); *cf. Stolt-Neilson S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 670 n. 2 (2010) (recognizing hardship from suffering "an ultra vires proceeding"); *Moore v. City of East Cleveland*, 431 U.S. 494, 528 n. 3 (1977) (litigants may challenge an unconstitutional permitting scheme without seeking a permit because of the "irreparable injury" caused by being forced to submit to such a scheme).

18CV2692 DMS JLB

RJL and Mr. Lucia's irreparable harm is further proved by the uncompensable losses they will suffer if forced to proceed before the SEC ALJ.  A government action that threatens great, certain, and imminent injury is deemed irreparable where, because of sovereign immunity, the victim will not be able to recover compensatory damages.  *See Feinerman v. Bernardi*, 558 F. Supp. 2d 36, 51 (D.D.C. 2008) (if plaintiff "cannot recover damages from the defendant due to … sovereign immunity … any loss … suffered by the plaintiff is irreparable *per se*.").

The hardship is less a matter of the costs and burdens of litigation—though provably substantial in the extraordinary circumstances of this case—"and more that the [parties] are challenging the very existence of the ALJs as a part of the statutory scheme … but by the time that they access any judicial review, the proceedings will be complete, rendering the possibility of obtaining an injunction moot, even if the final Commission order is vacated … while there may be review, it cannot be considered truly meaningful at that point."  *Tilton*, 824 F. 3d at 298 (Droney J., dissenting).

The dispositive irreparable injury of being subjected to an unconstitutional proceeding occurs regardless of the merits decision here, so any *post hoc* adjudication is inadequate, as it is with other unconstitutional injuries.  *See* 11A *Wright & Miller, Fed. Pract. & Proc.* § 2948.1 (3d ed. 2018) ("When an alleged deprivation of a constitutional right is involved … most courts hold that no further showing of irreparable injury is necessary."). The renewed proceedings should therefore be enjoined.

18CV2692 DMS JLB

## C. The Balance of Equities Favors RJL and Mr. Lucia

RJL and Mr. Lucia are poised to suffer the irreparable harm of an unconstitutional administrative proceeding.  The SEC, by contrast, faces no harm at all from an injunction requiring it to litigate the constitutionality of its ALJ appointments in this Court before proceeding in its administrative tribunal.  Those questions can only be addressed by a court and are threshold questions that go to the validity of the administrative proceeding.

In fact, the SEC should welcome a definitive ruling on whether its ALJs are unconstitutionally insulated from presidential control now, rather than waiting on a years-delayed petition for review.  If RJL and Mr. Lucia prevail on that question—as they likely will given the clarity with which the Solicitor General's own brief in *Lucia* speaks to the issue—any order against RJL and Mr. Lucia will be void.  *See Freytag v. C.I.R.*, 501 U.S. 868, 879 (1991) ("alleged defect in the appointment … goes to the validity of the … proceeding").  The SEC has no justifiable interest in wasting its time and government resources—and the Lucia plaintiffs' money, time and reputations—in administrative proceedings that will just have to be redone—yet again—if and when the SEC has constitutionally acceptable ALJs in place.

Nor is this outcome a surprise to the SEC.  It always had the option of proceeding in district court.  Further, it made the choice to refrain from properly appointing its ALJs when the removal and appointments challenges were being made years ago.  Even if the SEC's decision to proceed against RJL and Mr. Lucia the first time before an unconstitutional ALJ were excusable, its decision to do so a second time—when the

removal issue is fully understood to be salient—is not.  The government bears the solemn responsibility to only hale its citizens before lawful tribunals.  No duty is more sacred.

If the district court cannot issue the injunction sought here, this grants the power to the SEC to make a citizen's rights into mere options, available only at the SEC's prerogative.  SEC gets to choose whether to proceed against a defendant in an Article III court or before an ALJ.  If a district court cannot issue injunctions like this when SEC elects to proceed before an ALJ, the agency has an incentive to go before the ALJ *precisely to avoid* adjudication of constitutional issues.  By postponing competent review of constitutional questions, SEC can 1) make the process the punishment and 2) roll the dice that the respondent will settle, give up, or run out of funds for a defense before ever reaching the stage of a hearing on the constitutional infirmities.   Constitutional rights then become mere options, doled out at the agency's whim.

