JOSEPH H. HUNT
Assistant Attorney General
Civil Division

ROBERT S. BREWER, JR.
United States Attorney

CHRISTOPHER R. HALL
Assistant Branch Director
Federal Programs Branch

CHETAN A. PATIL (DC 999948)
CESAR A. LOPEZ-MORALES (MA 690545)
REBECCA CUTRI-KOHART (DC 1049030)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883
Ben Franklin Station
Washington, DC 20044
Tel.: (202) 305-4968; Fax: (202) 616-8470
Email: chetan.patil@usdoj.gov

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND J. LUCIA COMPANIES, INC., and RAYMOND J. LUCIA, SR.,<br><br>        Plaintiffs,<br><br>   v.<br><br>U.S. SECURITIES AND EXCHANGE COMMISSION, JAY CLAYTON, in his official capacity as Chairman of the U.S. Securities and Exchange Commission, and WILLIAM P. BARR[1], in his official capacity as United States Attorney General<br><br>        Defendants. | Case No.: 3:18-cv-02692-DMS-JLB<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:   March 22, 2019<br>Time:   1:30 p.m.<br>Courtroom:  13A<br>Judge:  Hon. Dana M. Sabraw<br>Magistrate:  Hon. Jill L. Burkhardt |

---

[1] By operation of Fed. R. Civ. P. 25(d), Attorney General Barr is automatically substituted for former Acting Attorney General Matthew G. Whitaker as a defendant.

## **TABLE OF CONTENTS**

INTRODUCTION...................................................................................................1

BACKGROUND....................................................................................................2

   I.    STATUTORY AND REGULATORY BACKGROUND ....................2

   II.   THE SEC'S ADMINISTRATIVE LAW JUDGES ...............................3

   III.  PROCEDURAL HISTORY ...............................................................3

LEGAL STANDARD............................................................................................5

ARGUMENT .......................................................................................................5

   I.    PLAINTIFFS CANNOT SHOW A SUBSTANTIAL
       LIKELIHOOD OF SUCCESS ON THE MERITS. .............................5

      A.   No Jurisdiction Exists for Plaintiffs' Suit in This Court. ..............5

          1.   The Exchange Act Creates a Comprehensive and
              Exclusive Review Scheme............................................7

          2.   Plaintiffs' Claim Falls Within the Exchange Act's
              Review Scheme.............................................................10

      B.   The Court Lacks Jurisdiction Because Plaintiff Does Not
          Challenge Final Agency Action.....................................................16

      C.   Properly Construed, the ALJ's Removal Protections
          Are Constitutional..........................................................................18

   II.   PLAINTIFFS CANNOT SHOW THAT IRREPARABLE
       HARM WILL RESULT FROM ALLOWING THE
       ADMINISTRATIVE PROCEEDING TO CONTINUE...................22

   III.  THE BALANCE OF HARMS AND THE PUBLIC INTEREST
       WEIGH AGAINST AN INJUNCTION. ...............................................24

CONCLUSION ...................................................................................................25

# TABLE OF AUTHORITIES

## CASES

*Abbott Labs. v. Gardner,*
    387 U.S. 136 (1967), *abrogated on other grounds,*
    *Califano v. Sanders,* 430 U.S. 99 (1977) ............................................................. 8

*All. for Wild Rockies v. Cottrell,*
    632 F.3d 1127 (9th Cir. 2011) ................................................................................. 5

*Amerco v. NLRB,*
    458 F.3d 883 (9th Cir. 2006) ................................................................................. 15

*Arch Coal, Inc. v. Acosta,*
    888 F.3d 493 (D.C. Cir. 2018) ....................................................................... 6, 7, 10

*Bauman v. U.S. Dist. Court,*
    557 F.2d 650 (9th Cir. 1977) ................................................................................. 17

*Bebo v. SEC,*
    799 F.3d 765 (7th Cir. 2015) ......................................................................... *passim*

*Bennett v. SEC,*
    844 F.3d 174 (4th Cir. 2016) ......................................................................... *passim*

*Charles Hughes & Co. v. SEC,*
    139 F.2d 434 (2d Cir. 1943) ................................................................................... 3

*Chau v. SEC,*
    72 F. Supp. 3d 417 (S.D.N.Y. 2014) ..................................................................... 15

*Elgin v. U.S. Dep't of Treasury,*
    567 U.S. 1 (2012) ........................................................................................... *passim*

*Elk Run Coal Co. v. U.S. Department of Labor,*
    804 F. Supp. 2d 8 (D.D.C. 2011) ........................................................................... 10

*Energy Transfer Partners, L.P. v. FERC,*
    567 F.3d 134 (5th Cir. 2009)* ................................................................................. 18

*Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*,
    561 U.S. 477 (2010) ..................................................................... *passim*

*FTC v. Standard Oil*,
    449 U.S. 232 (1980) ..................................................... 12, 15, 17, 23

*Gallo Cattle Co. v. USDA*,
    159 F.3d 1194 (9th Cir. 1998) ................................................... 17

*Hill v. SEC*,
    825 F.3d 1236 (11th Cir. 2016) .......................................... *passim*

*Home Loan Bank Bd. v. Mallonee*,
    196 F.2d 336 (9th Cir. 1952) ...................................................... 23

*In re United States*,
    895 F.3d 1101 (9th Cir. 2018) ................................................... 17

*INS v. Legalization Assistance, Proj.*,
    510 U.S. 1301 (1993) ................................................................. 25

*Jarkesy v. SEC*,
    803 F.3d 9 (D.C. Cir. 2015) ............................................... *passim*

*Jones Brothers, Inc. v. Secretary of Labor*,
    898 F.3d 669 (5th Cir. 2018) ..................................................... 14

*Leedom v. Kyne*,
    358 U.S.  (1958) ........................................................................ 15

*Lucia v. SEC*,
    138 S. Ct. 2044 (2018) ............................................... 3, 4, 20, 24

*Maryland v. King*,
    133 S. Ct. 1 (2012) .................................................................... 24

*McNary v. Haitian Refugee Center, Inc.*,
    498 U.S. 479 (1991) ................................................................... 13

*Morris & Dickson Co. v. Whitaker*,
  No. 18-1406, 2018 WL 6834711 (W.D. La. Dec. 28, 2018) .................... 6, 12, 15, 24

*Morrison v. Olson*,
  487 U.S. 654 (1988) ........................................................................................... 20

*Myers v. United States*,
  272 U.S. 52 (1926) ........................................................................................ 18, 21

*Nationwide Mut. Ins. Co. v. Liberatore*,
  408 F.3d 1158 (9th Cir. 2005) ........................................................................... 17

*Nken v. Holder*,
  556 U.S. 418 (2009) ........................................................................................... 24

*Nyunt v. Chairman, Broadcasting Bd. of Governors*,
  589 F.3d 445 (D.C. Cir. 2009) ........................................................................... 15

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.*,
  465 F.3d  (9th Cir. 2006) ................................................................................. 1, 16

*Pub. Util. Comm'r of Or. v. Bonneville Power Admin.*,
  767 F.2d 622 (9th Cir. 1985) ............................................................................. 24

*Pub. Citizen v. DOJ*,
  491 U.S. 440 (1989) ........................................................................................... 20

*Ramspeck v. Fed. Trial Exam'rs, Conf.*,
  345 U.S. 128 (1953) ...................................................................................... 21, 22

*San Diego v. Whitman*,
  242 F.3d 1097 (9th Cir. 1998) ........................................................................... 17

*Sierra On-Line, Inc. v. Phoenix Software, Inc.*,
  739 F.2d 1415 (9th Cir. 1984) ........................................................................... 24

*Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*,
  205 F. Supp. 3d 4 (D.D.C. 2016) ...................................................................... 22

*Stormans, Inc. v. Selecky*,
  586 F.3d 1109 (9th Cir. 2009) ............................................................................. 5

*Sturm, Ruger & Co., Inc. v. Chao*,
   300 F.3d 867 (D.C. Cir. 2002) ....................................................... 9

*Thunder Basin Coal Co. v. Reich*,
   510 U.S. 200 (1994) .............................................................. 1, 5, 7

