Margaret A. Little (*pro hac vice*), CT Bar No. 303494
Caleb Kruckenberg (*pro hac vice pending*), PA Bar No. 322264
New Civil Liberties Alliance
1225 19th Street NW, Suite 450
Washington, DC 20036
Telephone: 202-869-5210
Email: peggy.little@ncla.legal
Email: caleb.kruckenberg@ncla.legal

Mark A. Perry, CA Bar No. 212532
Gibson, Dunn & Crutcher LLP
1050 Connecticut Ave. NW
Washington, DC 20036-5306
Telephone: 202-887-3667
Email: MPerry@gibsondunn.com

*Counsel for Raymond J. Lucia Companies, Inc. and Raymond J. Lucia, Sr.*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND J. LUCIA COMPANIES, INC. and RAYMOND J. LUCIA, SR.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. SECURITIES AND EXCHANGE COMMISSION, JAY CLAYTON, in his official capacity as Chairman of the U.S. Securities and Exchange Commission, and WILLIAM P. BARR, in his official capacity as United States Attorney General,<br><br>Defendants. | Case No.: 18CV2692 DMS JLB<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date: March 22, 2019<br>Time: 1:30 p.m.<br>Courtroom: 13A<br>Judge: Hon. Dana M. Sabraw<br>Magistrate: Hon. Jill L. Burkhardt |

# TABLE OF CONTENTS

**ARGUMENT** ........................................................................................................................1

**I.   *FREE ENTERPRISE FUND* ESTABLISHES JURISDICTION AND SHOWS THAT PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS** ......................................................1

   **A.   This Court Has Jurisdiction**................................................................................1

   **B.   Plaintiffs Are Likely to Succeed on the Merits Because *FEF* Prohibits Multiple Layers of Tenure Protection for ALJs** ...........................................................2

**II.   FEDERAL COURTS ARE THE ONLY FORUM THAT CAN PROVIDE THIS RELIEF**........5

   **A.   *FEF*, Not the *SEC ALJ Cases*, Control this Court's Decision on Jurisdiction** 5

   **B.   The Administrative Scheme Does Not Provide Meaningful Judicial Review**..6

   **C.   *Thunder Basin* and *Elgin* Are Distinguishable**.......................................................7

**III.   PLAINTIFFS MEET THE REMAINING REQUIREMENTS FOR A PRELIMINARY INJUNCTION** ......................................................................................................................8

**CONCLUSION**....................................................................................................................10

# TABLE OF AUTHORITIES

**Cases**

*Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837 (1984) ....................................................... 3

*Elgin v. Department of Treasury*, 567 U.S. 1 (2012) ................................................*passim*

*Feinerman v. Bernardi*, 558 F. Supp. 2d 36, 51 (D.D.C. 2008) ........................................ 9

*Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477 (2010) ........*passim*

*Freytag v. C.I.R.*, 501 U.S. 868 (1991) .............................................................................. 7

*FTC v. Standard Oil*, 449 U.S. 232 (1980) ........................................................................ 6

*La. Pub. Serv. Comm'n v. F.C.C.,* 476 U.S. 355 (1986) ..................................................... 1

*LG Electronics, Inc. v. Eastman Kodak Co.*, 2009 WL 1468703 (S.D. Cal. 2009) ............ 9

*Lucia v. SEC*, 138 S. Ct. 2044 .....................................................................................*passim*

*MFS Sec. Corp. v. SEC*, 380 F.3d 611 (2d Cir. 2004). ....................................................... 4

*Rust v. Sullivan*, 500 U.S. 173 (1991) ................................................................................ 5

*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994) ..................................................... 5

*Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047 (5th Cir. 1997) .................................... 8

*Waters v. Churchill*, 511 U.S. 661 (1994) ......................................................................... 6

**Statutes**

U. S. Constitution Art. II……………………………………………………………*passim*

U. S. Constitution Art. III,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,,1

28 U.S.C. § 1331 ................................................................................................................ 1

5 U.S.C. § 7521 ...........................................................................................................*passim*

