Margaret A. Little (*pro hac vice*), CT Bar No. 303494
Caleb Kruckenberg (*pro hac vice pending*), PA Bar No. 322264
New Civil Liberties Alliance
1225 19th Street NW, Suite 450
Washington, DC 20036
Telephone: 202-869-5210
Email: peggy.little@ncla.legal
Email: caleb.kruckenberg@ncla.legal

Mark A. Perry, CA Bar No. 212532
Gibson, Dunn & Crutcher LLP
1050 Connecticut Ave. NW
Washington, DC 20036-5306
Telephone: 202-887-3667
Email: MPerry@gibsondunn.com

*Counsel for Raymond J. Lucia Companies, Inc. and Raymond J. Lucia, Sr.*

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAYMOND J. LUCIA COMPANIES, INC. and RAYMOND J. LUCIA, SR., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. SECURITIES AND EXCHANGE COMMISSION, JAY CLAYTON, in his official capacity as Chairman of the U.S. Securities and Exchange Commission, and WILLIAM P. BARR, in his official capacity as United States Attorney General, <br><br> Defendants. | Case No.:  18CV2692 DMS JLB <br><br> **PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION TO DISMISS COMPLAINT** <br><br><br> Date:  August 2, 2019 <br> Time:  1:30 p.m. <br> Courtroom: 13A <br> Judge:  Hon. Dana M. Sabraw <br> Magistrate:  Hon. Jill L. Burkhardt |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

TABLE OF CONTENTS ...........................................................................................i

TABLE OF AUTHORITIES .................................................................................ii

PRELIMINARY STATEMENT ............................................................................1

ARGUMENT .........................................................................................................3

I.   THIS COURT HAS JURISDICTION AND MUST EXERCISE IT UNDER CONTROLLING PRECEDENT ........3

   A.   *Free Enterprise Fund* and Other Controlling Supreme Court Cases Establish Jurisdiction..................................3

   B.   The Logic of the Jurisdictional Question Commands a Court Decision....................................8

II.   THE STRUCTURE OF THE EXCHANGE ACT ACKNOWLEDGES THIS COURT'S JURISDICTION ..............9

   A.   Congress Did Not Provide for Exclusive Jurisdiction of Administrative Enforcement Actions to the Commission or to Its Delegatees, ALJs....................................9

   B.   Because § 78y's Jurisdiction Is Permissive, Not Mandatory or Exclusive, No Congressional Intent to Divest Jurisdiction Can Be Inferred ....................................10

   C.   The Exchange Act's Savings Clause Clarifies that Nothing in the Act Precludes Other Jurisdiction .................10

   D.   Neither the Commission Nor Its ALJs Are Empowered to Decide Constitutional Questions ...........................11

      1.   Art. II .................................................................................................11

      2.   *Accardi* ............................................................................................12

III.   THE PRECEDENTS CITED BY THE SEC DO NOT PRECLUDE JURISDICTION.......................................14

   A.   *Thunder Basin*, Properly Applied, Supports Jurisdiction ....................................14

   B.   The *SEC ALJ Cases*' Attempts to Distinguish *FEF* Make No Sense ..................................14

   C.   The *SEC ALJ Cases* Equate Eventual Judicial Review with Meaningful Judicial Review Contrary to Law, Experience, and Common Sense ....................................17

   D.   The *SEC ALJ Cases* All Preceded *Lucia—and that Matters*..................................19

   E.   *Elgin* ................................................................................................20

   F.   *Standard Oil* ....................................................................................21

IV.   FEDERAL COURTS ARE THE ONLY FORUM THAT CAN PROVIDE THIS RELIEF AND SHOULD DO SO ON APPLICATIONS FOR PRELIMINARY INJUNCTION ..................................23

V.   THE PROPOSED APPLICATION OF THE *SEC ALJ CASES* DISTORTS LOGIC AND PRECEDENT, LEADS TO INDEFENSIBLE CONSEQUENCES, AND TAKES THE MEANINGFUL OUT OF MEANINGFUL JUDICIAL REVIEW ....................................23

CONCLUSION......................................................................................................25

18CV2692 DMS JLB

# TABLE OF AUTHORITIES

**Cases**

*AFL-CIO v. Trump*, 318 F. Supp. 3d 370 (D.D.C. 2018). ....................................19

*American Hosp. Ass'n v. Burwell*, 812 F.3d 183 (D.C. Cir. 2016) ...................12

*Bebo v. SEC*, 799 F.3d 765 (7th Cir. 2015) ................................................14,15

*Bennett v. SEC*, 844 F.3d 174 (4th Cir. 2016) .............................................14,15

*Bradshaw v. Berryhill*, 372 F. Supp. 3d 349 (E.D.N.C. 2019)........................19

*Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598 (2001)) ...........................................................................................15

*Coca-Cola Co. v. FTC*, 475 F.2d 299 (5th Cir. 1973) .......................................6

*Cochran v. SEC*, No. 4:19-CV-066-A, 2019 WL 1359252, at *2 (N.D. Tex. Mar. 25, 2019) ..........................................................................................................24

*Columbia Broad. Sys., Inc. v. United States*, 316 U.S. 407 (1942) .................12

*Correctional Servs. Corp. v. Malesko*, 534 U.S. 61 (2001)) .............................7

*CSX Transp., Inc. v. McBride*, 564 U.S. 685 (2011) ........................................15

*Dragna v. Landon*, 209 F.2d 26 (9th Cir. 1953) ................................................6

*Duka v. SEC*, 103 F. Supp. 3d 382 (S.D.N.Y. 2015) .......................................23

*Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012)................................................19

*Elrod v. Burns*, 437 U.S. 347 (1976) .............................................................22

*Federal Trade Commission v. Standard Oil Co. of California*, 449 U.S. 232 (1980) .21,22

*Finnerty v. Cowen*, 508 F.2d 979 (2d Cir. 1974).............................................5

*Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477 (2010)………………………………………………………………*passim*

*Hammond v. Baldwin*, 866 F.2d 172 (6th Cir. 1989) ........................................5

*Hill v. SEC*, 825 F.3d 1236 (11th Cir. 2016) ..............................................14,15

*Jarkesy v. SEC*, 803 F.3d 9 (D.C. Cir. 2015).............................................14, 15

*La. Pub. Serv. Comm'n v. FCC,* 476 U.S. 355 (1986) ......................................3

*Leedom v. Kyne*, 358 U.S. 184 (1958) ..............................................................6

