JOSEPH H. HUNT
Assistant Attorney General
Civil Division

ROBERT S. BREWER, JR.
United States Attorney

CHRISTOPHER R. HALL
Assistant Branch Director
Federal Programs Branch

CHETAN A. PATIL (DC 999948)
CESAR A. LOPEZ-MORALES (MA 690545)
REBECCA CUTRI-KOHART (DC 1049030)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
P.O. Box No. 883
Ben Franklin Station
Washington, DC 20044
Tel.: (202) 305-4968; Fax: (202) 616-8470
Email: chetan.patil@usdoj.gov

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| RAYMOND J. LUCIA COMPANIES, INC., and RAYMOND J. LUCIA, SR.,<br><br>Plaintiffs,<br><br>v.<br><br>U.S. SECURITIES AND EXCHANGE COMMISSION, JAY CLAYTON, in his official capacity as Chairman of the U.S. Securities and Exchange Commission, and WILLIAM P. BARR, in his official capacity as United States Attorney General<br><br>Defendants. | Case No.: 3:18-cv-02692-DMS-JLB<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS COMPLAINT**<br><br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT**<br><br>Judge:  Hon. Dana M. Sabraw<br>Magistrate:  Hon. Jill L. Burkhardt<br>Courtroom:  13A<br>Date: August 2, 2019<br>Time: 1:30 p.m. |

# **TABLE OF CONTENTS**

INTRODUCTION .................................................................................................... 1

ARGUMENT ........................................................................................................... 1

I.    CONGRESS CHANNELED REVIEW OF PLAINTIFFS' CLAIMS............ 1

    A.    Plaintiffs Cannot Distinguish the SEC ALJ Cases or Elgin....................... 1

    B.    The Statutory Text and Structure Demonstrate an Intent to Create an Exclusive Review Scheme. ............................................................................. 4

    C.    Plaintiffs' Claims Fall Within the Statutory Review Scheme..................... 5

I.    PLAINTIFFS DO NOT CHALLENGE FINAL AGENCY ACTION. ........ 9

II.    PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF. .............................. 9

CONCLUSION ...................................................................................................... 10

# **TABLE OF AUTHORITIES**

**CASES**

*Am. Fed'n of Gov't Emps, AFL-CIO v. Trump*,
  318 F. Supp. 3d 370 (D.D.C. 2018) ................................................................... 2

*Am. Fed'n of Gov't Emps, AFL-CIO v. Trump*,
  No. 18-5289, 2019 WL 3122446 (D.C. Cir. July 16, 2019) ............................... 2

*Bandimere v. SEC*,
  844 F.3d 1168 (10th Cir. 2016) ...................................................................... 1, 2

*Bank of La. v. FDIC*,
  919 F.3d 916 (5th Cir. 2019) .............................................................................. 6

*Bebo v. SEC*,
  799 F.3d 765 (7th Cir. 2015) ..................................................................... 1, 7, 8

*Bennett v. SEC*,
  844 F.3d 174 (4th Cir. 2016) .............................................................................. 1

*Bradshaw v. Berryhill*,
  372 F. Supp. 3d 349 (E.D.N.C. 2019) ................................................................ 2

*Coca-Cola Co. v. FTC*,
  475 F.2d 299 (5th Cir. 1973) .............................................................................. 6

*Cochran v. SEC*,
  No. 4:19-cv-066-A, 2019 WL 1359252 (N.D. Tex. Mar. 25, 2019) ................... 2

*Elgin v. Dep't of Treasury*,
  567 U.S. 1 (2012) ........................................................................................ *passim*

*Free Enter. Fund. v. Pub. Co. Accounting Oversight Bd.*,
  561 U.S. 477 (2010) ....................................................................................... 1, 3

*FTC v. Standard Oil Co.*,
  449 U.S. 232 (1980) ........................................................................................... 7

*Hill v. SEC*,
  825 F.3d 1236 (11th Cir. 2016) ................................................................. 1, 6, 7