The dissent in *Tilton* homed in on these concerns.  Noting that judicial review is only available if the targets continue to litigate before the SEC ALJ and lose on the merits:

> Given that the vast majority of all SEC administrative proceedings end in settlements rather than in actual decisions, it might well be that choosing to litigate is, in fact, equivalent to "betting the farm."  *See* Brian Mahoney, *SEC Could Bring More Insider Trading Cases In-House*, LAW360 (June 11, 2014) (quoting Andrew Ceresney explaining that the "vast majority of our cases settle," adding there have been a number of cases in recent months where we have threatened administrative proceedings, it was something we told the other side we were going to do and they settled.)

*Tilton*, 824 F.3d 276, 298 n.5 (Droney J., dissenting)

Having confessed error on the first Appointments Clause question—without fully correcting it, SEC's renewal of proceedings for a second time before an unconstitutional ALJ simply cannot be justified—except as a transparent calculation that the depletion of resources and reputational damage of endless litigation will force Mr. Lucia to settle. The human cost to Mr. Lucia in defending his rights is incalculable.

The balance of equities thus strongly supports enjoining the SEC's administrative process against RJL and Mr. Lucia.

### D. The Public Interest Favors Granting the Preliminary Injunction

The public interest in this case favors the enforcement of individual constitutional rights.  *See Gordon v. Holder*, 721 F.3d 638, 653 (D.C. Cir. 2013) ("[I]t may be assumed that the Constitution is the ultimate expression of the public interest.") (citation omitted). "[I]t is always in the public interest to prevent the violation of a party's constitutional rights." *G.&V. Lounge, Inc. v. Michigan Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994); *Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 298 (5th Cir. 2012) (preliminary injunction issued to protect First Amendment rights).

An injunction would also restore constitutional separation of powers by ensuring that members of the Executive Branch are accountable to the President and the people. *See FEF*, 561 U.S. at 492. The separation of powers "serves not only to make Government accountable but also to secure individual liberty." *Boumediene v. Bush*, 553 U.S. 723, 742 (2008).  "Liberty is always at stake when one or more of the branches seek to transgress the separation of powers." *Clinton v. City of New York,* 524 U.S. 417, 450

(1998) (Kennedy, J., concurring).  In *Sessions v. Dimaya*, 138 S. Ct. 1204, 1224 (2018), Justice Gorsuch acknowledged the "faithful expression of ancient due process and separation of powers principles the framers recognized as vital to ordered liberty under the Constitution." (Gorsuch J., concurring).

The injunctive relief sought in this action is necessary to preserve constitutional rights and thus unquestionably serves the public interest.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their application for a preliminary injunction enjoining Defendants from reinstituting administrative proceedings against RJL and Mr. Lucia.

By:  /s/ Mark A. Perry                              Dated: December 6, 2018
     Mark A. Perry, CA Bar No. 212532
     Gibson, Dunn & Crutcher LLP
     1050 Connecticut Ave. NW
     Washington, DC 20036-5306
     Telephone: 202-887-3667
     Email: MPerry@gibsondunn.com

     Margaret A. Little (*pro hac vice pending*), CT Bar No. 303494
     Caleb Kruckenberg (*pro hac vice pending*), PA Bar No. 322264
     New Civil Liberties Alliance
     1225 19th St. NW, Suite 450
     Washington, DC 20036
     Telephone: 202-869-5210
     Email: peggy.little@ncla.legal
     Email: caleb.kruckenberg@ncla.legal

*Attorneys for Plaintiffs Raymond J. Lucia Companies, Inc. and Raymond J. Lucia, Sr*

18CV2692 DMS JLB

1

2

## CERTIFICATE OF SERVICE

3

4

I certify that on this 6th day of December, 2018, I have served a copy of the above and foregoing on all counsel of record through the Court's CM/ECF system.

5

6

I certify that a copy of the foregoing was also served by registered or certified mail upon all defendants in the above-entitled action on December 6, 2018 as follows:

7

8

9

10

11

12

13

14

Brent J. Fields, Secretary
U.S. Securities and Exchange
Commission
100 F Street, NE, Mail Stop 1090
Washington, DC 20549

Jay Clayton, Chairman
U.S. Securities and Exchange
Commission
100 F Street, NE
Washington, DC 20549

Matthew G. Whitaker
Acting Attorney General
United States of America
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Washington, DC 20530-0001

U.S. Attorney's Office
Southern District of California
Federal Office Building
880 Front Street, Room 6293
San Diego, California 92101-8893

15

16

17

/s/Mark A. Perry_____
Mark A. Perry, CA Bar No. 212532

18

19

20

21

22

23

24

25

26

27

28

26

18CV2692 DMS JLB