*Tilton v. SEC*,
   824 F.3d 276 (2d Cir. 2016) ................................................ *passim*

*Total Gas & Power N. Am., Inc. v. FERC*,
   859 F.3d 325 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 2648 (2018) .............................. 18

*Ukiah Valley Med. Ctr. v. FTC*,
   911 F.2d 261 (9th Cir.1990) ....................................................... 16

*Valley v. Rapides Parish School Board*,
   118 F.3d 1047 (5th Cir. 1997) .................................................... 23

*Winter v. Nat. Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) ...................................................................... 5


**CONSITUTIONAL PROVISIONS**

U.S. Const. art. II, § 1, cl. 1 ........................................................ 18

U.S. Const. art. II, § 2, cl. 2 ........................................................ 4

U.S. Const. art. II, § 3 ............................................................... 18

**STATUTES**

5 U.S.C. § 702 ......................................................................... 17

5 U.S.C. § 706 ......................................................................... 17

5 U.S.C. § 1202 ....................................................................... 19

5 U.S.C. § 3105 ........................................................................ 3

5 U.S.C. § 7521 ......................................................... 3, 18, 19, 21

15 U.S.C. § 78a ........................................................................ 2

15 U.S.C. § 78d-1 ................................................................... 2, 3

15 U.S.C. § 78bb .................................................................................................. 8

15 U.S.C. § 78u ............................................................................................... 2, 16

15 U.S.C. § 78u-1 ............................................................................................... 2

15 U.S.C. § 78u-2 ............................................................................................... 2

15 U.S.C. § 78u-3 ............................................................................................ 2, 7

15 U.S.C. § 78y ........................................................................................ 3 , 7, 10

15 U.S.C. § 7217 ............................................................................................... 19

28 U.S.C. § 1651 ............................................................................................... 17

28 U.S.C. § 2201 ............................................................................................... 17

30 U.S.C. § 816 ................................................................................................... 7

42 U.S.C. § 2000e-16 ........................................................................................ 21

## **LEGISLATIVE MATERIALS**

Administrative Procedure Act—Legislative History, S. Doc. No. 248,
   79th Cong., 2d Sess., (1946) ......................................................................... 20

S. Rep. No. 101-337 .......................................................................................... 24

## **REGULATIONS**

5 C.F.R. § 930.211 .............................................................................................. 3

5 C.F.R. § 1201.137 ............................................................................................ 3

17 C.F.R. § 201.221 ............................................................................................ 2

17 C.F.R. § 201.222 ............................................................................................ 2

17 C.F.R. § 201.232 ............................................................................................ 2

17 C.F.R. § 201.233 ............................................................................................ 2

17 C.F.R. § 201.300 ............................................................................................ 2

17 C.F.R. § 201.360 ......................................................................................... 2, 3

17 C.F.R. § 201.400 ............................................................................................ 2

17 C.F.R. § 201.410 ............................................................................................ 2

17 C.F.R. § 201.411 ............................................................................................ 3

17 C.F.R. § 201.452 ............................................................................................ 3

## **OTHER AUTHORITIES**

Black's Law Dictionary (4th ed. 1951) ................................................................20

# **INTRODUCTION**

To find subject matter jurisdiction over Plaintiffs' claim, this Court would need to conclude that the Second, Fourth, Seventh, Eleventh, and D.C. Circuits all got it wrong when they unanimously concluded that district courts lack jurisdiction over claims materially identical to Plaintiffs'. The Court would then need to conclude it had jurisdiction over an Administrative Procedure Act claim even though the agency has not yet issued a final order. There is no basis in the law to do so.

Plaintiffs' motion seeks to enjoin an ongoing SEC administrative proceeding on the grounds that the provision governing the removal of SEC ALJs violates the separation of powers. However, Congress can establish a comprehensive scheme for judicial review of agency action that channels review through an administrative forum and then to the federal courts of appeals, thereby precluding district court jurisdiction. *See, e.g.*, *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994). In the Securities Exchange Act of 1934, Congress did exactly that, creating a detailed review scheme that channels all judicial review of SEC administrative proceedings to the courts of appeals. Nowhere in that scheme did Congress provide for district court jurisdiction. Pursuant to this exclusive review scheme, five courts of appeals have, in recent years, addressed and rejected virtually identical attempts by plaintiffs to short-circuit SEC administrative proceedings by raising constitutional challenges to the authority of SEC ALJs in district court. *See Bennett v. SEC*, 844 F.3d 174 (4th Cir. 2016); *Hill v. SEC*, 825 F.3d 1236 (11th Cir. 2016); *Tilton v. SEC*, 824 F.3d 276 (2d Cir. 2016); *Bebo v. SEC*, 799 F.3d 765 (7th Cir. 2015); *Jarkesy v. SEC*, 803 F.3d 9 (D.C. Cir. 2015) (collectively, the "*SEC ALJ Cases*"). These cases are directly applicable here.

At the same time, the Ninth Circuit also rejects challenges to agency proceedings raised prior to completion of those proceedings. *See Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 982 (9th Cir. 2006). And, even if the Court did have jurisdiction, Plaintiffs' claim would fail on the merits because the removal protections for SEC ALJs may be interpreted consistent with Article II of the Constitution.

In short, Plaintiffs cannot show that this Court has jurisdiction over their challenge to the SEC's ALJs, and their claim fails on the merits.  Accordingly, Plaintiffs are not entitled to a preliminary injunction, and their motion should be denied.

## BACKGROUND

## I.   STATUTORY AND REGULATORY BACKGROUND

As part of its mission to protect investors, promote capital formation, and maintain fair, orderly, and efficient markets, the SEC investigates possible violations of the federal securities laws and enforces those laws in civil actions and administrative proceedings.  The Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. § 78a, *et seq.*, and its implementing regulations establish a comprehensive scheme for the commencement and review of SEC enforcement actions.  Congress has authorized the Commission to proceed against those suspected of violating the Exchange Act and granted the Commission discretion to address potential violations by filing an enforcement action in federal district court or in administrative proceedings before the agency.  *See, e.g., id.* §§ 78u(d), 78u-1, 78u-2, 78u-3.

The adjudication of administrative proceedings may be delegated to an SEC ALJ.  *See id.* § 78d-1(a).  When the Commission assigns enforcement proceedings to an ALJ, the ALJ conducts prehearing proceedings—including holding conferences, receiving legal briefs and motions, and overseeing discovery, *see* 17 C.F.R. §§ 201.221-.22, 201.232-.33—and holds an evidentiary hearing, *id.* § 201.300.  At the conclusion of the hearing, the ALJ makes an initial decision, *id.* § 201.360(a)(1), which the respondent or the SEC's Division of Enforcement may appeal to the Commission, *id.* § 201.410, or which the Commission may review on its own initiative, *id.* § 201.400(a).  If no petition for review is filed and the Commission does not undertake review on its own initiative, "the Commission will issue an order" making the ALJ's initial decision final.  *Id.* § 201.360(d)(2).  If the Commission reviews an initial decision, it does so *de novo*, and it "may affirm, reverse, modify, [or] set aside" an initial decision "in whole or in part," "may make any findings or conclusions . . . on the basis of the record," and

may remand for further proceedings. *Id.* §§ 201.411(a), 201.452.  If a majority of participating Commissioners does not agree to a disposition on the merits, the "initial decision shall be of no effect." *Id.* § 201.411(f).  Sanctions are effective only upon issuance of a final order, *see id.* §§ 201.360(d), 201.411(a), and there are no circumstances under which an ALJ's initial decision becomes final without Commission action.

Congress further provided that "[a] person aggrieved by a final order of the Commission" can seek judicial review of the order in a federal court of appeals.  15 U.S.C. § 78y(a)(1).  Upon the filing of the record in the court of appeals, the court has "exclusive" jurisdiction to affirm, modify, or set aside the final order.  *Id.* § 78y(a)(3).

## II.    THE SEC'S ADMINISTRATIVE LAW JUDGES

The SEC has used ALJs since the Commission's early days.  *See Charles Hughes & Co. v. SEC*, 139 F.2d 434 (2d Cir. 1943).  The SEC's enabling statute authorizes the Commission to delegate any of its functions to an ALJ provided that the Commission "retain[s] a discretionary right to review" any delegated functions.  5 U.S.C. § 78d-1(a), (b).  The SEC may appoint as many ALJs as is warranted.  *See* 5 U.S.C. § 3105.