**Other Authorities**

11A *Wright & Miller, Fed. Pract. & Proc.* § 2948.1 (3d ed. 2018) .................................... 9

ii

18CV2692 DMS JLB

The SEC has not complied with the Supreme Court's instruction to give Mr. Lucia "a new hearing before a *properly appointed official*," *Lucia v. SEC*, 138 S. Ct. 2044, 2055 (2018) (emphasis added), because Congress may only provide "officials" one layer of "for cause" protection from removal. *Free Enter. Fund v. Pub. Co. Accounting Oversight Bd.*, 561 U.S. 477, 492 (2010) (*FEF, infra*). Only Article III courts have the jurisdiction and power to hear the question of whether the Administrative Law Judge (ALJ) before whom Plaintiffs have been haled is constitutionally appointed. *FEF* confirms that this Court has jurisdiction and authority to impose an equitable remedy.

## ARGUMENT

### I. *FREE ENTERPRISE FUND* ESTABLISHES JURISDICTION AND SHOWS THAT PLAINTIFFS ARE LIKELY TO PREVAIL ON THE MERITS

#### A. This Court Has Jurisdiction

In the hopes of avoiding judicial scrutiny of its administrative scheme, the government insists that 15 U.S.C. § 78y (which provides only for review of Commission final orders) is Plaintiffs' exclusive avenue for judicial review. That is wrong. This court has jurisdiction under Article III and 28 U.S.C. § 1331. As Plaintiffs have explained, yet the government refuses to acknowledge, *FEF* held that nothing in 15 U.S.C. § 78y ousts that jurisdiction, even implicitly. 561 U.S. at 489. Neither ALJs nor the Commission can decide whether the Commission's ALJs enjoy impermissible layers of tenure protection because agencies lack power to right such constitutional wrongs. *La. Pub. Serv. Comm'n v. F.C.C.,* 476 U.S. 355, 374 (1986). Notably, the *Lucia* decision itself calls for lower *courts*, not ALJs, to address this question. 138 S. Ct at 2050 n.1.

**B.     Plaintiffs Are Likely to Succeed on the Merits Because *FEF* Prohibits Multiple Layers of Tenure Protection for ALJs**

Plaintiffs are entitled to a preliminary injunction because *Lucia* held that SEC ALJs are inferior officers and *FEF* forbids more than a single layer of tenure protection for "officers of the United States." 561 U.S. at 492. The multiple layers that protect SEC ALJs from removal make them unaccountable to either the President or his alter ego, a Head of Department. When Congress nests protections in Matryoshka-doll-like fashion—an "officer" who is only removable for cause by another "officer" who is only removable for cause by a department head who is only removable for cause by the President—it effectively immunizes executive officers of the President from removal by the President, defeating the design of Article II. Justice Breyer called this the "embedded constitutional question" in *Lucia*. 138 S. Ct. at 2060 (Breyer, J., concurring).

Contrary to the government's submission, the holding of *FEF* is not limited to "unusual" tenure protections that were specific to the PCAOB.  *FEF*'s concern was with *layers* of protections when it noted that "[w]e deal with the unusual situation, never before addressed by the Court, of two layers of for-cause tenure … two layers are not the same as one."  *FEF* at 501.  *FEF* did sever the unusual barriers, but what *FEF* actually *held* was that the President may not be separated from officers by more than a single level of for-cause protection:

> While we have sustained in certain cases limits on the President's removal power, the Act before us imposes a new type of restriction—two levels of protection from removal for those who nonetheless exercise significant executive power.  Congress cannot limit the President's authority in this way.

2

18CV2692 DMS JLB

*FEF* at 514. Nothing in *FEF* stated that the Court's holding turned on the specific kind of protections from removal at issue or cabined the Court's holding to the specific language in Sarbanes-Oxley, and it is disingenuous to suggest otherwise.

The SEC's argument that the holding of *FEF* does not apply to ALJs is equally flawed. The Court in *FEF* had no occasion to apply its holding to ALJs in the case, because ALJs were not at issue. The footnote on which the SEC relies simply made that clear and stated that whether ALJs were "officers of the United States" was "disputed." *See* 561 U.S. at 507 n. 10. After *Lucia*, there is no dispute.

Now that *Lucia* has established that SEC ALJs are inferior officers, the conclusion that they violate Article II under *FEF* is unavoidable. The SEC desperately wishes to avoid this conclusion, however, because it has a profound impact on this case. If *Lucia* means anything, it means that the SEC lacks the power to force Plaintiffs to litigate another void enforcement proceeding.