*Lucia v. SEC*, 138 S. Ct. 2044 (2018) .......................................................................*passim*

*Marsh v. County School Bd.*, 305 F.2d 94 (4th Cir. 1962) ..........................................6

*McNary v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 494 (1991) .....................................6

*Melendres v. Arpaio*, 695 F.3d 990 (9th Cir. 2012) ..............................................22

*New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S. 350 (1989) ...............7

*Oestereich v. Selective Serv. Sys. Local Bd. No. 11*, 393 U.S. 233 (1968) ........................6

*Renegotiation Bd. v. Bannercroft Clothing Co.*, 415 U.S. 1(1974)............................22

*Republic of Panama v. Am. Tobacco Co. Inc.*, 217 F.3d 343 (5th Cir. 2000)..................19

*Reuters Ltd. v. FCC*, 781 F.2d 946 (D.C. Cir. 1986)................................................12, 13

*Ryder v. United States*, 515 U.S. 177 (1995) .............................................................22

*Seguin v. City of Sterling Heights*, 968 F.2d 584(6th Cir. 1992)...............................22

*Surrat v. NLRB*, 463 F.2d 378 (5th Cir. 1972)............................................................6

*Templeton v. Dixie Color Printing Co.*, 444 F.2d 1064 (5th Cir. 1971) ...........................6

*Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994)....................................................11

*Tilton v. SEC*, 824 F.3d 276 (2d Cir. 2016) ...........................................................15,21

*Touche Ross & Co. v. SEC*, 609 F.2d 570 (2d Cir. 1979) ...............................................7

*United Church of the Med. Ct. v. Med. Ctr. Comm'n*, 689 F.2d 693 (7th Cir. 1982) .......22

*United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954)................................12

*United States v. Caceres*, 440 U.S. 741 (1979) ..................................................12

*Vitarelli v. Seaton*, 359 U.S. 535 (1959)..................................................................12

*Wilkinson v. Legal Servs. Corp.*, 27 F. Supp. 2d 32 (D.D.C. 1998)................................12

*Willcox v. Consol. Gas Co.,* 212 U.S. 19 (1909))..............................................................7

*Zadvydas v. Davis*, 533 U.S. 678 (2001) .................................................................8

**Statutes**

15 U.S.C. § 78aa ....................................................................................................14

15 U.S.C. § 78bb(a)(2)...........................................................................................15

15 U.S.C. § 78u(d)(3)(A) ......................................................................................15

15 U.S.C. § 78y(a)(1)...................................................................15

15 U.S.C. § 78y(a)(3)...................................................................15

15 U.S.C. § 80b-3(k)(2)...............................................................18

15 U.S.C. §§ 78u-3(b)..................................................................18

28 U.S.C. § 1331...........................................................................7

5 U.S.C. § 7521 (a).......................................................................9

**Other Authorities**

Adam M. Katz, Note, *Eventual Judicial Review*, 118 Colum. L. Rev. 1139, 1162 (2018)
.................................................................................17, 21

Andrew Ceresney, Director, SEC Division of Enforcement, Remarks to the American Bar Association's Business Law Section Fall Meeting (Nov. 21, 2014)...........................18

*Black's Law Dictionary* (10th ed. 2014)........................................23

Br. For Resp't Supporting Pet'r, *Lucia v. SEC*, 2018 WL 1251862, at *52-53 (U.S. Feb. 21, 2018)....................................................................13

Gov't Cert Pet. Br. in *Lucia*, 2017 WL 5899983.......................9,13

Gov't Merits Br. in *Lucia*, 2018 WL 1251862..............................9

**Regulations**

17 C.F.R. § 201.360(a)(2)............................................................18

## PRELIMINARY STATEMENT

There is no more sacred duty the government has than to do equal and impartial justice for its citizens. That duty includes only subjecting its citizens to trials before adjudicators who are empowered to preside over the government's claims and lawfully rule on them. The Government admits its ALJs are unlawful. This court, not an ALJ whose very authority is in question, must adjudicate this matter to preserve due process and to protect the structural integrity of our Constitution.

The reinstituted proceeding against RJL and Mr. Lucia is just as unconstitutional as the original proceeding—and the SEC knows it. Here is what will happen if the SEC is allowed by this court to force RJL and Mr. Lucia into another void administrative proceeding: the plaintiffs will endure a second administrative trial that will involve, if the last one is any indication, months of pre-trial discovery already weighted in the SEC's favor, last six or more weeks, require costly expert testimony, deplete administrative, judicial, and governmental resources and take parties, government and defense witnesses away from matters of consequence and otherwise productive lives. Last time around, it took Mr. Lucia three years to reach the D.C. Circuit. After an additional en banc proceeding, he ended up with an evenly split court requiring him to take an appeal all the way to the highest court of the land—which ruled that he could not be tried before an unconstitutional ALJ and vacated *all of the prior six years' proceedings.* Because the ALJ is still not lawfully appointed and further is not empowered to decide constitutional

1

questions—especially not the validity of her own appointment—these proceedings are destined to end in vacatur. All for nothing. Just like the last time. And when Mr. Lucia prevails, as *Free Enterprise Fund* instructs he must, he will be back to square one on yet a third retrial a decade or more after this all began. No rational—or constitutional—system of justice would operate in this fashion. And in fact, ours does not. It is *precisely* for this reason that federal courts are vested with jurisdiction under 28 U.S.C. § 1331 to decide threshold constitutional questions—such as the validity of the tribunal before which these plaintiffs are to be tried.

Although the SEC could have originally—or even now—brought its claims before the Commission[1] or in federal court, it has persisted in its unlawful and dilatory choice to reinstitute proceedings against RJL and Mr. Lucia before an ALJ whose removal protections, by its own admission, still violate Article II. The SEC has defied the Supreme Court's instruction to give Mr. Lucia "a new hearing before a *properly appointed official*," *Lucia v. SEC*, 138 S. Ct. 2044, 2055 (2018).  Only Article III courts have the jurisdiction and power to adjudicate whether the ALJ before whom Plaintiffs

---

[1] First, the Court stated, "[t]o cure the constitutional error, another ALJ (or the Commission itself) must hold the new hearing to which Mr. Lucia is entitled." *Lucia*, 138 S. Ct. at 2055. Second, the Court stated that it saw no reason to address the ratification issue, because: "The Commission has not suggested that it intends to assign Lucia's case on remand to an ALJ whose claim to authority rests on the ratification order. *The SEC may decide to conduct Lucia's rehearing itself.* Or it may assign the hearing to an ALJ who has received a constitutional appointment independent of the ratification." *Id.* at 2055 n.6 (emphasis added).

have been haled is constitutionally appointed. *Free Enterprise Fund* confirms that this Court has jurisdiction and the duty to enjoin this unconstitutional administrative proceeding as requested in plaintiffs' Motion filed December 6, 2018 set for decision at the same time as this motion to dismiss.