*Jarkesy v. SEC*,
  803 F.3d 9 (D.C. Cir. 2015) .................................................................................. 1, 2, 8, 9

*L.A. Police Protective League v. City of Los Angeles*,
  314 F. App'x 72 (9th Cir. 2009) ........................................................................................ 7

*Leedom v. Kyne*,
  358 U.S. 184 (1958) ........................................................................................................... 6

*Lucia v. SEC*,
  138 S. Ct. 2044 (2018) .............................................................................................. 1, 4, 6

*Morris & Dickson Co. v. Whitaker*,
  360 F. Supp. 3d 434 (W.D. La. 2018) ........................................................................ 2, 6

*Oestereich v. Selective Serv. Sys. Local Bd. No. 11*,
  393 U.S. 233 (1968) ........................................................................................................... 6

*Or. Nat. Desert Ass'n v. U.S. Forest Serv.*,
  465 F.3d 977 (9th Cir. 2006) ............................................................................................ 9

*Reuters Ltd. v. FCC*,
  781 F.2d 946 (D.C. Cir. 1986) ....................................................................................... 10

*Steel Co. v. Citizens for Better Env't*,
  523 U.S. 83 (1998) ............................................................................................................ 10

*Thunder Basin Coal Co. v. Reich*,
  510 U.S. 200 (1994) ........................................................................................................... 1

*Tilton v. SEC*,
  824 F.3d 276 (2d Cir. 2016) ............................................................................................. 1

*Ukiah Valley Med. Ctr. v. FTC*,
  911 F.2d 261 (9th Cir. 1990) ............................................................................................ 9

*United States ex rel. Accardi v. Shaughnessy*,
  347 U.S. 260 (1954) ......................................................................................................... 10

*United States v. Esparza-Gonzalez*,
  422 F.3d 897 (9th Cir. 2005) ............................................................................................ 8

**FEDERAL STATUTES**

5 U.S.C. § 702 .................................................................................................... 9

5 U.S.C. § 706 .................................................................................................... 9

5 U.S.C. § 7521 ............................................................................................. 1, 9

5 U.S.C. § 7703 .................................................................................................. 5

15 U.S.C. § 78y ......................................................................................... 2, 3, 5, 7

30 U.S.C. § 816 .................................................................................................. 5

## INTRODUCTION

Five courts of appeals have held that claims virtually identical to Plaintiffs' are foreclosed under *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200 (1994), and its progeny. *See Bennett v. SEC*, 844 F.3d 174 (4th Cir. 2016); *Hill v. SEC*, 825 F.3d 1236 (11th Cir. 2016); *Tilton v. SEC*, 824 F.3d 276 (2d Cir. 2016); *Bebo v. SEC*, 799 F.3d 765 (7th Cir. 2015); *Jarkesy v. SEC*, 803 F.3d 9 (D.C. Cir. 2015). In doing so, these cases disposed of the same, meritless arguments that Plaintiffs principally rely on here: that this case is controlled by *Free Enterprise Fund. v. Public Co. Accounting Oversight Board*, 561 U.S. 477 (2010), and that simply participating in a proceeding they believe is unconstitutional creates an injury that entitles them to sue in district court. Plaintiffs fail to identify any legitimate basis for this Court to conclude that all of those courts were wrong.

In addition, they fail to even address the remainder of Defendants' arguments. They never explain how their claims survive their failure to contest final agency action. Nor do they offer anything new on the merits of their challenge to the constitutionality of the statutory provision governing the removal of SEC ALJs, 5 U.S.C. § 7521, or their claim that the SEC administrative proceeding is untimely.

## ARGUMENT

### I. CONGRESS CHANNELED REVIEW OF PLAINTIFFS' CLAIMS.

The *SEC ALJ Cases* uniformly held that district courts lack jurisdiction over claims like Plaintiffs'. Defs.' Mem. of P. & A. in Supp. of Mot. to Dismiss ("Defs.' Mem.") 7-12, ECF No. 24-1. This Court should follow suit.