Once an ALJ is appointed, certain personnel actions (*e.g.*, removal, suspension) "may be taken against an [ALJ] . . . by the agency in which the [ALJ] is employed only for good cause established and determined" by the Merit Systems Protection Board ("MSPB") after an "opportunity for hearing before the [MSPB]."  5 U.S.C. § 7521; *see also* 5 C.F.R. §§ 930.211, 1201.137.

## III.   PROCEDURAL HISTORY

Plaintiffs were registered investment advisers who marketed a wealth-management strategy that they called "Buckets of Money," under which retirement savings were divided among assets of different risk levels (*e.g.*, bonds, fixed annuities, and stocks) and periodically reallocated as those assets changed in value.  *See Lucia v. SEC*, 138 S. Ct. 2044, 2049 (2018).  In September 2012, the Commission instituted administrative proceedings against Plaintiffs, alleging that they had used misleading

presentations to deceive prospective clients and charging Plaintiffs with violating various provisions of the federal securities laws. *Id.*

The proceeding was assigned to ALJ Cameron Elliot, who issued an initial decision concluding that Plaintiffs had violated the Investment Advisers Act. *Id.* at 2049-50. The Commission remanded the proceeding back to ALJ Elliot for additional fact-finding, who subsequently issued a revised initial decision. *Id.* at 2050. Plaintiffs sought Commission review, arguing, among other things, that the proceedings against them were unlawful because ALJ Elliot was an "Officer[] of the United States" within the meaning of the Appointments Clause, U.S. Const. art. II, § 2, cl. 2, and was improperly appointed because he had not been appointed by the Commission itself. *Id.* On September 3, 2015, after an independent review of the record, the Commission issued a final order finding that Plaintiffs violated the securities laws in marketing their Buckets of Money strategy and rejecting their Appointments Clause claim. *Id.*

Plaintiffs appealed that decision to the D.C. Circuit and then to the Supreme Court. The Court ultimately ruled in Plaintiffs' favor, holding that the SEC's ALJs are inferior officers who had been appointed in violation of the Appointments Clause. *Id.* at 2053-54. The Court ordered that Plaintiffs were entitled to a new hearing before a properly appointed ALJ. *Id.* at 2055.

While the case was pending on appeal, the SEC issued a general order on November 30, 2017, which, among other things, ratified the appointment of its ALJs. *Id.* at 2055 n.6.[1] After the Supreme Court's decision in *Lucia*, the SEC once more ratified the appointment of its ALJs and reassigned Plaintiffs' case to ALJ Carol Fox Foelak. Since then, Plaintiffs have moved to dismiss the proceedings, in part on the grounds that the removal protections for SEC ALJs violate the separation of powers.[2]

---

[1] In *Lucia*, the Court declined to address the validity of the ratification order. *See id.*

[2] *See* Resps.' Mot. to Dismiss at 22-23, *In re Raymond J. Lucia Companies, Inc.* (SEC Dec.

That motion is pending.  To date, no hearing has been scheduled.

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008).  To obtain such relief, Plaintiffs must establish (1) "that [they are] likely to succeed on the merits," (2) "that [they are] likely to suffer irreparable harm in the absence of preliminary relief," (3) "that the balance of equities tips in [their] favor," and (4) "that an injunction is in the public interest."  *Id.* at 20;[3] *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1126-27 (9th Cir. 2009).

## ARGUMENT

## I.   PLAINTIFFS CANNOT SHOW A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS.

### A.   No Jurisdiction Exists for Plaintiffs' Suit in This Court.

The *Thunder Basin* doctrine recognizes that when Congress creates a detailed statutory scheme, under which disputes are addressed first in an administrative forum and then appealed directly to a court of appeals, litigants must follow that process to raise their claims, and district courts lack jurisdiction over attempts to bypass it.  *See Thunder Basin*, 510 U.S. at 215 (district court jurisdiction precluded when claims can be "meaningfully addressed in the Court of Appeals").  In the Exchange Act, Congress

---

3, 2018), *available at* https://www.sec.gov/litigation/apdocuments/3-15006-event-121.pdf.

[3] After *Winter*, the Ninth Circuit held that "the 'serious questions' version of the sliding scale test for preliminary injunctions remains viable. . . . [T]he test has been formulated as follows: A preliminary injunction is appropriate when a plaintiff demonstrates that serious questions going to the merits were raised and the balance of hardships tips sharply in the plaintiff's favor."  *All. for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134-35 (9th Cir. 2011) (citation omitted).  But plaintiffs must also satisfy the *Winter* factors.  *Id.* "That is, 'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*

did just that, as five courts of appeals recognize.  The Court should follow suit.

"[C]ourts determine that Congress intended that a litigant proceed exclusively through a statutory scheme of administrative and judicial review when (i) such intent is fairly discernible in the statutory scheme, and (ii) the litigant's claims are of the type Congress intended to be reviewed within [the] statutory structure."  *Arch Coal, Inc. v. Acosta*, 888 F.3d 493, 498 (D.C. Cir. 2018) (quoting *Jarkesy*, 803 F.3d at 15).  The Supreme Court has repeatedly held that this principle applies equally to constitutional challenges to agency action.  *See, e.g.*, *Elgin v. U.S. Dep't of Treasury*, 567 U.S. 1, 10 (2012).

In *Elgin*, for example, the Supreme Court addressed *Thunder Basin* in the context of a facial constitutional challenge to the Military Selective Service Act brought in district court by former federal employees who had been removed from employment for failing to register for the Selective Service.  *Id.* at 7.  The Court held that the doctrine precluded district court jurisdiction, "even for employees who bring constitutional challenges[,]" because the Civil Service Reform Act provides for administrative review before the MSPB, followed by direct appeal to the Federal Circuit.  *Id.* at 13.  The plaintiffs were required to follow that review scheme even though they raised a constitutional claim and the MSPB believed it lacked the authority to declare a federal statute unconstitutional.  *Id.* at 16-17.

Since *Elgin*, five courts of appeals have addressed attempts—just like Plaintiffs'—to enjoin administrative proceedings by plaintiffs raising constitutional challenges in district court to the authority of SEC ALJs to preside over SEC administrative proceedings.  And just as the Court should do here, each court held that the Exchange Act's statutory review scheme precluded district court jurisdiction over the plaintiffs' claims.  *See, e.g.*, *Bennett*, 844 F.3d at 177-78 (appointment and removal of SEC ALJs); *Hill*, 825 F.3d at 1240 (same); *Tilton*, 824 F.3d at 279-80 (same); *Bebo*, 799 F.3d at 768 (removal); *see also Jarkesy*, 803 F.3d at 16-17 (jury trial, equal protection, and due process); *see also Morris & Dickson Co. v. Whitaker*, No. 18-1406, 2018 WL 6834711, at *1 (W.D. La. Dec. 28, 2018) (appointment and removal of DEA ALJs).

1           *1.  The Exchange Act Creates a Comprehensive and Exclusive Review Scheme.*

2       The first step of the *Thunder Basin* analysis looks to the text, structure, and

3 purpose of the statutory scheme.  *See Elgin*, 567 U.S. at 10.  As the *SEC ALJ Cases*

4 recognize, the Exchange Act reflects an intent to channel review through a detailed

5 review scheme.

6       The securities laws provide a "comprehensive structure for the adjudication of

7 securities violations in administrative proceedings."  *Jarkesy*, 803 F.3d at 16.

8 Specifically, these laws set forth an administrative process that provides respondents

9 the opportunity to be heard and present evidence challenging the charges before an

10 ALJ; to appeal an adverse ALJ initial decision to the Commission; and, if they are

11 aggrieved by the resulting final order, to pursue direct judicial review in a court of

12 appeals.  *See, e.g.*, 15 U.S.C. §§ 78u-3(a), 78y(a)(1).  These provisions are "nearly

13 identical" to those of the Mine Act, *Jarkesy*, 803 F.3d at 16; *see also Hill*, 825 F.3d at

14 1242 ("materially indistinguishable"), which the Supreme Court held in *Thunder Basin*

15 was the exclusive means for challenging the constitutionality of actions by the Mine

16 Administration*, see* 510 U.S. at 207-16.

17       Moreover, the Exchange Act—like the Mine Act—expressly makes court of

18 appeals jurisdiction over challenges to the Commission's final orders "exclusive."