As Justice Breyer noted in his concurring opinion, 5 U.S.C. § 7521 does not grant the Commission the power to institute removal proceedings at all, because the MSPB has the independent and *exclusive* power to remove ALJs,[1] and the board itself enjoys removal protections. *Lucia*, 138 S. Ct. at 2016. Thus, this court cannot adopt SEC's proposed construction. *See Chevron, U.S.A., Inc. v. NRDC*, 467 U.S. 837, 842-43 (1984)

---

[1] The statute says directly that ALJs may be removed only "for good cause *established* and *determined* by the Merit Systems Protection Board (MSPB)." 5 U.S.C. § 7521(a) (emphasis added).

("If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress.")

Significantly, the government's proposed construction of § 7521 does not cure the second level of constitutional infirmity found in the removal protections afforded the *Commissioners*. "[M]ultilevel protection from removal" preventing removal of the heads of a department violate the Constitution. 561 U.S. at 484. Thus, even if "good cause" protection for ALJs means "any cause," the President cannot remove the ALJ without going through two layers of decisionmakers who themselves enjoy tenure protection. *See FEF*, 561 U.S. at 487 (Commissioner removal only for "inefficiency, neglect of duty, or malfeasance in office"); *MFS Sec. Corp. v. SEC*, 380 F.3d 611, 619-20 (2d Cir. 2004).

The government's suggestion in footnote 14 of its opposition that this court sever the offending tenure protection provisions of § 7521 to save the SEC's administrative scheme can only occur if the court assumes jurisdiction and agrees with Plaintiffs on their likelihood of success on the merits. But even severing the "for cause" provisions of § 7521 still leaves the impermissible double layers of tenure protection of the MSPB and the Commission itself in place and thus fails to cure the constitutional defect.

The Department of Justice's position that an SEC ALJ's removal protections are unlawful was well-articulated in *Lucia*. Br. For Resp't Supporting Pet'r (U. S. Solicitor General), *Lucia v. SEC*, 2018 WL 125162, at *52-53 (U.S. Feb. 21, 2018). The Solicitor General was right then, and Plaintiffs should prevail now under that view.

**II.    FEDERAL COURTS ARE THE ONLY FORUM THAT CAN PROVIDE THIS RELIEF**

**A. *FEF,* Not the *SEC ALJ Cases,* Control this Court's Decision on Jurisdiction**

The SEC's submission ignores *FEF* almost entirely, relies on *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), and *Elgin v. Department of Treasury*, 567 U.S. 1 (2012), and rests undue weight on the irrelevant *SEC ALJ Cases.* That approach is fatally flawed because it asks this court to adhere to circuit court decisions in defiance of controlling Supreme Court authority. *FEF* cannot be ignored, because it involved the same statutory scheme and the same essential claim that applies in this case. Further, *Thunder Basin* and *Elgin* are distinguishable.

The *SEC ALJ Cases* were decided *before Lucia*. In a post-*Lucia* landscape, it is known that SEC ALJs occupy their positions in violation of Article II. That fact is essential, because the jurisdictional analysis turns on congressional intent. *FEF* at 490. (Congressional intent to limit jurisdiction the key inquiry with a presumption against limiting jurisdiction.)  It is inconceivable that Congress could have intended anyone to have to litigate their claims before ALJs who are not authorized to hear those claims. That construction *creates* a constitutional problem by ascribing unconstitutional intent to Congress. *See, e.g., Rust v. Sullivan*, 500 U.S. 173, 191 (1991) (stating that under the rules of statutory construction, Congress is presumed to "legislate[] in the light of constitutional limitations").

Crucially, not one of the *SEC ALJ Cases* considered the fact that the Article II removal issue, unlike the appointments deficiency of *Lucia*, must be fixed by Congress—or by a federal court with the power to sever statutes—and so they do not provide even

persuasive authority on jurisdiction. *Waters v. Churchill*, 511 U.S. 661, 678 (1994)(Cases do not stand as precedent on points not raised, not argued and hence not analyzed.)