## ARGUMENT

I.   **THIS COURT HAS JURISDICTION AND MUST EXERCISE IT UNDER CONTROLLING PRECEDENT**

A. ***Free Enterprise Fund* and Other Controlling Supreme Court Cases Establish Jurisdiction**

The government's motion to dismiss insists 15 U.S.C. § 78y (which provides only for review of Commission final orders—*not present here*) is Plaintiffs' exclusive avenue for judicial review. That is just not true. The Supreme Court in *Free Enterprise Fund v. Public Co. Accounting Oversight Board*, 561 U.S. 477 (2010) [hereinafter *FEF*] unequivocally held that federal courts have jurisdiction over cases such as this one under Article III and 28 U.S.C. § 1331 and that nothing in 15 U.S.C. § 78y ousts that jurisdiction, even implicitly. 561 U.S. at 489–90 (finding jurisdiction where "petitioners object to the Board's existence, not to any of its auditing standards"). Further, neither ALJs nor the Commission can decide whether ALJs enjoy impermissible layers of tenure protection. Agencies and ALJs lack power to right such constitutional wrongs, *see La. Pub. Serv. Comm'n v. FCC,* 476 U.S. 355, 374 (1986) (agencies' powers limited to those granted by Congress), so federal courts *must* exercise jurisdiction. Notably, the *Lucia* decision itself calls for lower *courts*, not ALJs, to address this question. 138 S. Ct. at 2050 n.1.

*Lucia* established the necessary predicate for reaching the same conclusion about SEC ALJs that the Supreme Court already reached with respect to members of the PCAOB—that SEC ALJs are officers of the United States. *Id.* at 2055. As officers, ALJs may not be insulated from removal by multiple layers of tenure protection. Yet, current law only allows ALJs to be removed for "good cause" established and determined by the Merit Systems Protection Board (MSPB). 5 U.S.C. § 7521(a). The members of the MSPB, in turn, may not be removed except for "good cause shown." *Id.* at § 7211(e)(6). SEC Commissioners cannot remove ALJs without approval from the MSPB, *id.* at § 7521, and may not be removed except for "inefficiency, neglect of duty, or malfeasance in office." *See FEF*, 561 U.S. at 487; Gov't Cert Pet. Br. in *Lucia*, 2017 WL 5899983, at *20. These multiple layers of tenure protection for SEC ALJs violate Article II. *FEF*, 561 U.S. at 492. *See also* Gov't Merits Br. in *Lucia*, 2018 WL 1251862, at *47, *53.

Thus, the ALJ assigned to RJL and Mr. Lucia's enforcement proceeding sits in violation of Article II, and the new enforcement proceeding is void. *See Lucia*, 138 S. Ct. at 2055. The government recognized this consequence in *Lucia.* Referring to SEC's November 30, 2017 order "ratifying" its ALJ appointments, the government stated:

> Although the Commission (and some other agencies) have taken steps, following the government's filing of its response to the certiorari petition in this case, to ensure that future proceedings are overseen by properly appointed ALJs . . . those proceedings will satisfy Article II only if the ALJs' removal protections also comply with constitutional constraints.

Gov't Merits Br. in *Lucia*, 2018 WL 1251862, at *46.

4

In his *Lucia* concurrence, Justice Breyer referred to the removal-protections issue as the "embedded constitutional question" in the case. 138 S. Ct. at 2060 (Breyer, J., concurring) ("Congress seems to have provided administrative law judges with two levels of protection from removal without cause—just what *Free Enterprise Fund* interpreted the Constitution to forbid . . . ."). Footnote 10 of *FEF* had left the question open whether ALJs could enjoy more than one layer of removal protection. 591 U.S. at 507 n.10. The Court effectively closed the question in *Lucia*.

The Supreme Court in *FEF* was emphatic when it held that Article III courts *must* decide such structural, constitutional questions of constitutional administrative law:

> We do not see how petitioners could meaningfully pursue their constitutional claims under the Government's theory [of exclusive jurisdiction] . . . . Petitioner's constitutional claims are also outside the Commission's competence and expertise . . . . They are instead standard questions of administrative law, which the courts are at no disadvantage in answering. We therefore conclude that § 78y did not strip the District Court of jurisdiction over these claims.

*FEF*, 561 U.S. at 490–91.

Where an administrative agency cannot adequately address constitutional claims that result from agency action, the Supreme Court has not hesitated to find that Congress did not intend to preclude district court jurisdiction over those claims.[2] *See, e.g.*, *McNary*

---

[2] Circuit courts have held that exhaustion is unnecessary in similar contexts. *See, e.g.*, *Hammond v. Baldwin*, 866 F.2d 172, 176 (6th Cir. 1989) ("[I]f the injury is infirmity of the process, neither a final judgment nor exhaustion is required"); *Finnerty v. Cowen*, 508 F.2d 979, 982–83 (2d Cir. 1974) ("[W]e agree with other recent opinions dispensing with the exhaustion requirement in situations where the very administrative procedure under

*v. Haitian Refugee Ctr., Inc.*, 498 U.S. 479, 494, 497 (1991) (finding district court jurisdiction over broad pattern and practice due process challenge to INS amnesty determination procedures); *Oestereich v. Selective Serv. Sys. Local Bd. No. 11*, 393 U.S. 233, 237–38 (1968) (finding district court jurisdiction to hear a challenge to a "basically lawless" denial of conscientious objector status by a selective service board that was a "clear departure" from its statutory mandate and caused the plaintiff a constitutional injury). In *Leedom v. Kyne*, 358 U.S. 184 (1958), the Court held that district courts had jurisdiction to hear a challenge to an action by the NLRB that was in excess of its statutory authority and the denial of federal court review would mean a "sacrifice or obliteration of a right" recognized by Congress. *Id.* at 188–90.[3]

In *Coca-Cola Co. v. FTC*, 475 F.2d 299, 303 (5th Cir. 1973), the court held that a litigant contesting the constitutionality of an administrative proceeding is not required to

---

attack is the one which the agency says must be exhausted."); *Marsh v. County School Bd.*, 305 F.2d 94, 98 (4th Cir. 1962) ("To insist, as a prerequisite to granting relief against discriminatory practices, that the plaintiffs first pass through the very procedures that are discriminatory would be to require an exercise in futility."); *Dragna v. Landon*, 209 F.2d 26, 28 (9th Cir. 1953) ("[W]here the action of an administrative body is void and *ultra vires*, it is unnecessary that a plaintiff seeking relief against such action should exhaust his administrative remedies.")