#### A. Plaintiffs Cannot Distinguish the SEC ALJ Cases or Elgin.

**i.** Plaintiffs' principal response to the *SEC ALJ Cases* is to point out that they predate *Lucia v. SEC*, 138 S. Ct. 2044 (2018). Pls.' Mem. of P. & A. in Opp'n to Mot. to Dismiss ("Pls.' Opp'n") 19-20, ECF No. 25. However, *Lucia* did not address *Thunder Basin* because there, Plaintiffs did exactly what Congress requires them to: they raised their Appointments Clause claim to the Commission in the administrative process and then sought review in the D.C. Circuit. *See* 138 S. Ct. at 2050; *accord Bandimere v. SEC*,

844 F.3d 1168, 1171 n.2 (10th Cir. 2016) (court had jurisdiction because plaintiff did not "attempt[] to enjoin [an] administrative enforcement action[]," but "instead raised his constitutional argument before the SEC"). Plaintiffs have identified nothing in *Lucia* suggesting that, going forward, plaintiffs need not proceed through a statutory review scheme to challenge the constitutionality of an ALJ proceeding. And indeed, two district courts have rejected that very argument. *See Cochran v. SEC*, No. 4:19-cv-066-A, 2019 WL 1359252, at *2 (N.D. Tex. Mar. 25, 2019) (that *SEC ALJ Cases* "were decided before *Lucia* . . . has no impact on the jurisdictional issue at hand"); *Morris & Dickson Co. v. Whitaker*, 360 F. Supp. 3d 434, 444 n.6 (W.D. La. 2018) (same).

**ii.** Plaintiffs next argue that courts "post-*Lucia* are readily asserting jurisdiction" over Appointments Clause challenges, Pls.' Opp'n 19, but they misread the case law. Though they rely on challenges to the appointments of Social Security Administration ("SSA") ALJs, *id.* (citing *Bradshaw v. Berryhill*, 372 F. Supp. 3d 349 (E.D.N.C. 2019)), those cases arise in district court only because the SSA review scheme channels post-proceeding judicial review of SSA decisions to *district* court, *see* 42 U.S. § 405(g); *cf.* 15 U.S.C. § 78y (providing for judicial review of SEC decisions in *circuit* court). These cases are therefore entirely consistent with the *SEC ALJ Cases*.

Plaintiffs' reliance on *American Federation of Government Employees, AFL-CIO v. Trump*, 318 F. Supp. 3d 370 (D.D.C. 2018) is similarly misplaced. That decision has been reversed on appeal. *See Am. Fed'n of Govt. Emps., AFL-CIO v. Trump*, No. 18-5289, 2019 WL 3122446, at *6-8 (D.C. Cir. July 16, 2019) ("even if the [agency] could not address the [constitutional] claims," plaintiffs were required to bring those claims to the agency before seeking circuit court review). In fact, even the district court opinion was consistent with the *SEC ALJ Cases*, as the court explicitly contrasted that case with challenges to SEC ALJs, which it acknowledged must be challenged through the statutory scheme. 318 F. Supp. 3d at 402-03 (citing *Jarkesy*, 803 F.3d at 18-19).

**iii.** Plaintiffs' Opposition rests in large part on their mistaken belief that *Free Enterprise*—as opposed to the Supreme Court's later decision in *Elgin v. Dep't of Treasury*,

Defs.' Reply in Supp. of Mot. to Dismiss   - 2 -   Case No.: 3:18-cv-02692-DMS-JLB

567 U.S. 1 (2012)—governs this case. *See* Pls.' Opp'n 3, 5, 7, 14-16. They argue that the *SEC ALJ Cases* were wrongly decided because they failed to rely on it. *Id.* at 14-16. But as those cases explain, *Free Enterprise* is not controlling because the statutory scheme there, unlike here, provided the plaintiffs with no guaranteed path to federal court to raise their constitutional challenge to the PCAOB. *See* Defs.' Mem. 9-10; Defs.' Opp'n to Mot. for Prelim. Inj. ("Defs.' PI Opp'n") 12-13, ECF No. 15.