19 *Compare* 15 U.S.C. § 78y(a)(3), *with* 30 U.S.C. § 816(a)(1).  And, also like the Mine Act,

20 the Exchange Act provides for limited district court jurisdiction in special

21 circumstances inapplicable here.  *See Bennett*, 844 F.3d at 181; *Hill*, 825 F.3d at 1244

22 (collecting provisions).  The decision to authorize district court review only for certain

23 types of claims "demonstrates that Congress knew how to provide alternative forums

24 for judicial review based on the nature of a[] . . . claim," but that it "intended no such

25 exception" for all other claims.  *Elgin*, 567 U.S. at 13; *see also Arch Coal*, 888 F.3d at 499

26 ("express[] authoriz[ation]" of district court jurisdiction "in only two narrow

27 circumstances . . . leaves no role for district court review of [other cases]").

28       In response, Plaintiffs throw several arguments against the wall, each of which

has already been soundly rejected in the *SEC ALJ Cases*.  They first seek a harbor in the Exchange Act's "savings clause," which states that the "rights and remedies" under the Act "shall be in addition to any and all other rights and remedies that may exist at law or in equity."  Pls.' Mem. of P. & A. ("Pls.' Mem.") at 5-6, ECF No. 3-2 (quoting 15 U.S.C. § 78bb(a)(2)).  They argue that that a "substantially similar savings clause" has been held to cut in support of preserving district court jurisdiction.  *Id.* (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 144-45 (1967), *abrogated on other grounds*, *Califano v. Sanders*, 430 U.S. 99 (1977)).  But, as *Hill* and *Bennett* have already recognized, *Abbott Laboratories* is distinguishable.  There, the Court's holding "rested on the narrow nature of the review statute at issue," which provided for "'*special* review procedures' only for 'certain enumerated kinds of regulations.'"  *Hill*, 825 F.3d at 1244 (quoting *Abbott Labs.*, 387 U.S. at 141).  Because that provision did not cover the plaintiff's particular claim, the Court concluded that "only those special agency decisions covered by the statute must be resolved under the review scheme," a conclusion "buttressed" by the savings clause.  *Hill*, 825 F.3d at 1244.  However, here, just as in *Hill*, the language of § 78y clearly covers Plaintiffs' claims, and thus *Abbott Laboratories* does not apply.  *See id.*; *accord Bennett*, 844 F.3d at 183.[4]

Next, Plaintiffs argue that § 78y only allows for review of "final order[s]" and Plaintiffs are not challenging a final order, but rather the "*process* leading to a final decision."  Pls.' Mem. at 7.  The *SEC ALJ Cases* rejected this argument too.  *See, e.g.*, *Tilton*, 824 F.3d at 283 (plaintiff argued that harm from "exposure to the ongoing proceeding—as distinct from any adverse ruling that might result"—warranted

---

[4] Plaintiffs also argue that the Supreme Court has stated that § 78y "does not expressly . . . or implicitly" limit district court jurisdiction, Pls.' Mem. at 5 (quoting *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 489 (2010)); *id.* at 8 (same), but this quote is "taken out of context" and "distinguishable on the facts" from this case, *Bennett*, 844 F.3d at 182 (addressing same quotation), because it concerned challenges to actions of the PCAOB under § 78y, not challenges to actions of the *Commission*, like Plaintiffs', *see infra* p. 12.

Defs.' Opp'n to Mot. for Prelim. Inj.   - 8 -   Case No.: 3:18-cv-02692-DMS-JLB

injunction).  In *Hill*, the Eleventh Circuit held that § 78(y) demonstrated Congress's intent that "any challenge to a final Commission order, even one framed as a constitutional challenge to the *administrative process itself* . . . receive judicial review" in the court of appeals.  825 F.3d at 1243 (emphasis added).  Because Plaintiffs seek to challenge an administrative proceeding that "if allowed to proceed, necessarily will result in a final order," their constitutional challenge is "essentially [an] objection[] to [a] forthcoming Commission order[]."  *Id.*  Indeed, Plaintiffs' interpretation of § 78y as permitting preemptive challenges before an administrative proceeding can be completed would turn Congress's administrative process on its head, allowing, as a matter of course, parties to short-circuit any administrative proceeding by running to district court before the Commission can issue a final decision.  In fact, it would allow parties to fully litigate a proceeding before an ALJ, and then, if dissatisfied with the ruling, seek district court review before the Commission could act on the initial decision.  That is not what Congress intended.  *See Sturm, Ruger & Co., Inc. v. Chao*, 300 F.3d 867, 876 (D.C. Cir. 2002) (court has "obligation to respect the review process by Congress" by preventing plaintiff from "mak[ing] an end run around that process by going directly to district court.").

Plaintiffs also claim that the Exchange Act cannot preclude district court jurisdiction because the statute itself allows the SEC to proceed "either [in] district court or the administrative forum."  Pls.' Mem. at 8; *see also id.* at 9.  But "Congress granted the choice of forum to the *Commission*, and that authority could be for naught if respondents [in administrative proceedings] could countermand the Commission's choice by filing a court action."  *Jarkesy*, 803 F.3d at 17; *see also Hill*, 825 F.3d at 1243-44 (same); *Tilton*, 824 F.3d at 282 n.3 (same).  Thus, the choice of forum granted to the SEC does nothing to indicate that *Plaintiffs* may circumvent an ongoing administrative proceeding by filing suit in district court.

Finally, Plaintiffs suggest that § 78y cannot bar jurisdiction because the review provision is "limited to violations of the securities law," not constitutional claims.  Pls.'

Mem. at 9.  But, the language of the statute is broad, "covering all final Commission orders without exception," which reflects an intent to cover "any challenge to a final Commission order, even one framed as a constitutional challenge to the administrative process itself."  *Hill*, 825 F.3d at 1243; *see also Elgin*, 567 U.S. at 13 (pointing to absence of exception for constitutional claims).  Nor does it matter that SEC ALJs purportedly lack authority to rule on constitutional claims, *see* Pls.' Mem. at 4; *id.* at 9 n.2, as an administrative review scheme may be exclusive even if the agency "lacks authority to declare a federal statute unconstitutional." *Elgin*, 567 U.S. at 16-17.[5]

2.     *Plaintiffs' Claim Falls Within the Exchange Act's Review Scheme.*

"A claim will be found to fall outside of the scope of" a comprehensive review scheme "in only limited circumstances, when (1) a finding of preclusion might foreclose all meaningful judicial review; (2) the claim is wholly collateral to the statutory review provisions; and (3) the claims are beyond the expertise of the agency."  *Arch Coal*, 888 F.3d at 500.  Plaintiffs' claim satisfies none of these requirements, and thus falls squarely within the ambit of the Exchange Act's review scheme.

As to the first requirement, Plaintiffs do not dispute that if they do not prevail before the Commission, they will be free to raise their constitutional claim to a court of appeals, which is "fully competent to adjudicate" the claim.  *Elgin*, 567 U.S. at 17; *see also* 15 U.S.C. § 78y.  Thus, meaningful judicial review—"the most important factor in the *Thunder Basin* analysis," *Bennett*, 844 F.3d at 183 n.7—is plainly available, *see, e.g.*, *Hill*, 825 F.3d at 1245; *Bebo*, 799 F.3d at 774 (meaningful review available because "[a]fter the pending enforcement action has run its course, [plaintiff] can raise her objections in a circuit court of appeals established under Article III").