**B. The Administrative Scheme Does Not Provide Meaningful Judicial Review**

RJL and Mr. Lucia are in the same position as the petitioners in *FEF*. Their choice is to submit to an unconstitutional proceeding that will ultimately be found void, at which point they will be back to square one—yet again. Or they can refuse to participate in that proceeding and risk losing the right to appeal any of their claims, constitutional or otherwise, to an Article III court. (Op. at 12) (stating that to appeal any SEC action, Plaintiffs must raise their claims in the administrative proceeding). In short, they can bet the farm. *See FEF* at 491. Surely when the Supreme Court said that litigation is a cost of "the social burden of living under the government," it did not have in mind pointless litigation before constitutionally deficient ALJs foisted on individuals for no better reason than that an agency has the raw power to do so. (Op. at 23) (quoting *FTC v. Standard Oil*, 449 U.S. 232, 244 (1980)).

It is no answer to claim, as the SEC and the *SEC ALJ Cases* do, that *FEF* is distinguishable because the petitioner there lacked any "guaranteed path to federal court." The petitioner in *FEF* faced only a critical PCAOB inspection report when it brought its case. *See* 561 U.S. at 487, 490-91. If the firm had waited, the investigation may not have found any violations, in which case the matter would have ended. If the investigation had resulted in an alleged violation, the SEC would have brought charges against it in an administrative proceeding, and it would have had its "guaranteed path to federal court."

Clearly, it was not simply the ability to obtain circuit court review that mattered to the Court in *FEF*, but the fact that the petitioner was challenging the very authority of the PCAOB to act. *Id.* at 490 ("[P]etitioners object to the Board's existence, not to any of its auditing standards.")

### C. *Thunder Basin* and *Elgin* Are Distinguishable

The Government's brief ignores the difference between the constitutional claim at issue here and those in *Thunder Basin* and *Elgin*. *Thunder Basin* and *Elgin* both involved constitutional challenges to the *statutes* at issue in those cases. *See Elgin*, 567 U.S. at 12-13; *Thunder Basin*, 510 U.S. at 214. Plaintiffs do not challenge the '34 Act at all. They challenge the authority of the ALJ to preside over the enforcement action, which is the inescapable outcome of two Supreme Court cases and an admission by the government. This ALJ cannot resolve any claims at all. *See also Freytag v. C.I.R.*, 501 U.S. 868, 879 (1991) (stating that a defect in the appointment goes to the validity of the proceeding). An ALJ without constitutional authority is not authorized to act in *any* way, whether the ALJ issues rulings *for or against* the respondent.

The government rests weight upon *Elgin* that it cannot bear. Unlike the SEC enforcement scheme under § 78y, which *FEF* recognizes as expressly non-exclusive, the Court in *Elgin* found that the CSRA was Congress' "comprehensive" scheme for federal employees to challenge terminations, 567 U.S. at 1, where the relief sought was routinely afforded under the scheme. *Id.* at 39-40. Those plaintiffs were not haled before an unconstitutional adjudicator in a proceeding preordained to be vacated.

By contrast, neither the ALJ nor the Commission *ever* decides Article II appointments questions as part of the administrative review scheme, much less routinely, nor can either grant the constitutional declaratory relief sought by Plaintiffs. Further, *Elgin*'s CSRA administrative scheme, unlike the Exchange Act, has no savings clause.

Putting it another way, if a district court lawsuit challenges agency actions that the administrative proceeding is designed to adjudicate, as in *Elgin* and *Thunder Basin,* then the challenge is premature and the statutory scheme controls. Conversely, if the district court challenge is to the "existence" of the of the body under separation-of-powers principles, as in *FEF*, 561 U.S. at 490, then district court challenges are authorized. To read the *Elgin* case as the government proposes is to suggest that *Elgin* somehow *sub silentio* overruled *FEF*'s recent, on-point, unanimous decision finding jurisdiction.