[3] Circuit courts have recognized that *Leedom* jurisdiction exists where the agency "has ignored its responsibility contrary to a specific mandate of the [NLRA] and thereby worked injury to the statutory rights of the employees" by refusing to order a decertification petition. *Templeton v. Dixie Color Printing Co.*, 444 F.2d 1064 (5th Cir. 1971). *Accord Surrat v. NLRB*, 463 F.2d 378 (5th Cir. 1972) (holding that a district court had jurisdiction to issue an order in favor of plaintiffs where the Board shirked its duty to act upon a decertification petition and acted improperly in dismissing it.).

exhaust its administrative remedies before seeking review in the district court. *Touche Ross & Co. v. SEC*, 609 F.2d 570, 574 (2d Cir. 1979) similarly held that a litigant should not be required to submit to an administrative proceeding it contests.[4]

      Each of these cases fulfills the Supreme Court's command that federal courts have jurisdiction to provide "equitable relief [which] 'has long been recognized as the proper means for preventing entities from acting unconstitutionally.'" *FEF*, 561 U.S. at 491 n.2 (quoting *Correctional Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001)). "[I]t is established practice for this Court to sustain the jurisdiction of federal courts to issue injunctions to protect rights safeguarded by the Constitution." *Id*. (quoting *Bell v. Hood*, 327 U.S. 678, 684 (1946)). "When a Federal court is properly appealed to in a case over which it has by law jurisdiction, it is its duty to take such jurisdiction . . . . The right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied." *New Orleans Pub. Serv., Inc. v. Council of New Orleans,* 491 U.S. 350, 358 (1989) (quoting *Willcox v. Consol. Gas Co.,* 212 U.S. 19, 40 (1909)).

      Without district court jurisdiction, the constitutional guarantee of due process is just an empty promise. These precedents preclude such obliteration of individual rights.

---

[4] In *Touche Ross*, the Second Circuit reversed a district court's dismissal for failure to exhaust administrative remedies as to part of a complaint challenging the SEC's authority to conduct the proceeding at all, holding (1) "there is no need for any further agency action to enable us to reach the merits of [that] challenge," 609 F.2d at 577; and (2) "to require appellants to exhaust their administrative remedies would be to require them to submit to the very procedures which they are attacking … an issue … of pure[] statutory interpretation." *Id.* This precise reasoning applies to RJL and Mr. Lucia's challenge.

## B. The Logic of the Jurisdictional Question Commands a Court Decision

This case comes to this court in a unique position. Both sides agree on the key issue—that SEC ALJs are protected by unconstitutional restrictions on their removal from office. As the government painstakingly demonstrated in its briefs in *Lucia*, the statutory scheme that applies to SEC ALJs "provides for at least two, and potentially three, levels of protection against presidential removal authority." Gov't Cert. Pet. Br. in *Lucia*, 2017 WL 5899983, at *20.

SEC urges the court to get the agency out of this predicament by construing the relevant statutes in a manner that it believes would be constitutional,[5] *but this court must first assert jurisdiction to address that question. See Zadvydas v. Davis*, 533 U.S. 678, 689 (2001) (applying constitutional avoidance canon). If the court wishes to consider this argument, the jurisdictional game is up and this motion to dismiss must be denied.

This court must address the Article II question *before* RJL and Mr. Lucia undergo an unconstitutional proceeding. As the SEC urged in *Lucia*, doing so would avoid "needlessly prolonging the period of uncertainty and turmoil" that failing to resolve this "critically important" issue will cause. Gov't Cert. Pet. Br. in *Lucia,* 2017 WL 5899983, at *21. No court clothed with constitutional jurisdiction should stand by while the SEC

---

[5] The SEC told the Supreme Court in *Lucia* that if "the interpretation of Section 7521 advocated here cannot be reconciled with the statute, then the limitations that the provision imposes on removal of the Commission's ALJs would be unconstitutional." Br. for Resp't Supporting Pet'r, *Lucia v. SEC*, 138 S. Ct. 2044 (2018) (No. 17-130) 2018 WL 1251862, at *53 (U.S. Feb. 21, 2018) (Gov't Merits Br. in *Lucia*).

18CV2692 DMS JLB

tries to delay the inevitable by bringing an enforcement proceeding before an ALJ who lacks the authority to decide it. Congress did not intend to deprive the district courts of jurisdiction over threshold issues such as this one—issues that go to the heart of an ALJ's ability to carry out her function. Congress's statutory scheme is designed only for the SEC to decide securities laws violations. It did not create a scheme whereby the SEC can feign ignorance of its ALJs' constitutional defects and thereby subject RJL and Mr. Lucia to repeated enforcement proceedings that will be void ab initio. SEC's own admission *in this case* that resolution of the removal issue is necessary to prevent "uncertainty and turmoil" and the Supreme Court's repeated reminders that the Commission could conduct hearings itself call for relief. *See Lucia*, 138 S. Ct. at 2055 n.6. The SEC's obstinacy in proceeding before an ALJ whose decision is bound to be vacated will result not only in confusion and turmoil, but also a sustained, repeated, and life-altering violation of RJL and Mr. Lucia's right to a constitutional tribunal.

## II.  THE STRUCTURE OF THE EXCHANGE ACT ACKNOWLEDGES THIS COURT'S JURISDICTION

### A. Congress Did Not Provide for Exclusive Jurisdiction of Administrative Enforcement Actions to the Commission or to Its Delegatees, ALJs

Congress did not exclusively commit the fact-finding in SEC enforcement actions seeking monetary penalties to administrative agency proceedings. To the contrary, the SEC is permitted, if not obligated, to bring such actions in the district courts of the United States. *See* Exchange Act, 15 U.S.C. § 78aa: "The district courts of the United States . . . shall have *exclusive* jurisdiction of violations of [the Exchange Act] or the rules and regulations thereunder, and of all suits in equity and actions at law brought to enforce any

18CV2692 DMS JLB

liability or duty created by [the Exchange Act] or [the] rules or regulations

thereunder….” (emphasis added). Beyond this apparent command of exclusive federal

court jurisdiction, the SEC is similarly authorized by 15 U.S.C. § 78u(d)(3)(A) to bring

federal enforcement actions in federal court.