Plaintiffs proffer a strained reading of *Free Enterprise* in response. The genesis of *Free Enterprise* was the PCAOB's issuance of a report critical of the plaintiffs and its decision to investigate the plaintiffs. 561 U.S. at 487. Plaintiffs seize on that to suggest that the plaintiffs there had a path to federal court because a future enforcement proceeding based on the PCAOB's actions would allow for judicial review. Pls.' Opp'n 16. Thus, they argue, the *SEC ALJ Cases* misunderstood *Free Enterprise* because they would grant plaintiffs who have not yet been injured by agency action access to court while those "who are being *actively* harmed . . . must wait." *Id.*

This argument is built on a flawed premise. The plaintiffs in *Free Enterprise* were undoubtedly harmed by the PCAOB's actions at the time they brought suit; that is why they had standing. *Cf.* 561 U.S. at 512 n.12 (rejecting alternative argument that plaintiffs lacked standing). But 15 U.S.C. § 78y did not permit them to sue in federal court because it "provides only for judicial review of *Commission* action, and not every [PCAOB] action is encapsulated in a final Commission order or rule." *Id.* at 490. Thus, if no enforcement action was instituted, then the plaintiffs' only theoretical opportunity to seek redress for their injury in federal court would require either intentionally violating the law—thereby courting potential "severe punishment"—or erecting a Trojan-horse challenge to an unrelated regulation, neither of which the Supreme Court considered "meaningful." *Id.* at 490-91. Here, by contrast, there is an ongoing administrative proceeding, and so § 78y provides Plaintiffs with the path to federal

Defs.' Reply in Supp. of Mot. to Dismiss   - 3 -   Case No.: 3:18-cv-02692-DMS-JLB

court lacking in *Free Enterprise*. *See* Defs.' Mem. 10.[1]

**iv.** Plaintiffs' attempts to distinguish *Elgin* are even more unconvincing. They first argue that, unlike the *Elgin* plaintiffs, they are not seeking to decide the outcome of the administrative proceeding. Pls.' Opp'n 20. That is not true, as Plaintiffs moved to dismiss the proceeding on these very grounds. *See* Defs.' Mem. 5, 11.[2]

Plaintiffs next claim that the relief sought in *Elgin* "was routinely afforded under th[e] [administrative] scheme," whereas the constitutional question here cannot be decided by the Commission. Pls.' Opp'n 20. This distinction is illusory. The question at issue in *Elgin*—whether a federal statute was facially unconstitutional—was similarly not something the agency routinely decided. Indeed, it believed it lacked authority to adjudicate that claim, *Elgin*, 567 U.S. at 16-17.

Further, Plaintiffs' assertion that, unlike in *Elgin*, their claims concern exposure to an unconstitutional process, Pls.' Opp'n 20-21, is a distinction without a difference. They cite no authority limiting *Elgin* in this fashion; instead, five courts of appeals held that *Elgin* applies to claims, just like Plaintiffs', that challenge the constitutionality of a proceeding. *See* Defs.' PI Opp'n 14-15.

**B.    The Statutory Text and Structure Demonstrate an Intent to Create an Exclusive Review Scheme.**

The text, structure, and purpose of the federal securities laws reflect Congress's intent to channel review away from district courts. *See* Defs.' Mem. 7-8. The language

---

[1] Plaintiffs' bizarre assertion that they "*here, now*" are not subject to a "commenced" proceeding, Pls.' Opp'n 15, is patently wrong. Of course they are—that is what they seek to enjoin. *See In re Raymond J. Lucia Companies, Inc.* (SEC), https://www.sec.gov/litigation/apdocuments/ap-3-15006.xml (docket). If they are arguing that the ongoing proceeding against them is "void" or "void *ab initio*," *see id.* 1, 4, 9, that is incorrect. Even a constitutional infirmity in an administrative proceeding does not render that proceeding void. In *Lucia*, the Supreme Court vacated the Commission's final order and *remanded* the case "for further proceedings" in front of a new ALJ. 138 S. Ct. at 2056. It did not *dismiss* the proceeding as void.