As to the second requirement, Plaintiffs' claim is not "wholly collateral" to the

---

[5] For this reason, *Elk Run Coal Co. v. U.S. Department of Labor*, 804 F. Supp. 2d 8 (D.D.C. 2011), *see* Pls.' Mem. at 10, which predates and is inconsistent with *Elgin*, is of little help to Plaintiffs.

review scheme. When a claim "arises out of the enforcement proceeding and provides an affirmative defense" in that proceeding, it is not wholly collateral. *Bennett*, 844 F.3d at 187; *accord Tilton*, 824 F.3d at 288. Even a facial constitutional challenge that an agency believes it lacks authority to adjudicate is not "wholly collateral" to a review scheme when it serves as "the vehicle by which" a party seeks to reverse agency action. *Elgin*, 567 U.S. at 22. Here, the sole object of Plaintiffs' constitutional claim is to prevent the SEC from continuing the enforcement proceedings. *See* Compl. at 23, ECF No. 1 (prayer for relief). Thus, their claim is "inextricably intertwined with the conduct of the very enforcement proceeding the statute grants the SEC the power to institute and resolve as an initial matter." *Jarkesy*, 803 F.3d at 23 (citation omitted).[6]

And as to the third requirement, though Plaintiffs' removal claim does not concern the industry-specific issues the SEC typically addresses, a "broader conception of agency expertise [applies] in the jurisdictional context." *Tilton*, 824 F.3d at 289. In *Elgin*, the Supreme Court held that the MSPB could "apply its expertise" to a facial constitutional challenge to a statute—even though it disclaimed authority to adjudicate that challenge—because the claim could "involve other statutory or constitutional claims," the resolution of which "in the employee's favor might fully dispose of the case." 567 U.S. at 22-23. In other words, because the plaintiff could prevail on the underlying claims and thereby moot the constitutional claim, the latter fell within the agency's expertise. *Id.* at 23; *see also Bennett*, 844 F.3d at 187-88 (SEC "could bring its expertise to bear here by concluding that the . . . substantive claims are meritless, thereby fully disposing of the case before reaching the constitutional question"); *Hill*, 825 F.3d at 1250 ("As in *Elgin*, here the Commission might decide that the SEC's substantive claims are meritless and thus would have no need to reach the constitutional claims."). So too here. Indeed, this conclusion is consistent with the

---

[6] *Hill* and *Bebo* declined to decide this factor, as the other factors clearly demonstrated that jurisdiction was precluded. *See Hill*, 825 F.3d at 1252; *Bebo*, 799 F.3d at 774.

basic principle of constitutional avoidance.  "[O]ne of the principal reasons to await the termination of agency proceedings is to obviate all occasion for judicial review." *FTC v. Standard Oil*, 449 U.S. 232, 244 n.11 (1980) (citation omitted).

Thus, this case is indistinguishable from the *SEC ALJ Cases*.  And Plaintiffs have identified no legitimate basis for distinguishing those decisions.

*First*, Plaintiffs erroneously suggest that *Free Enterprise* controls this case.  Pls.' Mem. at 11-14.  All five courts of appeals to have decided the issue disagree.  *See Bennett*, 844 F.3d at 186; *Hill*, 825 F.3d at 1247-48; *Tilton*, 824 F.3d at 288-89; *Bebo*, 799 F.3d at 774; *Jarkesy*, 803 F.3d at 19-20; *see also Morris & Dickson*, 2018 WL 6834711, at *9 (rejecting argument that *Free Enterprise* was "on all fours" with post-*Lucia* challenge to removal of DEA ALJs).[7]

In *Free Enterprise*, the Supreme Court held that the Exchange Act did not preclude district court jurisdiction over a challenge to the removal protections for members of the PCAOB, a self-regulatory organization subject to SEC oversight.  561 U.S. at 489-91.  Central to this conclusion, however, was the fact that the plaintiffs lacked a guaranteed path to federal court because § 78y "provides only for judicial review of *Commission* action," not of PCAOB action, "and not every [PCAOB] action is encapsulated in a final Commission order or rule."  *Id.* at 490.  Thus, absent district court jurisdiction, a plaintiff seeking to challenge the PCAOB's existence would either need to challenge a "random" PCAOB rule—an option the Court found "odd" because the Exchange Act only made "*new* rules, and not existing ones . . . subject to challenge"—or violate the law—"bet[ting] the farm" by courting potential "severe punishment" just to get their day in court.  *Id.*  Neither of these options were considered "meaningful."  *Id.* at 491.

---

[7] Plaintiffs suggest that all of the *SEC ALJ Cases* "fatally . . . ignore or dismiss" *Free Enterprise*.  Pls.' Mem. at 16-17.  As noted, none of the cases "ignore[d]" *Free Enterprise*.  Rather, they properly distinguished it and correctly held that challenges just like Plaintiffs' are governed by the Supreme Court's later decision in *Elgin*.

As the *SEC ALJ Cases* observe, Plaintiffs sit in a far different position here. They need not "erect a Trojan-horse challenge to an SEC rule" in order to "have [their] claims heard." *Jarkesy*, 803 F.3d at 20; *accord Bennet*, 844 F.3d at 186. Instead, § 78y guarantees that they can raise their constitutional claim before a court of appeals, assuming they do not prevail in the administrative forum. Nor do they need to invite punishment; they must simply raise their claim in a proceeding that has already begun. *See Hill*, 825 F.3d at 1248 (plaintiffs "need not bet the farm to test the constitutionality of SEC ALJs' appointment process" where they "have already taken the actions that allegedly violated securities laws"); *Bebo*, 799 F.3d at 774 (same).[8]

Similarly, though Plaintiffs suggest that their claim is "wholly collateral" under *Free Enterprise* because it goes to the validity of the administrative proceeding, Pls.' Mem. at 12-13; *see also id.* at 6, they "misconceive[]" how courts "have understood the term." *Jarkesy*, 803 F.3d at 23. As discussed above, Plaintiffs' claim arises directly out of the pending SEC administrative proceeding, and their challenge provides an affirmative defense in that proceeding. *See Bennett*, 844 F.3d at 187. Indeed, Plaintiffs have raised this very claim as a ground to dismiss the proceeding.[9] By contrast, in *Free Enterprise*, the plaintiffs were not subject to any ongoing administrative proceeding, so their constitutional "claim was not moored to any proceeding that would provide for

---

[8] Similarly, *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479 (1991), cited at Pls.' Mem. at 5, is inapposite. There, the Court permitted undocumented aliens to challenge an agency procedure without undergoing an administrative deportation proceeding because doing so would require them to "voluntarily surrender themselves for deportation," which was "tantamount to a complete denial of judicial review for most undocumented aliens." 498 U.S. at 496-97. In other words, unlike Plaintiffs, those individuals would need to "bet the farm" in order to seek judicial review, *Free Enterprise*, 561 U.S. at 490. *See, e.g., Jarkesy*, 803 F.3d at 20-21 (distinguishing *McNary* on this ground); *see also Bebo*, 799 F.3d at 775 n.3 (same).

[9] Plaintiffs' other claim, not at issue in this motion—that the SEC failed to follow its own procedures, Compl. ¶¶ 110-16—also arises directly out of the administrative proceedings.

Defs.' Opp'n to Mot. for Prelim. Inj.     - 13 -   Case No.: 3:18-cv-02692-DMS-JLB

an administrative adjudication and subsequent judicial review." *Tilton*, 824 F.3d at 288.