### III.     Plaintiffs Meet the Remaining Requirements for a Preliminary Injunction

Mr. Lucia and RJL will suffer irreparable harm if an injunction does not issue. Far from conflating his damages from *Lucia*, Round I, with the damage that will occur if the injunction does not issue, those harms provide compelling proof of the costs and damage sure to be inflicted by *void-ab-initio* unconstitutional proceedings.[2]

---

[2] The government attempts to diminish the force of *Valley v. Rapides Parish Sch. Bd.*, 118 F.3d 1047, 1056 (5th Cir. 1997) on irreparable injury by asserting, inaccurately, that Plaintiffs "face no sanctions from the administrative proceeding." (Op. at 23) They face lawless sanctions. The government further offers no rebuttal to the proposition that the dispositive irreparable injury of being subjected to an unconstitutional proceeding occurs regardless of the merits decision, so any *post hoc* adjudication is inadequate, as it is with other unconstitutional injuries. *See* 11A *Wright & Miller, Fed. Pract. & Proc.* § 2948.1

Mr. Lucia has also been irreparably prejudiced by this nearly seven-year ordeal and the government's violation of its own rules requiring swift and timely adjudication as set forth in his Complaint ¶¶66-72, 82-93, 96-100, 105, 112-114. Courts recognize that as the time between the events and trial lengthens, witnesses may become unavailable or unreliable and memories inevitably fade. *LG Electronics, Inc. v. Eastman Kodak Co.*, 2009 WL 1468703 (S.D. Cal. 2009) (Prejudice from loss of evidence, witnesses, important documents and inability of witnesses to recall specific facts recognized). The government cannot and does not argue otherwise.

The government also asserts that while "Mr. Lucia's professional reputation may have been impacted by those now-vacated proceedings, that harm was addressed by the Supreme Court's decision." (Op. at 22, n.15). Not so. While no injunction can remedy past reputational harm, the constitutional harm can be immediately remedied.[3]

The SEC asserts that, where the government is the opposing party, SEC's interests in moving quickly in administrative proceedings, means it may do so in any fashion it wishes, whether constitutional or not. This flex of government muscle is supported by conclusory allegations that SEC's mission to protect investors trumps the rights of anyone it charges.

---

(3d ed. 2018) ("When an alleged deprivation of a constitutional right is involved … most courts hold that no further showing of irreparable injury is necessary.")

[3] Losses unrecoverable due to sovereign immunity are irreparable *per se*. *Feinerman v. Bernardi*, 558 F. Supp. 2d 36, 51 (D.D.C. 2008), and SEC does not argue otherwise.

*Any* assertion by the government in this case that it has sought swift resolution of its claims against Mr. Lucia is eviscerated by its intransigence in haling Mr. Lucia, not once, but twice before ALJs it had every reason to know were unconstitutional. The SEC, by contrast, faces no harm at all from an injunction requiring it show the constitutionality of its ALJ appointments in federal court, beyond its insistence that the public interest is served when "we get to choose" our own in-house court.  (Op. at 25).

Plaintiffs respectfully submit that "Not when it is an unconstitutional ALJ" is not merely the correct but the only response to this assertion of public interest.  The "government gets to have its way" is no argument at all when it is trampling on the constitutional rights of its citizens and wasting public resources on invalid proceedings.

The injunction sought in this case would uphold the Constitution's requirement that members of the Executive Branch are accountable to the President and the people. *See FEF*, 561 U.S. at 492.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court grant their motion for a preliminary injunction.

By:   /s/ Margaret A. Little_____   Dated: March 15, 2019
      Margaret A. Little (*pro hac vice*), CT Bar No. 303494
      Caleb Kruckenberg (*pro hac vice pending*), PA Bar No. 322264
      New Civil Liberties Alliance
      1225 19th St. NW, Suite 450
      Washington, DC 20036
      Telephone: 202-869-5210
      Email: peggy.little@ncla.legal
      Email: caleb.kruckenberg@ncla.legal

Mark A. Perry, CA Bar No. 212532
Gibson, Dunn & Crutcher LLP
1050 Connecticut Ave. NW
Washington, DC 20036-5306
Telephone: 202-887-3667
Email: MPerry@gibsondunn.com

*Attorneys for Plaintiffs Raymond J. Lucia Companies, Inc. and Raymond J. Lucia, Sr*

## **CERTIFICATE OF SERVICE**

I certify that on this 15th day of March, 2019, I have served a copy of the above and foregoing on all counsel of record through the Court's CM/ECF system.

/s/Margaret A. Little_____
Margaret A. Little, CT Bar No. 303494