### B. Because § 78y's Jurisdiction Is Permissive, Not Mandatory or Exclusive, No Congressional Intent to Divest Jurisdiction Can Be Inferred

The SEC further misconstrues the text of 15 U.S.C. § 78y(a)(1), which is explicitly

permissive, not mandatory—an aggrieved litigant “may” seek post-agency review of a

final order in a court of appeals. Crucially, § 78y(a)(3) makes clear that appellate court

jurisdiction becomes exclusive only after the SEC issues a “final order,” only if an

aggrieved litigant chooses to invoke the circuit court review, and even then only when the

SEC files its administrative record with the court.

### C. The Exchange Act's Savings Clause Clarifies that Nothing in the Act Precludes Other Jurisdiction

That permissive language must also be harmonized with 15 U.S.C. § 78bb(a)(2)

that explicitly preserves “any and all” other avenues of relief: “the rights and remedies

provided by this chapter shall be in addition to any and all other rights and remedies that

may exist at law or in equity.”

These statutory provisions, read together, make it impossible to infer any intent by

Congress to limit, much less to divest, district courts of jurisdiction under 28 U.S.C.

§ 1331 to adjudicate constitutional challenges raised well before any final order could

ever be issued. The *SEC ALJ Cases* all fail to acknowledge this statutory structure.

**D. Neither the Commission Nor Its ALJs Are Empowered to Decide Constitutional Questions**

    **1.    Art. II**

As set forth above, RJL and Mr. Lucia make a structural argument that the judge assigned to hear their case violates Article II. The Article III judiciary alone is situated to remedy this defect and keep the elected branches within their assigned powers. An administrative law judge is not empowered and cannot be expected to rule on her own authority to occupy the office.

This Article II question has nothing to do with the merits of the securities law violations brought by the SEC—it is entirely collateral. As *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 212–13 (1994) holds, jurisdiction to review agency action will lie if the suit is "wholly collateral" to the statute's review scheme. RJL and Mr. Lucia's claims do not implicate or challenge the constitutionality of any statute that governs the merits of the SEC claims. This suit is only to determine the propriety of the ALJ's own appointment and due process under the Constitution.

The SEC's dilatory insistence on administrative proceedings raises additional structural and due process problems. The administrative scheme contemplates a "final order" issued by the ALJ, that is then reviewed in its first level of appeal by the SEC Commission. Yet no final order is involved in this case. In addition, the Commission is not an Article III court and has no lawful power to rule on constitutional questions at all. Its statutory mandate is solely to enforce the securities laws. *See Lucia*, 138 S. Ct. at 2049.

11

18CV2692 DMS JLB

### 2.    *Accardi*

The OIP under which the SEC is attempting to proceed against RJL and Mr. Lucia has expired. The underlying statutes and the SEC's own rules require that it commence proceedings within 60 days of service of the OIP, and that the ALJ issue a decision within 120 days. These deadlines have long passed.

"A precept which lies at the foundation of the modern administrative state is that agencies must abide by their rules and regulations." *Reuters Ltd. v. FCC*, 781 F.2d 946, 947 (D.C. Cir. 1986); *accord Columbia Broad. Sys., Inc. v. United States*, 316 U.S. 407, 422 (1942); *American Hosp. Ass'n v. Burwell*, 812 F.3d 183, 190 (D.C. Cir. 2016). When an agency disregards its own rules, this deprives an affected entity of constitutionally guaranteed "due process" of law. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). This constitutional guarantee is "most evident when compliance with the regulation is mandated by the Constitution or federal law." *United States v. Caceres*, 440 U.S. 741, 749 (1979); *see also Wilkinson v. Legal Servs. Corp.*, 27 F. Supp. 2d 32, 57 (D.D.C. 1998) ("[I]t is the fundamental concept of due process expressed in the Fifth and Fourteenth Amendments that gives life to the *Accardi* doctrine.").

These principles, often referred to generally as the "*Accardi* doctrine," are so significant that an agency's disregard of rules that "afford greater procedural protections" upon parties will void agency action even without a showing of prejudice. *Vitarelli v. Seaton*, 359 U.S. 535, 539 (1959). But RJL and Mr. Lucia are undeniably prejudiced in

18CV2692 DMS JLB

their defense by the passage of time and the unavailability of witnesses and ability to defend this action.[6]

The SEC has violated both its governing statutes and its own rules. By statute, the administrative proceedings at issue in this case shall be commenced by an OIP, which "*shall* fix a hearing date not earlier than 30 days nor later than 60 days after service of the notice[.]" 15 U.S.C. §§ 78u-3(b), § 80b-3(k)(2). In addition, as applicable in 2012, when the OIP was filed in this case, the Rules of Practice said, "In the order instituting proceedings, the Commission will specify a time period in which the hearing officer's initial decision must be filed with the Secretary … [, which] will be either 120, 210 or 300 days from the date of service of the order." 17 C.F.R. § 201.360(a)(2) (effective 2003). Today, seven years after the OIP was filed, no valid hearing has been held and no initial decision has issued. Under *Accardi*, these violations void the SEC's enforcement action, even absent any showing of prejudice. *See Reuters Ltd.*, 781 F.2d at 952.

---

[6] The Commission has described the short deadlines as being protective of respondents. In a 2014 speech, then-Director of the SEC Enforcement Division Andrew Ceresney explained that the deadlines within the rules were meant to "produce prompt decisions" from hearings that were "held promptly." Andrew Ceresney, Director, SEC Division of Enforcement, Remarks to the American Bar Association's Business Law Section Fall Meeting (Nov. 21, 2014), available at https://www.sec.gov/news/speech/2014-spch112114ac. This was important to all the parties because "[p]roof at trial rarely gets better for either side with age; memories fade and the evidence becomes stale." *Id*. Thus, in the Commission's own view, these mandatory deadlines protect a respondent's ability to defend against an enforcement action.

18CV2692 DMS JLB

The SEC chose to bring this case in an unconstitutional forum and cannot avoid the consequences of the Court's clear directive that the original hearing was a legal nullity. Just as an ALJ cannot be expected to rule on his or her own qualifications to preside, neither the ALJ nor the Commission, even with the best of intentions, can be expected to slap herself or itself on the wrist and agree that it is breaking its own rules in the manner in which it has re-prosecuted this action. A district court may be the *only* forum in which RJL and Mr. Lucia can realistically seek a remedy.