[2] On July 15, 2019, the ALJ denied their motion to dismiss. On July 18, 2019, Plaintiffs moved to certify the decision for an interlocutory appeal to the Commission.

Defs.' Reply in Supp. of Mot. to Dismiss   - 4 -   Case No.: 3:18-cv-02692-DMS-JLB

of § 78y mirrors that of statutes that the Supreme Court has held to create an exclusive review scheme. *Id.* Plaintiffs do not dispute these facts. Instead, they recycle a series of stale arguments that rely on a misreading of the securities laws, Pls.' Opp'n 9-10, and that Defendants have fully addressed. *See* Defs.' PI Opp'n 9 (Congress's decision to grant the *SEC* option of proceeding in district court does not indicate an intent to permit *Plaintiffs* to circumvent an administrative proceeding); *id.* at 8-9 (§ 78y review of "final order[s]" covers attempts to preemptively challenge administrative proceedings); *id.* at 8 (savings clause in 15 U.S.C. § 78bb(a)(2) does not apply to claims, like Plaintiffs', that are squarely covered by judicial review provision).

The sole new argument Plaintiffs proffer is that § 78y does not preclude district court jurisdiction because it only provides that "an aggrieved litigant 'may' seek post-agency review" in circuit court. Pls.' Opp'n 10. But the word "may" operates to *permit* aggrieved parties to seek judicial review, not to *require* them to do so. Indeed, other exclusive review provisions use the same structure. *See* 5 U.S.C. § 7703(a)(1) (provision at issue in *Elgin* states that party "adversely affected . . . may obtain judicial review); 30 U.S.C. § 816 (same for provision at issue in *Thunder Basin*).

**C.    Plaintiffs' Claims Fall Within the Statutory Review Scheme.**

Plaintiffs' assorted arguments on *Thunder Basin*'s second step fare no better.

**Meaningful Review**: Plaintiffs do not dispute that they will be able to raise their claims to a court of appeals. That concession alone satisfies the "meaningful review" requirement. *See, e.g., Elgin*, 567 U.S. at 17 (scheme provides for meaningful review if it "provides review in . . . an Article III court"); Defs.' Mem. 9. Plaintiffs' scattershot arguments that it does not all miss the mark.

*First*, Plaintiffs argue that their removal claim raises a "structural, constitutional question[]" that must be decided by an Article III court. Pls.' Opp'n 5. Thus, they contend, they should not be required to proceed through the administrative process because the Commission "has no lawful power to rule" on their claim. *Id.* at 11; *see also id.* at 3, 7-9. This same argument was unambiguously rejected in *Elgin*, where the

Supreme Court held that plaintiffs raising a facial constitutional challenge to a federal statute had to proceed first through the administrative process, even if the agency "could not decide the constitutionality of a federal law." 567 U.S. at 17; *accord Bank of La. v. FDIC*, 919 F.3d 916, 926 (5th Cir. 2019) (same). And, of course, Plaintiffs will be able to raise their constitutional claim to an Article III court—a court of appeals.[3]

Nor does it matter to the jurisdictional inquiry that Plaintiffs believe their claim is meritorious. *See* Pls.' Opp'n 3-5, 9, 24. Contrary to their suggestions, *id.* at 1; *id.* at 4; *id.* at 8, Defendants do not concede that the SEC ALJs' removal protections are unconstitutional. *See* Defs.' Mem. 14-18. But more fundamentally, Plaintiffs' misplaced confidence in the outcome of their constitutional claim simply has no effect on the Court's jurisdiction. In *Hill*, for example, the Eleventh Circuit reversed two district court decisions holding that SEC ALJ's appointments violated the Constitution, but never suggested that the *jurisdictional* issue depended in any way on the *merits* of the constitutional claims. 825 F.3d at 1240. Nor is any such suggestion present in *Thunder Basin*, *Elgin*, *Free Enterprise*, the other *SEC ALJ Cases*, or *Lucia* itself. *Accord Morris & Dickson*, 360 F. Supp. 3d at 446 (rejecting argument that court "has jurisdiction . . . [despite] statutory review scheme . . . [if the] constitutional argument is certainly correct").[4]