Finally, Plaintiffs misleadingly claim that Defendants "conceded" in *Hill* that the removal claim in that case was "outside the Commission's expertise." Pls.' Mem. at 14 (quoting *Hill*, 825 F.3d at 1251 n.8). Plaintiffs take this quote out of context as well. Though their claim is certainly outside of the SEC's ordinary statutory bailiwick, contrary to Plaintiffs' assertion, *id.* at 6-7, that is not the relevant inquiry under *Thunder Basin*. Rather, as *Hill* itself understood, "the Commission's expertise could be brought to bear" even on a removal claim just like Plaintiffs' because "the Commission might decide that the . . . substantive claims are meritless and thus would have no need to reach the constitutional claims." 825 F.3d at 1250-51; *accord Elgin*, 567 U.S. at 23 (same); *Bennett*, 844 F.3d at 187-88 (same); *Tilton*, 824 F.3d at 290 (same); *Bebo*, 799 F.3d at 773 (same); *Jarkesy*, 803 F.3d at 29 (same).[10]

*Second*, although Plaintiffs do not dispute that they can have their claim fully adjudicated by a court of appeals, they argue that this would not be meaningful review because it would "occur only *after* . . . a hearing before an unconstitutional officer." Pls.' Mem. at 10-11. However, courts have consistently rejected this exact argument as a basis for subverting the scheme established by Congress. It was unanimously rejected in the *SEC ALJ Cases*. *See, e.g.*, *Hill*, 825 F.3d at 1245-46 (rejecting argument that post-proceeding review "cannot cure the injury [plaintiffs] will suffer—enduring an unconstitutional administrative process"); *Tilton*, 824 F.3d at 286 ("[B]eing subject[] to an unconstitutional adjudicative procedure . . . alone does not render post-proceeding judicial review less than meaningful." (citation omitted)); *Bebo*, 799 F.3d at

---

[10] Plaintiffs suggest the Sixth Circuit's post-*Lucia* decision, *Jones Brothers, Inc. v. Secretary of Labor*, 898 F.3d 669 (5th Cir. 2018), is to the contrary. Pls.' Mem. at 13. It is not. The Sixth Circuit recognized that requiring a plaintiff to proceed through an administrative process "still make[s] good sense," even if an agency has "no authority to invalidate the statutes at issue," because "the crucible of administrative review ensures that the petitioner's case presents a true constitutional dispute before the Judiciary steps in to decide those weighty issues." *Jones Bros.*, 898 F.3d at 675-76.

Defs.' Opp'n to Mot. for Prelim. Inj.     - 14 -   Case No.: 3:18-cv-02692-DMS-JLB

775 ("Every person hoping to enjoin an ongoing administrative proceeding could make this argument, yet courts consistently require plaintiffs to use the administrative review schemes established by Congress."); *see also Chau v. SEC*, 72 F. Supp. 3d 417, 434 (S.D.N.Y. 2014) (same). And that decision is squarely consistent with Supreme Court precedent. *See Standard Oil*, 449 U.S. at 244 (holding that burden of defending oneself "in protracted adjudicatory proceedings," even if "substantial," does not justify enjoining proceedings (citation omitted)).[11]

*Third*, Plaintiffs erroneously try to cast doubt on the validity of the *SEC ALJ Cases*. They suggest that "several of those courts erred in their holdings that the Appointments Clause claim was not valid," which supposedly "call[s] into question their reasoning" on other issues. Pls.' Mem. at 15. Even if true, a reversal on one issue would not somehow invalidate a court's decision on other issues. But Plaintiffs cite to nothing in the *SEC ALJ Cases* evincing these errors, which is not surprising. None of the *SEC ALJ Cases* reached the merits of the Appointments Clause issue, for an

---

[11] There is no merit to Plaintiffs' suggestion, *see* Pls.' Mem. at 11, that the exception to finality under *Leedom v. Kyne*, 358 U.S. 194 (1958) applies here. The *Leedom* exception, which has been characterized as a "Hail Mary pass" for plaintiffs, *Nyunt v. Chairman, Broadcasting Bd. of Governors*, 589 F.3d 445, 449 (D.C. Cir. 2009) (Kavanaugh, J.), is limited *only* to the rare circumstance in which the agency has violated a clear *statutory* mandate or has unambiguously exceeded its *statutory* authority. Here, Plaintiffs do not contend that the SEC clearly exceeded its mandate under the Exchange Act or any other statute. Rather, they acknowledge that the ALJs' removal protections are consistent with the relevant statute, but assert that those protections violate the Constitution. In other words, it is purportedly the agency's *compliance* with, not *violation* of, the applicable statute that generates the problem in Plaintiffs' view. The *Leedom* exception does not apply in these instances. *See Morris & Dickson*, 2018 WL 6834711, at *9 ("[N]othing about [*Leedom*] suggests that district court jurisdiction may arise from a violation of open-ended constitutional provisions as interpreted by the Supreme Court."). Nor does it apply where, like here, meaningful judicial review is available. *Amerco v. NLRB*, 458 F.3d 883, 889-90 (9th Cir. 2006) (exception did not apply where "constitutional infirmities . . . can be remedied on petition for review from a final order of the [agency]").

---

obvious reason:   the courts all held they lacked jurisdiction.   Similarly, Plaintiffs'
attempt to characterize *Thunder Basin* as a "doctrine in disarray" based on slight
differences in the reasoning of the *SEC ALJ Cases*, Pls.' Mem. at 16, is bizarre given
that all of the courts—addressing claims materially identical to Plaintiffs'—came to the
exact same conclusion.

*Fourth*, Plaintiffs argue that the unanimous view of five courts of appeals is
unpersuasive because those courts apparently failed to "consider" the purported fact
that Plaintiffs "cannot raise the removal challenge before the agency." *Id.*  Plaintiffs,
however, can raise their claim to the agency.  15 U.S.C. § 78u (authorizing Commission
to hold hearings).  Indeed, they have, by filing a motion to dismiss in the administrative
proceeding that raises their removal claim.  And, in any event, *Elgin* is clear that a
plaintiff can be required to raise a constitutional claim in an administrative proceeding
even if the agency lacks authority to adjudicate the issue.  567 U.S. at 16-17.

*Last*, Plaintiffs observe that none of the *SEC ALJ Cases* involved plaintiffs who
had raised their challenge to the Supreme Court.  Pls.' Mem. at 14-15.  That is, of
course, true.  But the idiosyncratic nature of these particular Plaintiffs does not mean
Congress's exclusive review scheme applies any differently to them than to anyone
else.

### B.    The Court Lacks Jurisdiction Because Plaintiff Does Not Challenge Final Agency Action.

The Court lacks subject matter jurisdiction over Plaintiffs' claim for the
additional reason that Plaintiffs do not challenge final agency action.

If "the substantive statutes under which [a plaintiff] seeks relief do not provide
for a private right of action," then "[t]o obtain judicial review under the APA, [the
plaintiff] must challenge a final agency action."  *Or. Nat. Desert*, 465 F.3d at 982.
"[F]inality is a *jurisdictional* requirement."  *Ukiah Valley Med. Ctr. v. FTC*, 911 F.2d 261,
264 n. 1 (9th Cir.1990) (citation omitted).  An action is final only if it marks "the
consummation of the agency's decision making process" and is "one by which rights

or obligations have been determined, or from which legal consequences will flow." *Gallo Cattle Co. v. USDA,* 159 F.3d 1194, 1198 (9th Cir. 1998) (citation omitted).

In this case, the only private right of action properly invoked by Plaintiffs is the APA.  Compl. ¶ 15 (citing 5 U.S.C. §§ 702 and 706).  Yet Plaintiffs do not challenge any SEC action that could be considered final.  The administrative proceeding is ongoing.  The Commission has not yet issued a final order; indeed, the ALJ has not even scheduled a hearing.  Plaintiffs' mere participation in the administrative process does not impose legal consequences until that process is complete.  *San Diego v. Whitman*, 242 F.3d 1097, 1102 (9th Cir. 1998) (for action to be final it must "impose an obligation, deny a right or fix some legal relationship").  No sanction can be imposed on Plaintiffs until the Commission issues a final order.  And Plaintiffs could prevail before the Commission, and thus never face any agency action imposing legal obligations.  Thus, until the administrative proceeding is complete, there is no final action by the SEC.

To be sure, Plaintiffs' Complaint purports to cite causes of action for their claim other than the APA, but none of these have merit.  Plaintiffs' separation of powers claim does not state a separate private right of action outside of the context of Plaintiffs' ongoing administrative proceeding.  If it did, any regulated entity could delay adjudication of an ongoing proceeding by pleading a constitutional challenge to the administrative process.  *See Standard Oil*, 449 U.S. at 242-43 ("Judicial review . . . should not be a means of turning prosecutor into defendant before adjudication concludes.").  Likewise, Plaintiffs' invocation of the Declaratory Judgment Act, Compl. ¶ 15 (citing 28 U.S.C. § 2201), does not create a private right of action.[12]  *See Nationwide Mut. Ins.*

---

[12] If Plaintiffs intend to invoke the All Writs Act, Compl. ¶ 15 (citing 28 U.S.C. § 1651), they plead no facts even suggesting why the Court should take the "drastic" step of exercising its mandamus jurisdiction at this stage of litigation.  *See Bauman v. U.S. Dist. Court*, 557 F.2d 650, 654 (9th Cir. 1977); *see also In re United States*, 895 F.3d 1101, 1104

*Co. v. Liberatore*, 408 F.3d 1158, 1161 (9th Cir. 2005) ("[T]he Declaratory Judgment Act does not by itself confer federal subject-matter jurisdiction . . . .").