### III.    THE PRECEDENTS CITED BY THE SEC DO NOT PRECLUDE JURISDICTION
#### A. *Thunder Basin*, Properly Applied, Supports Jurisdiction

As set forth in plaintiffs' motion papers in support of a preliminary injunction, the *Thunder Basin* factors, properly applied, all argue in favor of district court jurisdiction. In the interest of conserving the court's resources, plaintiffs refer the court to that jurisdictional briefing affirmatively making their case for jurisdiction. Pls.' Mot. Prelim. Inj. 2–7.

#### B. The *SEC ALJ Cases*' Attempts to Distinguish *FEF* Make No Sense

Rather than directly addressing the holding of *FEF*, the government relies on five flawed circuit court decisions.[7] SEC has oddly ignored the Supreme Court's contrary holding in *FEF* in the hopes that the sheer volume of errant circuit court opinions will counterbalance the Supreme Court's otherwise clear, long-established—to say nothing of

_____

[7] *Bennett v. SEC*, 844 F.3d 174 (4th Cir. 2016); *Hill v. SEC*, 825 F.3d 1236 (11th Cir. 2016); *Tilton v. SEC*, 824 F.3d 276 (2d Cir. 2016); *Jarkesy v. SEC*, 803 F.3d 9 (D.C. Cir. 2015; *Bebo v. SEC*, 799 F.3d 765 (7th Cir. 2015).

controlling—command that federal courts hear constitutional questions, and specifically this exact Article II question. But, as Chief Justice Roberts notes, even where numerous federal courts of appeals have adopted a position, neither the Court—nor the Constitution—"resolve[s] questions such as the one before us by a show of hands." *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 715 (2011) (Roberts, C.J., joined by Scalia, Kennedy, & Alito, JJ., dissenting) (citing *Buckhannon Bd. and Care Home, Inc. v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 605 (2001)).

Those decisions reason that because no administrative proceedings had commenced in *FEF*, plaintiffs were free to make their constitutional challenge in court.[8] *And the same is true for RJL and Mr. Lucia, here, now!* But further, it is no answer to claim, as the SEC and the *SEC ALJ Cases* do, that *FEF* is distinguishable because the

---

[8] *Bennett*, 844 F.3d at 180 ("Because the Board had not undertaken regulatory action that would yield a reviewable Commission order or rule, the petitioners would have had to 'challenge a Board rule at random' or 'bet the farm' by voluntarily incurring a sanction in order to trigger § 78y's mechanism for administrative and judicial review." (quoting *FEF*, 561 U.S. at 490)); *Hill*, 825 F.3d at 1248 ("Unlike the petitioners in *Free Enterprise Fund*, however, the respondents here need not bet the farm to test the constitutionality of the ALJs' appointment process."); *Tilton*, 824 F.3d at 283–84 ("Because the PCAOB's regulatory actions had not produced a reviewable Commission order, the accounting firm could have raised its constitutional objection in federal court through administrative channels only by manufacturing a new, tangential dispute that *would* require a Commission order, and then using that dispute as a vehicle for its Article II claims."); *Jarkesy*, 803 F.3d at 20 ("To have his claims heard through the agency route, Jarkesy would not have to erect a Trojan-horse challenge to an SEC rule or "bet the farm" by subjecting himself to unnecessary sanction under the securities laws."); *Bebo*, 799 F.3d at 767 ("because she is already a respondent in a pending administrative proceeding, she would not have to '"bet the farm . . . by taking the violative action" before "testing the validity of the law."'" (quoting *FEF*, 561 U.S. at 490)).

18CV2692 DMS JLB

petitioner there lacked any "guaranteed path to federal court." The petitioner in *FEF* faced only a critical PCAOB inspection report when it brought its case. *See* 561 U.S. at 487, 490–91. If the firm had waited, the investigation may not have found any violations, in which case the matter would have ended. If the investigation had resulted in an alleged violation, the SEC would have brought charges against it in an administrative proceeding, and it would have had its "guaranteed path to federal court." Clearly, it was not simply the ability to obtain circuit court review that mattered to the Court in *FEF*, but the fact that the petitioner was challenging the very authority of the PCAOB to act. *Id.* at 490 ("[P]etitioners object to the Board's existence, not to any of its auditing standards.")

Thus, the circuit courts have gotten the analysis exactly backwards. Here, RJL and Mr. Lucia are affirmatively harmed by the looming but inactive administrative proceeding and their claims are ripe and imminent, whereas in *FEF*, the unconstitutionally appointed board had taken no action against the plaintiff. Under SEC's flawed reading, *FEF* stands for the proposition that parties can bring constitutional claims against the SEC in court without ever having been harmed while those who are being *actively* harmed by an unconstitutional proceeding must wait it out for § 78y judicial review.

This illogical and defective reasoning alone discredits the *SEC ALJ Cases* and renders them not only unworthy of emulation, but strongly suggests they are destined for reversal once other courts consider their flawed reasoning and disastrous practical consequences.

### C. The *SEC ALJ Cases* Equate Eventual Judicial Review with Meaningful Judicial Review Contrary to Law, Experience, and Common Sense

Further, the *SEC ALJ Cases* not only ignore the Supreme Court's ruling in *FEF*, they confuse *eventual* judicial review with *meaningful* judicial review, contrary to law, experience and common sense. This court should decline to follow them down that error-strewn path.

Article III courts should employ standard injunction analysis and exercise jurisdiction over meritorious constitutional claims in order to prevent the SEC from engaging in such unconstitutional behavior. By so doing, Article III courts properly discharge their constitutional duty to provide meaningful judicial review of legitimate constitutional violations and prevent important questions of administrative and constitutional law from being decided outside Article III courts.[9]

The *SEC ALJ Cases* blur, conflate, and essentially eviscerate the *Thunder Basin* analysis. Why? Those courts are concerned that constitutional challenges could open the floodgates to dilatory and strategic use of constitutional claims to avoid the enforcement

---

[9] *See, e.g.,* Adam M. Katz, Note, *Eventual Judicial Review*, 118 Colum. L. Rev. 1139, 1162 (2018) ("[R]eading *Thunder Basin* to imply that 'meaningful' review is satisfied by any *eventual* review effectively reduces *Thunder Basin* to a binary analysis ('will review be available at some point?') without consideration of the coercive or constitutionally dubious elements of an administrative proceeding . . . . [G]iven the incentive for the parties to settle prior to reaching a trial . . . this cabining of constitutional challenges constrains the ability of Article III courts to develop administrative and constitutional law . . . [and] runs counter to fairness intuitions, feeding suspicions of gamesmanship and undercutting the perceived legitimacy of the SEC.")