---

[3] For this reason, the Supreme Court's assertion that it must wait for "lower courts" to address the constitutionality of ALJ removal protections, Pls.' Opp'n 3 (citing *Lucia*, 138 S. Ct. at 2050 n.1), does not bolster Plaintiffs' jurisdictional argument. That contention is consistent with the Court, as it did in *Lucia*, waiting for such cases to work their way through statutory review schemes.

[4] Plaintiffs again seek to rely on the narrow exception for district court review created in *Leedom v. Kyne*, 358 U.S. 184 (1958) and related cases, Pls.' Opp'n 6; *id.* at 6-7 (citing *Oestereich v. Selective Serv. Sys. Local Bd. No. 11*, 393 U.S. 233, 237-38 (1968); *Coca-Cola Co. v. FTC*, 475 F.2d 299 (5th Cir. 1973)). The *Leedom* exception does not apply where, like here, a plaintiff's claim is not based on an agency's violation of a clear *statutory* mandate or where, like here, meaningful judicial review is available in an Article III court. *See* Defs.' PI Opp'n 15 n.11. Similarly, Plaintiffs' reliance on pre-*Thunder Basin* case law, *see* Pls.' Opp'n 5 n.2; *id.* at 6-7, is of negligible value.

Defs.' Reply in Supp. of Mot. to Dismiss   - 6 -   Case No.: 3:18-cv-02692-DMS-JLB

*Second*, Plaintiffs relatedly suggest that going through the administrative process is not required because their removal claim implicates the ALJ's interest and thus the "ALJ is recused." Pls.' Opp'n 19. But they ignore that they have every opportunity to raise that argument to the *Commission* and, if necessary, to a court of appeals. Moreover, the analogy to recusal is telling because a party seeking to recuse a judge cannot file a collateral action and ask to enjoin the original proceeding. Rather, it must move for recusal before the judge it seeks to recuse and, if unsuccessful, wait until the case is over to appeal that ruling. *See, e.g.*, *L.A. Police Protective League v. City of Los Angeles*, 314 F. App'x 72, 73-74 (9th Cir. 2009). And for the same reasons, Plaintiffs' belief that the SEC cannot be trusted to adjudicate Plaintiffs' claim "that it is breaking its own [timeliness] rules," Pls.' Opp'n 14, is also unavailing.

*Third*, Plaintiffs argue that § 78y provides for review of final orders, but "no final order is involved in this case." Pls.' Opp'n 11; *id.* at 3. However, no final order is involved here only because Plaintiffs have improperly tried to preempt the administrative process before its completion. *See* Defs.' PI Opp'n 9. As explained, Plaintiffs' theory would allow parties to fully litigate a proceeding before an ALJ, and then if dissatisfied with the initial decision, run to district court before the Commission could issue a final order. *Id.* That is not consistent with Congress's intent.

*Fourth*, Plaintiffs argue that "*eventual* judicial review" is not "*meaningful* judicial review." Pls.' Opp'n 17. That is squarely refuted by the long line of cases consistently recognizing that post-proceeding review *is* meaningful. *See* Defs.' Mem. 9 n.3; Defs.' PI Opp'n 14-15; *FTC v. Standard Oil Co.*, 449 U.S. 232, 244 (1980) ("substantial" burden of defending oneself "in protracted adjudicatory proceeding" does not justify enjoining proceeding (citation omitted)). Plaintiffs try to distinguish *Standard Oil* on the basis that the injury from participation there "involved money," not "the serious, ongoing constitutional injury of an unlawful proceeding." Pls.' Opp'n 21-22. *Contra id.* at 1. But courts have consistently read *Standard Oil* to apply to constitutional claims. *See, e.g.*, *Bebo*, 799 F.3d at 775 (collecting cases); *Hill*, 825 F.3d at 1246 (rejecting argument

that *Standard Oil* was distinguishable because plaintiffs "assert that the administrative process here is not just unlawful . . . but unconstitutional").