Thus, Plaintiffs' claim sounds in the APA, but fails to challenge any final agency action by the SEC.  Accordingly, this Court lacks jurisdiction.[13]

## C.  Properly Construed, the ALJ's Removal Protections Are Constitutional.

Even if the Court were to find that it has jurisdiction, Plaintiffs' claim fails on the merits because the statute governing the removal of SEC ALJs, 5 U.S.C. § 7521, can be construed in a manner consistent with Article II's separation of powers principles.

Article II vests "[t]he executive Power" of the United States in the President, U.S. Const. art. II, § 1, cl. 1, who is charged with the duty to "take Care that the Laws be faithfully executed," *id.* § 3.  The President's ability to execute the laws is inextricably linked to his authority to "hold[] his subordinates accountable for their conduct," *Free Enter.*, 561 U.S. at 496, including through the power to remove executive officers, *id.* at 492; *see also Myers v. United States*, 272 U.S. 52, 117 (1926) (Constitution reserves to President the "power of removing those for whom he cannot continue to be held responsible").

The APA provides that an ALJ may be removed by an agency head—here, the

---

(9th Cir. 2018).

[13] For similar reasons, the Fifth Circuit has also unequivocally held that a collateral challenge to an ALJ's authority is not ripe for review until the administrative process has concluded.  *See, e.g., Energy Transfer Partners, L.P. v. FERC*, 567 F.3d 134 (5th Cir. 2009*)* (holding that a challenge to an ALJ's statutory authority was unripe until the agency rendered its final decision); *Total Gas & Power N. Am., Inc. v. FERC*, 859 F.3d 325 (5th Cir. 2017), *cert. denied*, 138 S. Ct. 2648 (2018) (holding that a challenge to an ALJ's constitutional authority was unripe until the agency rendered its final decision because any violation of the plaintiff's rights "rests on a series of contingencies and is not a certainty" until the agency issued its final order).

Commission—for "good cause established and determined by" the MSPB, 5 U.S.C. § 7521(a), whose members themselves are removable by the President "only for inefficiency, neglect of duty, or malfeasance in office," *id.* § 1202(d).  The Supreme Court has long recognized that Congress may impose limited restrictions on the President's removal power, including, for example, for-cause removal restrictions on the power to remove principal officers of certain independent agencies and for-cause restrictions on a principal officer's ability to remove inferior officers.  *See Free Enter.*, 561 U.S. at 493-94 (collecting cases).  Nevertheless, relying again on *Free Enterprise*, Plaintiffs argues that the multiple layers of for-cause removal protections in § 7521 violate the separation of powers.  Pls.' Mem. at 17-20.

In *Free Enterprise*, the Court struck down statutory removal provisions for members of the PCAOB, who enjoyed "rigorous" protections:  A member could be removed only upon a finding by the Commission that the member "willfully violated" the Sarbanes-Oxley Act, the securities law, or the PCAOB's rules; "willfully abused" his authority; or "without reasonable justification or excuse," failed to enforce compliance with the statutes, rules, or PCAOB standards.  561 U.S. at 486, 496 (quoting 15 U.S.C. § 7217(d)(3)).  And the Supreme Court assumed that members of the Commission, in turn, were removable by the President only for "inefficiency, neglect of duty, or malfeasance in office." *Id.* at 487 (citation omitted).  The Court held that the "novel" and "unusual" barriers to removal created by this two-tiered scheme left the President with insufficient ability to supervise the PCAOB's execution of the laws. *Id.* at 496.

Contrary to Plaintiffs' claims, however, *Free Enterprise* does not compel the conclusion that § 7521 violates separation of powers principles.  The Court in *Free Enterprise* explicitly declined to extend its holding to § 7521's removal protections for ALJs. *Id.* at 507 n.10 (noting that "unlike members of the [PCAOB], many [ALJs] of course perform adjudicative rather than enforcement or policy making functions, or possess purely recommendatory powers" (citations omitted)).  Nor does *Free Enterprise*

hold that multiple layers of removal protections are *per se* unconstitutional.  While SEC ALJs' status as inferior officers, *see Lucia*, 138 S. Ct. at 2053-55, implicates separation of powers principles, a proper construction of § 7521 would alleviate any constitutional concerns.  In particular, construing § 7521 to permit agency heads to remove ALJs for performance-related reasons, subject to limited review by the MSPB, would provide constitutionally sufficient supervision, consistent with Article II.

The term "good cause" is undefined in the APA.  Naturally read, it authorizes removal of an ALJ for misconduct, poor job performance, or failure to follow lawful directives.  At the time of the APA's enactment, the term was understood to refer simply to a "[s]ubstantial" or "[l]egally sufficient ground or reason."  Black's Law Dictionary 822 (4th ed. 1951).  When specifically referring to employer actions, the term's conventional meaning "include[d] any ground which is put forward by authorities in good faith and which is not arbitrary, irrational, unreasonable or irrelevant to the duties with which such authorities are charged."  *Id.*  There is no reason to believe that Congress, in enacting § 7521, intended to deviate from that well-understood meaning.  *See* Administrative Procedure Act—Legislative History, S. Doc. No. 248, 79th Cong., 2d Sess., at 326 (1946) ("[t]he cause found must be real and demonstrable," and based on "facts and considerations warranting the finding").

Thus, "good cause" is best read to include an ALJ's failure to perform adequately or to follow agency policies, procedures, or instructions.  *See Morrison v. Olson*, 487 U.S. 654, 724 n.4 (1988) (Scalia, J., dissenting) (explaining that constitutionally permissible authority to remove an officer "for cause . . . would include, of course, the failure to accept supervision").  This construction provides agencies with constitutionally sufficient latitude to remove an ALJ for appropriate job-related reasons, thereby ensuring the agency heads' control—and by extension, the President's—over inferior officers.  Not only does this reflect the best reading of the text, but it is also supported by well-established principles of constitutional avoidance.  *See Pub. Citizen v. DOJ*, 491 U.S. 440, 466 (1989).  Under this construction,

an ALJ would still be protected from removal for invidious reasons otherwise prohibited by law. *See, e.g.*, 42 U.S.C. § 2000e-16(a) (prohibiting "discrimination based on race, color, religion, sex, or national origin" in agency personnel actions). And the President and his principal officers would be restrained from removing ALJs in order to influence the outcome of any particular adjudication. *See Myers*, 272 U.S. at 135 ("[T]here may be duties of a quasi-judicial character imposed on executive officers and members of executive tribunals whose decisions after hearing affect interests of individuals, the discharge of which the President can not in a particular case properly influence or control."); *see also Ramspeck v. Fed. Trial Exam'rs Conf.*, 345 U.S. 128, 142-43 (1953) (hearing examiners may not be removed "at the whim or caprice of the agency or for political reasons").

Although this construction would still involve multiple layers of protection for ALJs at independent agencies, it comports with the constitutional requirements recognized in *Free Enterprise*. The intrusion on presidential authority is significantly less than under the "unusually high standard" for removal invalidated in *Free Enterprise*, under which even a member who committed a crime not specifically mentioned in the Sarbanes-Oxley Act would be entitled to keep his position. 561 U.S. at 503. Under the natural reading of "good cause," an ALJ would be removable for failure to accept lawful supervision or perform his or her duties adequately. Thus, ALJs could be held accountable by the Heads of Departments, and the President who appointed them, for failure to execute the laws faithfully, mitigating the constitutional concerns with multiple levels of removal protection.