18CV2692 DMS JLB

proceedings. But the approach advocated here—to review any constitutional challenge under the strict standards for injunctive relief—will fully address the underlying concerns about meritless constitutional claims, and at the same time protect the compelling constitutional rights of respondents such as RJL and Mr. Lucia. Otherwise, if such circuit rulings continue to accumulate, courts will forfeit their ability to provide a meaningful constitutional check on the gamesmanship and unconstitutional behavior of administrative agencies like that on display in this case.

SEC next cites *Bennett* and *Tilton* to argue that when an Article II claim arises out of an enforcement proceeding it is an "affirmative defense" and is therefore not wholly collateral. But an affirmative defense is an "assertion of facts and arguments that, if true, will defeat the … prosecution's claim, even if all the allegations in the complaint are true." *Black's Law Dictionary* (10th ed. 2014). Plaintiffs' Article II claim is that the judge before whom any parties' claims or defenses are to be heard is not constitutionally appointed to decide them and is not an "affirmative defense" at all. The analogy is wholly inapt and irrelevant to the Article II constitutional question presented in this case.

Here, there is neither a proceeding nor an order that RJL and Mr. Lucia attempt to defeat, which is the ultimate goal of any affirmative defense. This is yet another example of the absurd logic and slipshod reasoning of the *SEC ALJ Cases* and demonstrates why they do not withstand close examination nor warrant emulation.

### D. The *SEC ALJ Cases* All Preceded *Lucia—and that Matters*

The SEC ALJ Cases were all decided before the Supreme Court handed down its opinion in 2018 that SEC ALJ appointments violated the Constitution. They thus were decided without the benefit of the high court's assessment of the significance and consequence of an unconstitutionally appointed judge—that it would require vacatur of all proceedings—and thus are of dubious precedential weight for this reason alone.[10]

District courts post-*Lucia* are readily asserting jurisdiction over claims that ALJs' appointments are invalid. *See, e.g.*, *Bradshaw v. Berryhill*, 372 F. Supp. 3d 349 (E.D.N.C. 2019); *Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, 318 F. Supp. 3d 370 (D.D.C. 2018).

The question of whether RJL and Mr. Lucia's adjudicator was constitutionally appointed must also be decided by a court because logically, the ALJ is recused. It is difficult to imagine a scenario in which an adjudicator's interest—here, keeping her job—is more obviously adverse to the litigant's. RJL and Mr. Lucia's challenge implicates concerns about objectivity, fairness, and impartiality. No assurances, however sincere or well meaning, by the administrative law judge could realistically "dissipate the doubts that a reasonable person would probably have about" the propriety of the adjudicator. *Republic of Panama v. Am. Tobacco Co. Inc.*, 217 F.3d 343, 347 (5th Cir. 2000).

---

[10] *FEF* involved no ongoing enforcement, and so its ruling on unconstitutional Article II removal protections did not require vacatur of any proceedings.

### E. *Elgin*

*Elgin v. Dep't of Treasury*, 567 U.S. 1 (2012), is readily distinguishable. Under its holding, constitutional claims must be brought in the administrative proceeding where the constitutional claim is "the vehicle by which [petitioners] seek to reverse [substantive] decisions of the agency," such as through a constitutional challenge to an aspect of the statute the agency seeks to apply. *See, e.g.*, *id.* at 22. In *Elgin*, prevailing on the constitutional argument would have dictated the outcome of the agency's proceeding; here, it would simply require that the SEC carry out that proceeding in a constitutional manner.

Unlike the SEC enforcement scheme under § 78y, which *FEF* recognizes as expressly non-exclusive, the Court in *Elgin* found that the CSRA was Congress' "comprehensive" scheme for federal employees to challenge terminations, 567 U.S. at 1, and the relief sought was routinely afforded under that scheme. *Id.* at 39–40. By contrast, neither the ALJ nor the Commission ever decides Article II appointments questions as part of the administrative review scheme, much less routinely, nor can either grant the constitutional declaratory relief Plaintiffs seek.

The *Elgin* petitioners alleged that a federal statute was unconstitutional as challengers to an adverse employment action, *id.* at 5, whereas here, plaintiffs are being involuntarily subjected to an unconstitutional administrative proceeding. *Elgin*'s petitioners were not suffering an active injury by being exposed to an unconstitutional tribunal. Their constitutional claims were intimately related to the merits of their challenge itself. *Id.* RJL and Mr. Lucia's argument is wholly collateral to the merits of the

SEC's case against them. They instead attack the constitutionality of the tribunal itself. This Article II challenge is far afield from claims that an ALJ, or the SEC itself, is competent to adjudicate, and obviously distinct from the claims brought in *Elgin*.

### F. *Standard Oil*

The Supreme Court's decision in *Federal Trade Commission v. Standard Oil Co. of California*, 449 U.S. 232 (1980) has no place in this discussion. Standard Oil did not claim that the Federal Trade Commission's assertion of jurisdiction over it was unconstitutional. Whereas, that is the core claim presented to this court by RJL and Mr. Lucia. The SEC's reliance on *Standard Oil* also conflates the serious, ongoing constitutional injury of an unlawful proceeding with the mere burden and expense of administrative litigation or the punitive statutory sanctions if securities law violations are ultimately proved. SEC thus both trivializes and misrepresents the stakes in this case. This misapplied reasoning also fails to acknowledge the practical reality that, if limited to delayed post-agency appellate review, RJL and Mr. Lucia may *never* get *any* opportunity to seek or obtain redress for their constitutional injury because of the overwhelming incentive to settle their case. *See* Katz, *Eventual Judicial Review*, *supra*, at 1183. Ray Lucia is now 69 years old. He does not have seven more working years to litigate.

Even if plaintiffs do obtain review, it will be too late to undo or remedy the injury. *See Tilton*, 824 F.3d at 298 (Droney, J., dissenting). ("Forcing the [plaintiffs] to await a final Commission order before they may assert their constitutional claim in a federal court means that by the time the day for judicial review comes, they will already have suffered

18CV2692 DMS JLB

the injury that they are attempting to prevent.") This is what the Supreme Court meant when it said, "We do not see how petitioners could meaningfully pursue their constitutional claims under the Government's theory [of exclusive jurisdiction]." *FEF*, 561 U.S. at 490.