Moreover, delayed review in the context of constitutional claims is not unusual, even in criminal cases. *Jarkesy*, 803 F.3d at 26. "[W]hen a district court denies a federal criminal defendant's pretrial motion, that denial ordinarily is not immediately appealable. The defendant must stand trial first," with the court of appeals "address[ing] the matter only after a conviction." *Id.* The same goes for constitutional challenges to the proceeding itself. *See, e.g.*, *United States v. Esparza-Gonzalez*, 422 F.3d 897, 901 (9th Cir. 2005) (addressing on post-conviction appeal claim that jury was selected through unconstitutional racial discrimination).

Further, as even Plaintiffs acknowledge, Pls.' Opp'n 17-18, permitting plaintiffs to preempt an administrative proceeding simply by casting their claims as constitutional challenges to the process would be easily gameable. *See Bebo*, 799 F.3d at 775 (noting that "[e]very person hoping to enjoin an ongoing administrative proceeding could make this argument"). Plaintiffs suggest that the concern could be "fully addressed" by reviewing all such claims "under the strict standards for injunctive relief," Pls.' Opp'n 18; *id.* at 23, but they cite nothing for the proposition that an exclusive statutory scheme can be skirted so long as the court uses a strict legal standard to assess the claim.

*Fifth*, Plaintiffs assert that they should be excused from the administrative process because they have already gone through it once and successfully overturned the Commission's final order. Pls.' Opp'n 24; *id.* at 1-2. Though Plaintiffs' circumstances may be idiosyncratic, Congress's exclusive review scheme—and thus, this Court's jurisdiction—must apply to them the same as any other plaintiff.

**Wholly Collateral**: Plaintiffs protest that the removal issue is unrelated to "the merits of the [alleged] securities laws violations" and thus is wholly collateral to the securities laws' review scheme. Pls.' Opp'n 11. But Plaintiffs' claims are not wholly collateral because they arise directly out of a challenged SEC enforcement action and

thus are "inextricably intertwined with . . . [that] proceeding." *Jarkesy*, 803 F.3d at 23; *see also* Defs.' Mem. 10-11; Defs.' PI Opp'n 13-14. Similarly, Plaintiffs' semantic argument that their claims are not "'affirmative defense[s]'" does nothing for them. Pls.' Opp'n at 18. As noted above, Plaintiffs have sought dismissal of the administrative proceeding on the basis of the same claims raised here, and so contrary to their assertion, they are using their claims to "attempt to defeat" a proceeding. *Id.*

**Agency Expertise**: Because a decision in Plaintiffs' favor on the SEC's statutory claims could moot Plaintiffs' claims, they fall within the agency's expertise. *See* Defs.' Mem. 11-12. Plaintiffs offer nothing new to dispute this conclusion.

## II.    PLAINTIFFS DO NOT CHALLENGE FINAL AGENCY ACTION.

"[F]inality is . . . a *jurisdictional* requirement." *Ukiah Valley Med. Ctr. v. FTC*, 911 F.2d 261, 264 n.1 (9th Cir. 1990) (citation omitted). In this case, the only private right of action properly invoked by Plaintiffs is the APA. *See* Defs.' Mem 12-13; Compl. ¶ 15 (citing 5 U.S.C. §§ 702 and 706). Plaintiffs do not contest this understanding in their Opposition. The Commission has not yet issued a final order, so Plaintiffs do not challenge a final decision as required by the APA. Thus, the Court also lacks jurisdiction on this ground. *See Or. Nat. Desert Ass'n v. U.S. Forest Serv.*, 465 F.3d 977, 982 (9th Cir. 2006) (APA review requires final agency action).