Additionally, if the Court were to reach the removal issue, it should further construe § 7521—which requires that cause be "established and determined by the" MSPB—to mean that MSPB review is limited to determining whether factual evidence exists to support the agency's proffered, good-faith grounds. In other words, the MSPB would determine only whether facts exist to support the agency's determination, not (as it currently does) whether in the MSPB's view those facts amount to "good

cause" and also justify the sanction sought by the agency.  Reading the statute in this way enables the Heads of Departments to retain primary control in the decision to remove ALJs, further providing them with constitutionally adequate authority to ensure the faithful execution of the law.  This construction is well within the range of constructions available under the canon of constitutional avoidance.  *See Ramspeck*, 345 U.S. at 142 (APA "leaves with the agency the responsibility" to determine if unneeded hearing examiners should be discharged, subject to appeal to Civil Service Commission to "prevent any devious practice by an agency which would abuse" that power).[14]

## II.   PLAINTIFFS CANNOT SHOW THAT IRREPARABLE HARM WILL RESULT FROM ALLOWING THE ADMINISTRATIVE PROCEEDING TO CONTINUE.

Plaintiffs' motion also fails because they cannot show irreparable harm.

First, and most importantly, until the Commission renders a final decision, Plaintiffs are not subject to any penalties.  After the decision in *Lucia*, the prior final order was vacated and Plaintiffs' proceeding reassigned to ALJ Foelak.  Since re-assignment, no hearing has yet been scheduled.[15]

---

[14] If the Court concludes that the interpretation of § 7521 advocated here cannot be reconciled with the statute, and that the limitations on SEC ALJ removal are unconstitutional then the Court should invalidate only the portion or portions of § 7521 that cannot be interpreted to accord agency heads appropriate supervision of ALJs as inferior officers within their agencies and leave the remaining portions of the statute fully operative.  Plaintiffs do not argue otherwise.

[15] Plaintiffs conflate the harm they are allegedly suffering from the present proceeding—which has not resulted in any sanctions because the Commission has not issued a final order—with the harm that arose from the now-vacated proceedings. Declaration of Raymond J. Lucia at p.9 ¶ 25, ECF No. 3-3.  Though Mr. Lucia's professional reputation may have been impacted by those now-vacated proceedings, that harm was addressed by the Supreme Court's decision.  Any reputational harm incurred from the first proceedings cannot be remedied by the issuance of an injunction halting the present proceedings.  *Cf. Standing Rock Sioux Tribe v. U.S. Army Corps of Eng'rs*, 205 F. Supp. 3d 4, 34 (D.D.C. 2016) (refusing to issue preliminary

Next, Plaintiffs admits that the alleged irreparable harm is not "a matter of the costs and burdens of litigation," Pls.' Mem. at 21, which squares soundly with Supreme Court precedent holding that "the expense and annoyance of litigation," even if substantial, "is part of the social burden of living under the government," and is not irreparable harm. *Standard Oil*, 449 U.S. at 244 (citation omitted). Instead, they assert that they will suffer irreparable harm from the fact of participation in an allegedly unconstitutional proceeding. Pls.' Mem. at 21. But that too is wrong. *See Tilton*, 824 F.3d at 287 ("[P]ost-proceeding relief . . . suffices to vindicate the litigants constitutional claim."); *Bennett*, 844 F.3d at 184-85 ("The burden of defending oneself in an unlawful administrative proceeding, however, does not amount to irreparable injury."); *Home Loan Bank Bd. v. Mallonee*, 196 F.2d 336, 380 (9th Cir. 1952) (""[N]o one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted, and this is true though it be asserted (as here) that the mere holding of the prescribed administrative hearing would result in irreparable damage.").[16]

Further, any potential constitutional injury is plainly reparable. After all, should Plaintiffs not prevail before the Commission, they will have their constitutional claim

---

injunction where plaintiff "cannot demonstrate that the temporary relief it seeks here . . . can prevent the harm" complained of).

[16] *Valley v. Rapides Parish School Board*, 118 F.3d 1047 (5th Cir. 1997), *see* Pls.' Mem at 20, does not stand for the proposition that participation in a purportedly invalid proceeding is an irreparable injury. There, the Fifth Circuit affirmed an injunction reinstating a school superintendent who had been removed from her position following a hearing that violated her constitutional rights because it was biased against her. *Valley*, 118 F.3d at 1053-55. The court found irreparable harm not because of the unconstitutional proceeding alone, but rather because of the injury to the plaintiff's reputation and her ability to find future employment. *Id.* at 1056. But here, Plaintiffs currently face no sanctions from the administrative proceeding and will not until the Commission issues a final order. Even then, they could seek a stay of any sanction pending appeal from the Commission and, if denied that relief, from the court of appeals. Nor are there any facts showing actual bias against Plaintiffs.

---

adjudicated in federal court; they cannot be irreparably injured just because they must raise it at the time and in the place Congress has specified. *See Pub. Util. Comm'r of Or. v. Bonneville Power Admin.*, 767 F.2d 622, 630 (9th Cir. 1985) (holding that "delaying review until after [final agency action] will not prevent petitioners from obtaining full and effective relief"); *see also Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984) (a preliminary injunction is "a device for preserving the status quo and preventing the irreparable loss of rights before judgment").

## III. THE BALANCE OF HARMS AND THE PUBLIC INTEREST WEIGH AGAINST AN INJUNCTION.

The third and fourth injunctive factors, the balance of harms and the public interest, "merge when the Government is the opposing party." *Nken v. Holder*, 556 U.S. 418 (2009). These factors support denying Plaintiffs' motion.

The Commission is statutorily charged with protecting investors, promoting capital formation, and ensuring market integrity by enforcing the securities laws. Congress has recognized the importance of "enabl[ing] the SEC to move quickly in administrative proceedings." S. Rep. No. 101-337. The underlying case involves allegations that Plaintiffs violated antifraud and other provisions of the Investment Advisers Act for misleading advertising while promoting their "Buckets of Money" investment scheme. In the initial proceeding, since vacated, the Commission found that Plaintiffs did indeed violate the Act. *Lucia*, 138 S. Ct. at 2050. An injunction would interfere with the Commission's enforcement efforts and result in the type of delay that Congress sought to avoid by authorizing the SEC to use administrative proceedings. *Cf. Maryland v. King*, 133 S. Ct. 1, 3 (2012) ("[A]ny time a State is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury."); *see also Morris & Dickson*, 2018 WL 6834711, at *11 (observing that allowing parties to enjoin ongoing administrative proceedings in district court "would effectively derail the administrative process for the time required for judicial review of the constitutional claims," which would inhibit agencies' ability "to

do what [Congress] created them to do—enforce Acts of Congress").

Plaintiffs argue that the injunction would actually be in the SEC's interests because it "should welcome a definitive ruling" before it "wast[es] its time and government resources." Pls.' Mem. at 22. But the SEC's ALJs are not acting with unconstitutional authority. *See supra* Pt. I.C. And, an injunction necessarily would interfere with the Commission's statutory role in enforcing the securities laws and would flout the exclusive scheme Congress established for review of SEC actions. Moreover, Plaintiffs may prevail in the administrative proceeding, and the public interest is not served by forcing the Court to decide a constitutional issue that may be mooted.

Plaintiffs also argue that the SEC would not be harmed by an injunction because the SEC could have filed a complaint against Plaintiffs in district court. Pls.' Mem. at 22. But Congress made a determination that the public interest would be served by allowing the SEC to choose its forum. That determination is entitled to the Court's respect. *Cf. INS v. Legalization Assistance Proj.*, 510 U.S. 1301, 1306 (1993) (staying district court injunction interfering with government's execution of immigration statute as "an improper intrusion by a federal court into the workings of a coordinate branch of the Government").

Finally, as discussed above, Plaintiffs face no irreparable injury sufficient to outweigh the interests of Defendants and the public. Therefore, the balance of harms and the public interest also weigh against a preliminary injunction.

## **CONCLUSION**

For the foregoing reasons, this Court should deny Plaintiffs' motion.

Dated: March 8, 2019                Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General


ROBERT S. BREWER, JR.
United States Attorney

CHRISTOPHER R. HALL
Assistant Branch Director
Federal Programs Branch

/s/ Chetan A. Patil
CHETAN A. PATIL
CESAR A. LOPEZ-MORALES
REBECCA CUTRI-KOHART
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883
Ben Franklin Station
Washington, DC 20044
Tel.: (202) 305-4968; Fax: (202) 616-8470
Email: chetan.patil@usdoj.gov

*Attorneys for Defendants*