The injury here is not the injury at stake in *Standard Oil*. Put bluntly, *Standard Oil* involved money.[11] RJL and Mr. Lucia are being denied a constitutional right to a lawful tribunal that the Supreme Court has recently recognized, upheld, and vacated proceedings to vindicate. Being forced to defend oneself in an unconstitutional proceeding is a cognizable constitutional harm. *See United Church of the Med. Ct. v. Med. Ctr. Comm'n*, 689 F.2d 693, 701 (7th Cir. 1982) (recognizing that being subjected to an "unconstitutionally constituted decisionmaker" warranted injunctive relief). *Cf. Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) ("It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" (quoting *Elrod v. Burns*, 437 U.S. 347, 373 (1976)).[12] The Supreme Court recognized *in this very case*: "'one who makes a timely challenge to the constitutional validity of an officer who adjudicates his case' is entitled to relief." *Lucia*, 138 S. Ct. at 2055 (quoting *Ryder v. United States*, 515 U.S. 177, 182–83 (1995)). This court can provide it.

---

[11] *Standard Oil* held that "litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury." 449 U.S. at 244 (quoting *Renegotiation Bd. v. Bannercroft Clothing Co.*, 415 U.S. 1, 24 (1974)). Standard Oil's harm argument had nothing to do with the constitutionality of the proceeding.

[12] *See also Seguin v. City of Sterling Heights*, 968 F.2d 584, 589 (6th Cir. 1992) (noting that a Due Process Clause violation is an injury "instantly cognizable in federal court, regardless of whether [there had been] a final decision on the merits . . . .").

These concerns animated *Free Enterprise Fund* and support RJL and Mr. Lucia's constitutional challenge. By asserting jurisdiction over and reviewing this claim for injunctive relief, Article III courts will check unconstitutional agency behavior, guarantee Americans that courts will hear their legitimate constitutional claims, and allow for the rational and sensible development of law governing agency enforcement proceedings.

IV.   **FEDERAL COURTS ARE THE ONLY FORUM THAT CAN PROVIDE THIS RELIEF AND SHOULD DO SO ON APPLICATIONS FOR PRELIMINARY INJUNCTION**

Dilatory or unmeritorious constitutional claims are easily screened out by use of preliminary injunction analysis that RJL and Mr. Lucia ask the court to undertake. This was the approach taken by the court in *Duka v. SEC*, 103 F. Supp. 3d 382 (S.D.N.Y. 2015) *abrogated by Tilton*, 824 F.3d at 279, where Judge Berman took the constitutional challenge seriously, and found jurisdiction to reach the question of whether a preliminary injunction should issue. By taking the same approach, this court can balance the interests of avoiding gamesmanship by any party to this proceeding. By so doing, it will put the "meaningful" back into "meaningful judicial review."

V.   **THE PROPOSED APPLICATION OF THE *SEC ALJ CASES* DISTORTS LOGIC AND PRECEDENT, LEADS TO INDEFENSIBLE CONSEQUENCES, AND TAKES THE MEANINGFUL OUT OF MEANINGFUL JUDICIAL REVIEW**

Good law, as recognized by Chief Justice Roberts in *McBride*, *supra* p. 15*,* is not made by totaling up temporary batting averages among the circuits, as the SEC urges this court to do. Enduring law is made by examining the reasoning—and the consequences of that reasoning—on the development of law that is meant to serve the purpose of the fair administration of justice.  And by this metric, the *SEC ALJ Cases* fail, and fail badly.

23

The scenario set forth at the opening of this brief should raise grave concerns about the administration of justice if the conduct and reasoning of the SEC goes unchecked. By haling RJL and Mr. Lucia before an unconstitutional ALJ in 2012 and persisting in its obstinate view that somehow that was acceptable, the SEC required plaintiffs to take their case all the way to the Supreme Court to receive justice for the first time. And now on remand, the SEC deliberately insists on retrying Mr. Lucia before a constitutionally defective ALJ.

In a ruling that unfortunately accepted the SEC's invitation to retrace the *SEC ALJ Cases*' path of error, a recent district court judge nonetheless wisely observed:

> The court is deeply concerned with the fact that plaintiff already has been subjected to extensive proceedings before an ALJ who was not constitutionally appointed, and contends that the one she must now face for further, undoubtedly extended, proceedings likewise is unconstitutionally appointed. She should not have been put to the stress of the first proceedings, and, if she is correct in her contentions, she again will be put to further proceedings, undoubtedly at considerable expense and stress, before another unconstitutionally appointed administrative law judge.

*Cochran v. SEC*, No. 4:19-CV-066-A, 2019 WL 1359252, at *2 (N.D. Tex. Mar. 25, 2019) (McBryde, J.) (still on appeal).

With how much greater force do these concerns apply to RJL and Mr. Lucia, who have not only endured an extended administrative trial *seven years ago,* but an appeal to the Commission, the D.C. Circuit, en banc D.C. Circuit, and the Supreme Court, only to find themselves back before an unconstitutional ALJ? It is hard to imagine a more compelling case to assert Article III jurisdiction.

24

This court, unconstrained by any circuit court ruling in the Ninth Circuit, should decline to follow this course of error. It should embrace the far superior reasoning of the many courts cited above, including controlling Supreme Court cases that have found jurisdiction, and course-correct a body of law that has led to such troubling outcomes.

## CONCLUSION

For the foregoing reasons, this Court has jurisdiction over Plaintiffs' claims and should deny the Defendants' motion to dismiss.

By:   <u>/s/ Margaret A. Little</u>        Dated: July 10, 2019
        Margaret A. Little (*pro hac vice*), CT Bar No. 303494
        Caleb Kruckenberg (*pro hac vice pending*), PA Bar No. 322264
        New Civil Liberties Alliance
        1225 19th St. NW, Suite 450
        Washington, DC 20036
        Telephone: 202-869-5210
        Email: peggy.little@ncla.legal
        Email: caleb.kruckenberg@ncla.legal

        Mark A. Perry, CA Bar No. 212532
        Gibson, Dunn & Crutcher LLP
        1050 Connecticut Ave. NW
        Washington, DC 20036-5306
        Telephone: 202-887-3667
        Email: MPerry@gibsondunn.com

*Attorneys for Plaintiffs Raymond J. Lucia Companies, Inc. and Raymond J. Lucia, Sr*

## **CERTIFICATE OF SERVICE**

I certify that on this 10th day of July, 2019, I have served a copy of the above and foregoing on all counsel of record through the Court's CM/ECF system.


/s/Margaret A. Little
Margaret A. Little, CT Bar No. 303494