## III.   PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF.

Because the Court lacks jurisdiction, it cannot reach the merits of Plaintiffs' claims. But even if it could, those claims fail as a matter of law. Defs.' Mem. 14-22.

**i.** As to the removal claim, Plaintiffs again invoke *Free Enterprise*, which they argue, in light of *Lucia*, ends the inquiry. Pls.' Opp'n 4-5. But neither *Free Enterprise* nor *Lucia* addressed the constitutionality of removal protections for ALJs or held that multiple layers of removal protections are always unconstitutional. *See* Defs.' Mem. 15. Further a proper construction of § 7521 would alleviate any separation-of-powers concerns. *Id.* at 15-17. Plaintiffs fail to offer anything new in response.

Curiously, Plaintiffs imply that a defense of the removal protections somehow

means jurisdiction must exist over Plaintiffs' claims. Pls.' Opp'n at 8. However, Defendants plainly argued that the constitutionality of § 7521 was an "alternative ground[]" for dismissal. Defs.' Mem. 14. This Court must address the jurisdictional question first, *see Steel Co. v. Citizens for Better Env't*, 523 U.S. 83, 94 (1998), and, for the reasons discussed above, answer it in the negative.

**ii**. Plaintiffs' claim that the administrative proceeding should be dismissed as untimely fails. Defs.' Mem. 18-22. The claim rests on Plaintiffs' assertion that *Lucia* issued a "clear directive" that their original administrative proceeding should be treated as a "legal nullity." Pls.' Opp. 14. That is wrong. *See supra* p. 4 n.1. The Court should not grant Plaintiffs greater relief than contemplated by *Lucia*.

Further, though the Commission's final order was vacated, Plaintiffs' OIP, initial hearing, and initial decision complied with all statutory and regulatory deadlines. *See* Defs.' Mem. 18-19. Thus, there is no basis to Plaintiffs' argument that the "*Accardi* doctrine" warrants dismissal of the enforcement action. *See United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268 (1954). To decide otherwise, given the short deadlines under SEC rules and the length of federal court proceedings, would be to require that virtually any vacated and remanded action be dismissed for untimeliness. And even if the Court did consider *Accardi*, Plaintiffs have not shown prejudice. *See* Defs.' Mem. 21-22.[5]

## CONCLUSION

For the foregoing reasons, the Court should dismiss Plaintiffs' complaint.

---

[5] Plaintiffs offer a single citation, *Reuters Ltd. v. FCC*, 781 F.2d 946, 952 (D.C. Cir. 1986), for their assertion that *Accardi* does not require a showing of prejudice. Pls.' Opp'n 13. But there, it was unnecessary for the court to address the existence of prejudice because the agency's deviation from the rules clearly prejudiced the plaintiff by rescinding its radio station licenses. *Reuters*, 781 F.2d at 952.

Defs.' Reply in Supp. of Mot. to Dismiss   - 10 -    Case No.: 3:18-cv-02692-DMS-JLB

| | | |
|---|---|---|
| 1 | Dated: July 26, 2019 | Respectfully submitted, |
| 2 | | JOSEPH H. HUNT |
| 3 | | Assistant Attorney General |
| 4 | | ROBERT S. BREWER, JR. |
| 5 | | United States Attorney |
| 6 | | CHRISTOPHER R. HALL |
| 7 | | Assistant Branch Director |
| 8 | | Federal Programs Branch |
| 9 | | /s/ Chetan A. Patil |
| 10 | | CHETAN A. PATIL |
| | | CESAR A. LOPEZ-MORALES |
| 11 | | REBECCA CUTRI-KOHART |
| 12 | | Trial Attorneys |
| | | United States Department of Justice |
| 13 | | Civil Division, Federal Programs Branch |
| 14 | | P.O. Box No. 883 |
| | | Ben Franklin Station |
| 15 | | Washington, DC 20044 |
| 16 | | Tel.: (202) 305-4968; Fax: (202) 616-8470 |
| | | Email: chetan.patil@usdoj.gov |
| 17 | | |
| 18 | | *Attorneys for Defendants* |